## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| THE LAUTENBERG FOUNDATION, JOSHUA S. LAUTENBERG and ELLEN LAUTENBERG,<br><br>               Plaintiffs,<br><br>   -against-<br><br>PETER MADOFF,<br><br>               Defendant. | Civil Action No. 09-00816 (SRC) |

## BRIEF IN OPPOSITION TO MOTION OF
## DEFENDANT TO DISMISS COMPLAINT

**McElroy, Deutsch, Mulvaney & Carpenter, LLP**
1300 Mount Kemble Avenue
Morristown, New Jersey 07960
tel: (973) 993-810
Fax: (973) 425-0161

**Gibbons P.C.**
One Gateway Center
Newark, New Jersey 07102
Tel: 973-596-4500
Fax: 973-596-0545

Counsel for Plaintiffs

Of Counsel:

    Ronald J. Riccio
    Michael R. Griffinger

On the Brief:

    Jennifer A Hradil
    Greg Trif

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ iii

PRELIMINARY STATEMENT ..................................................................................... 1

STATEMENT OF FACTS ............................................................................................. 4

ARGUMENT .................................................................................................................. 5

THE STANDARD OF REVIEW ................................................................................. 5

POINT I

COUNT THREE OF PLAINTIFFS' COMPLAINT SUFFICIENTLY
PLEADS A CLAIM UNDER SECTION 20(a) ............................................................ 9

   A. Whether A Complaint Sufficiently Pleads A Claim Under Section
      20(a) Is Governed By The Simplified Notice Pleading Requirement
      of Rule 8(a)(2) And Not The Heightened Pleading Requirement of
      Rule 9(b) ............................................................................................... 11

   B. Culpable Participation Need Not Be Pled At All To Satisfy The
      Pleading Requirements For A Section 20(a) Claim ............................. 11

   C. Plaintiffs Section 20(a) Claim Satisfies Not Only The Modest Notice
      Pleading Requirement Of Rule 8(a)(2) But Also The Heightened
      Pleading Requirement Of Rule 9(b) ..................................................... 12

POINT II

COUNT ONE OF PLAINTIFFS' COMPLAINT SUFFICIENTLY PLEADS
A CLAIM UNDER SECTION 10(b) AND RULE 10b-5 ............................................ 17

   A. Plaintiffs Sufficiently Allege That Defendant Is Liable Under Section
      10(b) and Subsections (a) and (c) of Rule 10b-5 For Participating In A
      Fraudulent Scheme ............................................................................... 18

   B. Plaintiffs Sufficiently Allege That Defendant Is Liable Under Section
      10(b) And Subsection (b) Of Rule 10b-5 For Affirmative Misrepresentations
      And Failing To Disclose Material Information To Plaintiffs .............. 19

      1. Plaintiffs Sufficiently Allege That Defendant Failed To Disclose
         Material Information ................................................................... 19

      2. Plaintiff Sufficiently Allege Reliance ....................................... 21

    3.  Plaintiffs Sufficiently Allege That Defendant Made False Or Misleading Statements ..................................................................22

    4.  Plaintiffs Sufficiently Allege That Defendant Acted With Scienter........23

**POINT III**

**PLAINTIFFS' STATE LAW CLAIMS SET FORTH IN COUNTS TWO, FOUR, FIVE AND SIX ARE SUFFICIENTLY PLED** ....................................28

A.  New Jersey Law Governs Disposition of Defendant's Motion To Dismiss ........28

B.  All of Plaintiffs State Law Claims are Governed by the Notice Pleading Requirements of Rule 8(a)(2)...................................................31

C.  Count Two of Plaintiffs' Complaint Sufficiently Pleads a Direct Breach By Defendant Of Fiduciary Duties Owed To Plaintiffs...........................32

D.  Count Four of Plaintiffs' Complaint Sufficiently Pleads That Defendant Knowingly Aided and Abetted A Breach of Fiduciary Duties ...........................33

    1.  Plaintiffs' Claim for Aiding and Abetting a Breach of Fiduciary Duty Is Sufficiently Pled Under New York Law ...........................33

    2.  Plaintiffs' Claim for Aiding and Abetting a Breach of Fiduciary Duty Is Sufficiently Pled Under New Jersey Law ..................................36

E.  Count Five of Plaintiffs' Complaint Sufficiently Pleads A Claim for Negligent Misrepresentation...................................................................37

    1.  The Complaint Sufficiently Alleges That Defendant Made Negligent Misrepresentations ..................................................................38

    2.  The Complaint Sufficiently Alleges Under New York Law That Defendant Owed a Duty to Plaintiffs.................................................40

    3.  The Complaint Sufficiently Alleges Defendant Justifiably Relied on Defendant's Misrepresentations........................................................42

F.  Count Six of Plaintiffs' Complaint Sufficiently Pleads a Claim for Negligence Under Both New York and New Jersey Law......................................43

**CONCLUSION** ........................................................................................................46

# TABLE OF AUTHORITIES

## CASES

*In re Advanta Corp. Securities Litigation*, 180 F.3d 525 (3d Cir. 1999) ........................................ 24

*In re Aetna Inc. Sec. Litig.*, 34 F. Supp. 2d 935 (E.D. Pa. 1999) .................................................... 27

*Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972) ........................................... 18

*Alexander v. CIGNA Corp.*, 991 F. Supp. 427 (D.N.J. 1998) ......................................................... 40

*In re Allserve Sys. Corp.*, 379 B.R. 69 (Bankr. D.N.J. 2007) ........................................................... 32

*Alphapharma Inc. Securities Litigation*, 372 F.3d 137 (3d Cir. 2004) ........................................... 24

*American Baptist Churches v. Galloway*, 271 A.D. 2d 92, 710 N.Y.S. 2d 12 (1st Dept. 2000) ... 35

*American Express Travel Related Services Co. Inc. v. North America Resources, Inc.*, 691
    N.Y.S. 2d 403 (1st Dept. 1999) ...................................................................................................... 39

*Arnold Chevrolet LLC v. Tribune Co.*, 418 F. Supp.2d 172 (E.D.N.Y. 2006) ........................ 38, 41

*Barbey v. Unisys Corp.*, 256 Fed. Appx. 532 (3d Cir. 2007) ........................................................... 28

*Bearden v. Wyeth*, 482 F. Supp. 2d 614 (E.D. Pa. 2006) ............................................................... 30

*Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007) ............................................................. 8, 31

*Bissell v. Merrill Lynch & Co.*, 937 F. Supp. 237 (S.D.N.Y. 1996) ............................................... 32

*Bondi v. Citigroup, Inc.*, 2005 WL 9758656 (Law Div. 2005) ....................................................... 36

*Brantley Slater v. Skyhawk Transp., Inc.*, 77 F. Supp. 2d 580 (D. N.J. 1999) ............................... 28

*Braunstein v. Benjamin Berman, Inc.*, 1990 WL 192547 (D.N.J. 1990) ........................................ 20

*Breglia v. Norman & Luba, LLC*, 2005 WL 3338295 (App. Div. 2005) ........................................ 39

*In re Campbell Soup Co. Sec. Litig.*, 145 F. Supp. 2d 574 (D. N.J. 2001) .............................. 12, 26

*Capers v. Quest Capital Strategies, Inc.*, 2007 WL 2033831 (D. N.J. 2007) ................................ 31

*Ca. Public Employees' Ret. Sys. v. Chubb Corp.*, 2002 WL 33934282 (D.N.J. 2002) ................ 26

*Chemtex, LLC v. St. Anthony Enter., Inc.*, 490 F.Supp. 2d 536 (S.D.N.Y. 2007) ........................ 36

*Chiarella v. United States*, 445 U.S. 222 (1980) ........................................................................ 20

*Chosun Int'l. Inc. v. Chriska Creations, Ltd.,* 413 F.3d 324 (2d Cir. 2005) ................................. 8

*Collins & Aikman Corp.*, 524 F. Supp. 2d 477 (S.D.N.Y. 2007) ................................................. 19

*Conway v. Icahan & Co.,* 16 F.3d 504 (2d Cir. 1994) ................................................................. 32

*Cromer Finance Ltd. v. Berger*, 2003 WL 21436164 (S.D.N.Y. 2003)....................................... 35

*Davis v. Quality Carriers, Inc.*, 2009 WL 1291985 (D. N.J. 2009) ............................................. 30

*Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505 (D. N.J. 2008) ........................................... 40, 41

*EED Holdings v. Palmer Johnson Acquisition Corp.*, 387 F. Supp. 2d 265 (S.D.N.Y. 2004) ..... 43

*Elkind v. Liggett & Myers, Inc.*, 635 F.2d 156 (2d Cir. 1980) .................................................... 42

*Francis v. United Jersey Bank*, 87 N.J. 15 (1981)................................................................. 32, 33

*Fraternity Fund Ltd. v. Beacon Hill Asset Management, LLC*, 479 F. Supp. 2d 349
(S.D.N.Y. 2007)................................................................................................................ 34, 35

*G.A. Thompson & Co., Inc. v. Partridge,* 636 F.2d 945 (5th Cir. 1981) ..................................... 14

*In re Global Crossing, Ltd. Sec. Litig.*, 322 F. Supp. 2d 319 (S.D.N.Y. 2004)............................ 19

*Hamilton v. Beretta U.S.A. Corp.*, 96 N.Y. 2d 222, 727 N.Y.S. 2d 7 (2001).............................. 43

*Harper v. LG Electronics USA, Inc.*, 595 F. Supp. 2d 486 (D. N.J. 2009) .................................. 29

*Hedges v. United States,* 404 F. 3d 744 (3d Cir. 2005) ................................................................. 8

*Henricksen v. Henricksen,* 640 F.2d 880 (7th Cir. 1981)............................................................ 13

*Higgins v. New York Stock Exchange, Inc.*, 10 Misc. 3d 257, 806 N.Y.S. 2d 339
(Sup. Ct. 2005)........................................................................................................................ 34

*Hubbard v. General Motors Corp.*, 1996 WL 274018 (S.D.N.Y. 1996) ..................................... 42

*Hydro Invs., Inc. v. Trafalgar Power, Inc.,* 227 F. 3d 8 (2d Cir. 2000) ...................................... 38

*Independent Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F.3d 933
(2d Cir. 1998) ............................................................................................................. 21, 32, 34

*Integral Resources (PVT) Ltd. v. Istil Group, Inc.*, 2004 WL 2758672 (D. Del. 2004)...............30

*Jaclyn, Inc. v. Edison Bros. Stroes, Inc.*, 170 N.J. Super. 334 (Law Div. 1979)...........36

*Johnson v. Bryco Arms*, 304 F. Supp. 2d 394 (E.D.N.Y. 2004)...................................44

*Kravitz v. Pressman, Frohlich & Frost, Inc.,* 447 F. Supp. 203 (D. Mass. 1978)........13

*Kushner v. Beverly Enters., Inc.* 317 F.3d 820 (8th Cir. 2003)...................................24

*Lehman Bros. Commercial Corp. v. Minmetals Int'l. Non-Ferrous Metals Trading Co.*, 179 F. Supp. 2d 118 (S.D.N.Y. 2000) .......................................................................................35

*In re Lernout & Hauspie Sec. Litig.*, 236 F. Supp. 2d 161 (D. Mass. 2003)................19

*M & T Bank Corp. v. Gemstone CDO VII, Ltd.*, 2009 WL 921381 (Sup. Ct. 2009).....................43

*McAdams v. Dean Witter Reynolds, Inc.*, 896 F.2d 750 (3d Cir. 1994) .......................32

*McIntosh v. Milando*, 168 N.J. Super. 466 (Law Div. 1979) .......................................43

*Metuchen Sav. Bank v. Pierini*, 377 N.J. Super 154 (App. Div. 2005) .........................39

*Michaels Lispenard Holding Corp.*, 11 A.D. 2d 12, 201 N.Y.S. 2d 611 (1st Dept. 1960)...........38

*Miller v. Forge Mench P'ship Ltd.*, 2001 WL 987922 (S.D.N.Y. 2001) .......................39

*Model Imperial Supply Co. Inc. v. Westwind Cosmetics, Inc.*, 808 F. Supp. 943 (E.D.N.Y. 1992) .................................................................................................................39

*In re Moody's Corp. Sec. Litig.*, 599 F. Supp. 2d 493 (S.D.N.Y. 2009)........................24

*New Jersey Dept. of Environmental Protection v. Gloucester Environmental Management Services, Inc.*, 800 F. Supp. 1210 (D. N.J. 1992) .......................................................39

*Newman v. L.F. Rothschild, Unterberg, Towbin,* 662 F. Supp. 957 (S.D.N.Y.1987)..................43

*In re NorVergence, Inc.*, 384 B.R. 315 (Bankr. D.N.J. 2008).......................................38

*Novak v. Kasakas*, 216 F.3d 300 (2d Cir. 2000)..........................................................24

*In re Nui Secur. Litig.*, 314 *F. Supp.* 2d 388 (D. N.J. 2004).........................................12

*Oran v. Stafford*, 226 F.3d 275 (3d Cir. 2000) ............................................................20

*Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F. 3d 1380 (3d. Cir. 1994)...............8

*Palladin Partners v. Gaon*, 2006 WL 2460650 (D. N.J. 2006)......................................................40

*Payne v. Fujifilm U.S.A., Inc.*, 2007 WL 4591281 (D. N.J. 2007)................................................31

*In re Philip Services Corp. Secur. Litig.*, 383 F. Supp. 2d 463 (S.D.N.Y. 2004).........................13

*Phillips v. County of Allegheny*, 515 F. 3d 224 (3d Cir. 2008) .......................................................8

*Pietrangelo v. NUI Corp.*, 2005 WL 1703200 (D.N.J. 2005) ........................................................31

*P.V. v. Camp Jaycee*, 197 N.J. 132 (2008) .......................................................................... 28, 29

*In re RAIT Fin. Trust Sec. Litig.*, 2008 WL 5378164 (E.D. Pa. 2008).........................................26

*Rochez Bros., Inc. v. Rhoades*, 527 F. 2d 880 (3d Cir. 1975) .......................................................11

*Saltiel v. GSI Consultants, Inc.*, 170 N.J. 297, 788 A. 2d 268 (2002)............................................39

*Schenck v. Bear, Stearns & Co.*, 484 F. Supp. 937 (S.D.N.Y. 1979)............................................32

*Scheurer v. Rhodes*, 416 U.S. 232 (1974) ........................................................................................8

*SEC v. George*, 426 F.3d 786 (6th Cir. 2005) ...............................................................................26

*SEC v. Lucent Techs., Inc.*, 2009 WL 1111234 (D.N.J. 2009).................................................18, 27

*SEC v. KPMG LLP*, 412 F. Supp. 2d 349 (S.D.N.Y. 2006) ...........................................................27

*SEC v. Pasternak*, 561 F. Supp. 2d 459 (D.N.J. 2008)..............................................13, 21, 32, 40

*SEC v. Simpson Capital Mgmt., Inc.*, 586 F. Supp. 2d 196 (S.D.N.Y. 2008) ...............................19

*SEC v. The Infinity Group Co.*, 212 F.3d 180 (3d Cir. 2000)...........................................23, 24, 25

*Shapiro v. UJB Financial Corp.*, 964 F. 2d 272 (3d Cir. 1992)....................................................40

*Slim CD, Inc. v. Heartland Payment Sys., Inc.*, 2007 WL 2459349 (D. N.J. 2007).....................29

*Steiner v. Medquist, Inc.*, 2006 WL 2827740 (D. N.J. 2006)........................................................19

*In re Stonepath Group, Inc. Sec. Litig.*, 2006 WL 890767 (E.D. Pa. 2006).................................26

*Stoneridge Invest. Partners, LLC v. Scientific-Atlanta, Inc.*, 128 S. Ct. 761 (2008)....................21

*Tellabs, Inc. v. Makor Issues & Rights Ltd.*, 127 S.Ct. 2499 (2007).......................................24, 25

*In re Tower Air, Inc.*, 416 F. 3d 229 (3d Cir. 2005) ...................................................................31

*Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F. 3d 446 (3d Cir. 2003) ...............................................30

*TSC Indus. v. Northway, Inc.*, 426 U.S. 438 (1976) ......................................................................21

*Urbach v. Sayles*, 1991 WL 236183 (D. N.J. 1991) .......................................................................37

*U.S. v. Nektalov*, 461 F. 3d 309 (2d Cir. 2006) ..............................................................................35

*Vega v. Fox*, 457 F. Supp. 2d 172 (S.D.N.Y. 2006) ..............................................................43, 44, 45

*In re Viropharma, Inc. Sec. Litig.*, 2003 WL 1824914 (E.D. Pa. 2003)...................................26, 27

*In re Wal-Mart Stores Inc.* 395 F. 3d 1177 (10th Cir. 2005)............................................................8

*Warriner v. Stanton*, 475 F. 3d 497 (3d Cir. 2007) ........................................................................29

*Whitney v. Citibank, N.A.*, 782 F. 2d 1106 (2d Cir. 1986) ........................................................35, 36

## STATUTES

15 U.S.C. § 78(a) ...............................................................................................................................9

15 U.S.C. § 78j .................................................................................................................................17

15 U.S.C. § 78u-4 ............................................................................................................................23

17 C.F.R. § 240.10b-5 ................................................................................................................17, 20

## RULES

Federal Rules Civil Procedure Rule 8(a)(2) .................................................................10, 11, 31, 42

Federal Rules Civil Procedure Rule 9(b)....................................................................10, 11, 12, 13

Federal Rules Civil Procedure Rule 12(b)(6) ..................................................1, 4, 8, 10, 12, 18, 31

The Lautenberg Foundation, Joshua S. Lautenberg and Ellen Lautenberg ("Plaintiffs") respectfully submit this brief in opposition to Defendant, Peter Madoff's ("Defendant") motion, pursuant to Rule 12(b)(6), to dismiss Plaintiffs' Complaint.

## PRELIMINARY STATEMENT

On March 12, 2009, before being sent to prison for most likely the rest of his life, Defendant's brother Bernard Madoff ("Bernard") pleaded guilty to operating a Ponzi scheme that is unprecedented in duration, number of victims and losses sustained. (Spada Decl., Ex. C). Bernard said in his plea allocution: "I operated a Ponzi scheme through the investment advisory side of my business …". He added that the fraud "began in the early 1990s" thus lasting nearly 20 years. (Riccio Decl., Ex. A). He further admitted that he knowingly co-mingled Ponzi scheme profits with profits from the allegedly legitimate side of the business. (Riccio Decl., Ex. A.) The losses resulting from the Ponzi scheme "were at least approximately $50 billion". (Compl. ¶ 9). The victims included philanthropic organizations such as The Lautenberg Foundation, schools, hospitals, charities, and the retirement pension funds of many ordinary, hard-working people.

Defendant says that Plaintiffs' Complaint is devoid of any facts implicating Defendant in the fraud other than "that Defendant is Bernard Madoff's brother" who worked at Bernard L. Madoff Investment Securities LLC ("BLMIS"). (D. br. at 2). The suggestion by Defendant is that for 20 years Bernard acted alone in running a $50 billion Ponzi scheme and that he victimized all sorts of people and institutions, including his "close friends" and "family members". (D. br. at 2). Aside from the fact that it defies common sense to believe that for 20 years Bernard got no help from anyone while operating a $50 billion Ponzi scheme, an SEC

filing prepared by Bernard shows he did get help. Bernard's right-hand man, according to Bernard, was his brother Peter. (Compl., Ex. C).

In 2006, Bernard filed a Uniform Application for Investment Adviser Registration. (Compl., Ex. C). When he pled guilty Bernard admitted that it was he who "completed and filed the form with the SEC". (Riccio Decl., Ex. A). At page 20 of the Form, Bernard directly implicates Peter in the Ponzi scheme in three respects. First, Peter is identified by his brother as the "Director of Trading/Chief Compliance Officer" of BLMIS. This is the entity Bernard confessed was the vehicle for the Ponzi scheme. Second, Bernard identified his brother as a "control" person of BLMIS. Third, Peter held his control position at BLMIS since June, 1969, a period of nearly 40 years. As the co-control persons of BLMIS' massive criminal enterprise, the brothers Madoff had the power to direct or cause the direction of BLMIS' business. (Compl. ¶ 11). And the mission of BLMIS under the co-control of the Madoff brothers was not to operate an honest business but, instead, to run a sham business that became the vehicle for committing the largest financial fraud in American history. Bernard couldn't have done what he did were it not for Peter's conscious avoidance and knowing indifference to the Ponzi scheme.

The Complaint against Defendant is in six counts. Count One charges Defendant as a primary violator of Section 10(b) and Rule 10b-5 of the 1934 Securities Exchange Act. (Compl. ¶¶ 35-39). Count Two charges Defendant with breach of the fiduciary duties he owed directly to Plaintiffs. (Compl. ¶¶ 40-44). Count Three alleges Defendant is jointly and severally liable under Section 20(a) of the 1934 Securities Exchange Act, which imposes derivative liability on a controlling person for the securities law violations of others. (Compl. ¶¶ 45-49). Count Four charges Defendant knowingly aided and abetted the breaches of the fiduciary duties owed by BLMIS and Bernard to Plaintiffs. (Compl. ¶¶ 50-54). Counts Five and Six are rooted in

Defendant's negligence in performing the duties he owed to Plaintiffs as a Control Person, Senior Managing Director, Chief Compliance Officer, Director of Trading and General Counsel of BLMIS. (Compl. ¶¶ 55-62).

## STATEMENT OF FACTS

The core of Defendant's 12(b)(6) motion is that Plaintiffs' Complaint fails to allege sufficient facts and/or cognizable legal theories to support any of the six Counts in the Complaint. According to Defendant, the Complaint is nothing more than a hurried effort to tar Defendant with "fraud by hindsight" . . .(D. br. at 4). We summarize below some of the specific facts alleged in detail in the Complaint:

- BLMIS claimed to provide investment advisory services to Plaintiffs and others by taking custody and control of client funds and investing those funds on a fully discretionary basis. (Compl., Ex. C). In doing so, the Madoff brothers promised Plaintiffs and other investors that they could personally rely on Bernard and Peter rather than a "faceless organization." (Compl., Ex. A). The Complaint alleges Plaintiffs reposed their complete faith and trust in BLMIS and the persons who controlled BLMIS. Plaintiffs had no discretion whatsoever with respect to any investment decisions made by BLMIS, thus giving rise to fiduciary duties owed by Defendant to Plaintiffs. (D.br. at 33). (Compl. ¶¶ 8, 16-23);

- BLMIS sales literature credits both Bernard and Peter with the success supposedly achieved by BLMIS and with operating a highly ethical business, even though we now know BLMIS was insolvent at all times herein relevant and was nothing more than a "front" for a giant Ponzi scheme. (Compl. ¶¶ 9, 11, 34) (Compl., Ex. A);

- Bernard and Peter worked "side by side" for 40 years at BLMIS. For 20 of those 40 years, Peter consciously avoided, consciously disregarded, and consciously ignored the obvious reality that BLMIS was a sham, devoted entirely to operating

a $50 billion Ponzi scheme that ultimately resulted in Bernard's incarceration. (Compl. ¶ 11);

- Defendant was the technology expert at BLMIS. (Compl. ¶ 11). Notwithstanding his technology skills, however, it is not disputed that for nearly 20 years he controlled a criminal enterprise that (i) regularly used technology to create and send to BLMIS investors thousands of false account statements; (ii) regularly used technology to create false trading information; and (iii) regularly used technology to create false financial statements filed with the SEC. (Compl. ¶ 15). To quote Bernard: "I knowingly caused false trading information and client account statements that reflected the bogus transactions and positions..." He added that BLMIS filed "false and misleading certified audit reports and financial statements with the SEC..." (Riccio Decl., Ex. A). All of this information, created by means of technology occurred on Peter's watch and were consciously disregarded by him in contravention of his duties as Chief Compliance Officer, Director of Trading, General Counsel, Senior Managing Director and co-control person of BLMIS;

- Since June, 1969, Defendant has been a control person, Director of Trading, Chief Compliance Officer, Senior Managing Director, and General Counsel of BLMIS. His job was to, *inter alia,* direct the management and policies of BLMIS so as to detect, prevent and report violations of any laws or regulations by BLMIS or its employees as well as to protect the funds of BLMIS investors. (Compl. ¶15). Defendant failed miserably to perform every essential element of his myriad

functions and chose instead to turn a blind eye for 20 years to an-ongoing massive Ponzi scheme occurring just a few feet from his office.  (Compl. ¶¶14, 15);

- For many years prior to Bernard's admission of guilt, there were numerous and obvious material red flags and alerts of fraudulent activity related to the business of BLMIS that were consciously ignored, consciously concealed, and/or consciously disregarded by Defendant. (Compl. ¶¶ 31-34).  Included among the red flags and alerts of fraud was the lack of transparency of BLMIS' business, the consistently abnormal profits purportedly earned by BLMIS for its clients, a pattern of security purchases that were always at lows and sales that were always at highs, financial journal articles critical of BLMIS, detailed complaints to the SEC questioning the business practices of BLMIS, and the retention by BLMIS of a now indicted accountant as auditor who ran a three employee accounting firm out of a Rockland County strip mall.

The factual allegations of the Complaint show that Defendant was not merely Bernard's brother; he was his *de facto* partner in crime whose conscious avoidance of the obvious effectively covered up the Ponzi scheme. The undisputed fact is Defendant was the Director of Trading, Chief Compliance Officer, Senior Managing Director, General Counsel, and co-control person of an entity through which the longest and largest financial fraud in American history was perpetrated under circumstances where Defendant was either knowingly indifferent to the Ponzi scheme or actually aware of it. (Compl. ¶36).

Plaintiffs and other innocent investors have been "ripped-off".  Some have seen their lives ruined and life savings stolen.  Some charitable institutions have been decimated to the

point where they may never recover. And public confidence in financial markets and market professionals as a result of the Ponzi scheme has been shaken to the core.

Defendant says Plaintiffs' Complaint is "fraud by hindsight". (D. br. at 4). Of course it is. How could Plaintiffs and the other victims take action based on anything other than "hindsight" given that it was Defendant who actually participated in the creation and maintenance of an environment of secrecy with respect to the business practices of BLMIS for at least 20 years thereby allowing a $50 billion Ponzi scheme to go undetected.

# ARGUMENT

## STANDARD OF REVIEW

Defendant has significantly understated the heavy burden he must satisfy to prevail on a 12(b)(6) motion to dismiss. A motion that, if granted, would deprive Plaintiffs of both their right to obtain discovery and right to a trial by jury.

Not only, as Defendant concedes, must all well-pled allegations in the Complaint be deemed true but Plaintiffs' Complaint must also receive the benefit of every reasonable inference of fact. Where an allegation is capable of several inferences courts should draw the inference most favorable to the non-moving party. *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F. 3d 1380, 1384-1385 (3d. Cir. 1994). On a motion to dismiss, the court should not weigh the evidence, *see Chosun Int'l. Inc. v. Chriska Creations, Ltd.,* 413 F.3d 324, 327 (2d Cir. 2005); *In re Wal-Mart Stores Inc.* 395 F. 3d 1177, 1189 (10th Cir. 2005), or be concerned with who will ultimately prevail at trial, *see Scheurer v. Rhodes,* 416 U.S. 232, 236 (1974).

Factual allegations in a complaint are sufficient if they show an entitlement to relief above "the speculative level" when viewed in light of the assumption that all of the complaint's allegations are true. *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1965 (2007). The "above the speculative level" standard "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips v. County of Allegheny,* 515 F. 3d 224, 234 (3d Cir. 2008). The moving party bears the burden of showing that the plaintiff has failed to allege such facts. *Hedges v. United States,* 404 F. 3d 744, 750 (3d Cir. 2005). As set forth below, Defendant cannot meet this burden here.

## COUNT THREE OF PLAINTIFFS' COMPLAINT SUFFICIENTLY PLEADS A CLAIM UNDER SECTION 20(a)

Count Three of Plaintiffs' Complaint alleges that Defendant has violated Section 20(a) of the 1934 Securities Exchange Act, 15 U.S.C. § 78(a). Section 20(a) imposes secondary personal liability on persons who have the authority to control another person or entity that committed a primary violation of the securities laws. Controlling persons, in short, can be vicariously liable for Section 10(b) and Rule 10b-5 violations committed by others. Section 20(a) provides:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

Here, Count Three alleges Defendant is a controlling person within the meaning of Section 20(a) and, by virtue thereof, is as liable to Plaintiffs as are the primary securities law violators. Defendant has offered nothing to show that he "acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action." 15 U.S.C. § 78(a).

The stock market crash of 1929 gave rise to the enactment of the federal securities laws. A central purpose of Section 20(a) is to prevent individuals from shielding themselves from personal liability by hiding behind legal fictions and, instead, holding them personally accountable for market frauds. The BLMIS website expressly represents that Bernard and Peter will not hide behind "faceless organizations". (Compl., Ex. A). In words spoken many years ago, but no less apt today, Chairman Rayburn quoted President Woodrow Wilson:

> Society cannot afford to have individuals wield the power of thousands without personal responsibility. It cannot afford to let its strongest men be the only men who are inaccessible to the law. Modern democratic society, in particular, cannot afford to constitute its economic undertakings upon the monarchial or aristocratic principle and adopt the fiction that the kings and great men thus set up can do no wrong which will make them personally amenable to the law which restrains smaller men; that their kingdom, not themselves, must suffer for their blindness, their follies and their transgressions of right. *See,* H.R. Rep. No. 73-1383 at 5 (1934).

Section 20(a) implements the policy of personal accountability for market fraud by imposing joint and several personal liability on every person who "directly or indirectly controls any person liable" under any provision of the 1934 Securities Exchange Act.

Defendant's motion cannot and does not challenge the sufficiency of the legal theory underlying Count Three. (D. br. at 28). In that regard, it is noteworthy that Defendant does not dispute two crucial elements of Plaintiffs' Section 20(a) claim: (i) the existence of an underlying violation of the 1934 Securities Exchange Act; and (ii) that Defendant is a control person within the meaning of Section 20(a). All that Defendant argues in support of his 12(b)(6) motion is that Count Three fails to plead sufficient facts to establish Defendant's culpable participation as a control person.

We argue three points in response to Defendant's challenge to Count Three. First, whether a Section 20(a) claim has been sufficiently pled is determined by the notice pleading requirement of Rule 8(a)(2) and not the heightened pleading Rule 9(b) standard. Second, it has been repeatedly held that culpable participation in the context of a Section 20(a) claim does not have to be pled at all in order to survive a Rule 12(b)(6) motion to dismiss. Third, Plaintiffs Complaint more than adequately pleads Defendant's culpable participation as a control person in connection with the underlying securities law violations.

## A. Whether A Complaint Sufficiently Pleads A Claim Under Section 20(a) Is Governed By The Simplified Notice Pleading Requirement of Rule 8(a)(2) And Not The Heightened Pleading Requirement of Rule 9(b)

Defendant argues, without any meaningful discussion or analysis, that the sufficiency of Plaintiffs' Section 20(a) claim as asserted in Count Three must satisfy the heightened pleading requirements of Rule 9(b). (D. br. at 30). This is not a correct statement of the law. In *In Re Able Laboratories,* Judge Greenaway specifically held that Rule 8(a)(2), not Rule 9(b), governs the pleading sufficiency of claims brought under Section 20(a). 2008 U.S. Dist. LEXIS 23538 at n. 4.[1]

## B. Culpable Participation Need Not Be Pled At All To Satisfy The Pleading Requirements For A Section 20(a) Claim

Assuming for sake of discussion that the Third Circuit will continue to adhere to the distinctly minority view that culpable participation is an element of a Section 20(a) claim that a plaintiff must prove at trial,[2] Judge Greenaway recently observed that "the Third Circuit does not require that culpable participation be pled in order to establish controlling person liability...[c]ulpable participation need not be pled in order to state a claim for controlling person liability. *In Re Able Laboratories Sec. Litig., supra.,* p. 27 (relying on decisions by Judges Wolfson, Bassler and Irenas to the same effect). There are two reasons why culpable

---

[1] For a detailed discussion explaining why Rule 8(a)(2), and not Rule 9(b), applies to the pleading sufficiency of a Section 20(a) claim, see the analysis in *In Re Enron Corporation,* 2003 U.S. Dist. LEXIS 1668 at 14-18 (relying in part on Judge Bassler's decision in *Derensis v. Coopers & Lybrand Chartered Accounts,* 930 F. Supp. 1003, 1013 (D.N.J. 1996)).

[2] The Third Circuit adheres to the view that culpable participation, though not required to be pled, is nonetheless an element of a Section 20(a) claim that a plaintiff will need to prove at trial. *Rochez Bros., Inc. v. Rhoades,* 527 F. 2d 880 (3d Cir. 1975). Most circuits do not consider culpable participation to be an element of a Section 20(a) claim. For a discussion of the varying approaches among the circuits as to whether culpable participation is or is not an element of a plaintiff's Section 20(a) *prima facie* cause of action *see* Massey, *Control Person Liability Under Section 20(A): Striking A Balance Of Interests For Plaintiffs And Defendants,* 2005 Houston Business and Tax Law Journal, 109; and *Bromberg & Lowenfels On Securities Fraud and Commodities Fraud* §7:348-349 (recognizing that the Third Circuit follows a distinctly minority view when making culpable participation a proof element of a Section 20(a) claim. The authors believe the better view is the majority view which does not make culpable participation an element to be proven by plaintiff asserting a Section 20(a) claim).

participation need not be pled. First, facts evidencing culpable participation typically will emerge only after discovery. Second, evidence of culpable participation is usually within the defendant's control. *Derensis, supra.* For these reasons, it is well settled that requiring a plaintiff to plead culpable participation presents an unreasonable and unnecessary pleading burden on a plaintiff alleging a Section 20(a) claim. *See In re Campbell Soup Co. Sec. Litig.*, 145 *F. Supp.* 2d 574 (D. N.J. 2001)(holding that a plaintiff is not required to allege culpable participation at the pleading stage); *In re Nui Secur. Litig.*, 314 *F. Supp.* 2d 388 (D. N.J. 2004)(holding that culpable participation does not have to be pled in order to survive a motion to dismiss).

**C.      Plaintiffs Section 20(a) Claim Satisfies Not Only The Modest Notice Pleading Requirement Of Rule 8(a)(2) But Also The Heightened Pleading Requirement Of Rule 9(b)**

As noted previously, the only Section 20(a) element that Defendant contends has not been sufficiently pled in Count Three of Plaintiffs' Complaint is culpable participation. The underlying securities law violation and Defendant's control status under Section 20(a) have not been challenged by Defendant as being insufficient in any way.

Defendant's challenge to the sufficiency of the Section 20(a) claim boils down to the argument that the culpable participation aspect of Plaintiff's Section 20(a) claim has not been sufficiently pled with particularity. But as noted above, culpable participation need not be pled at all to survive a 12(b)(6) motion to dismiss. Furthermore, as noted above, the sufficiency of a Section 20(a) claim is to be measured not by the heightened pleading requirements of Rule 9(b) but by the simplified notice pleading requirement of Rule 8(a)(2).

Notwithstanding that our response to Defendant's motion could stop here, a reading of Plaintiffs' Complaint, in accordance with the Rule 12(b)(6) standard of review, shows that the

Section 20(a) claim contains detailed facts supporting the allegation that Defendant is a culpable participant in the underlying securities law violations.

The meaning of the term culpable participation has not been precisely defined. Whether there is culpable participation is generally determined on the basis of a fact intensive analysis. *In Re Philip Services Corp. Secur. Litig.,* 383 F. Supp. 2d 463, 486 (S.D.N.Y. 2004). If the control person is a supervisor, such as Defendant is here, then participation by the control person is culpable if that person did not have an adequate system of internal controls or did not enforce the internal controls in a reasonable and proper manner. *SEC v. Pasternak,* 561 F. Supp. 2d 459 (D.N.J. 2008).

Culpable participation may include both action and inaction by the controlling person that directly or indirectly induces the underlying securities law violation. Examples of action and/or inaction by controlling persons that have been held sufficient to show culpable participation under Section 20(a) claim include: (1) where, like here, the control person was alleged to be the "Vice President of Compliance" during the time that the Company "was wholly deficient in its compliance with FDA requirements" and "the company continued to violate FDA regulations" under the compliance officer's "watch," *see In Re Able Labs., supra.* at 26 n.42; (2) where the control person failed to maintain and enforce a reasonable and proper system of supervision and internal control over controlled persons so as to prevent securities law violations and, like here, unusual trading activities "should have attracted the attention of management or compliance personnel," *see Kravitz v. Pressman, Frohlich & Frost, Inc.,* 447 F. Supp. 203 (D. Mass. 1978); (3) where the control person had internal compliance controls but failed to enforce those controls, *Henricksen v. Henricksen,* 640 F.2d 880 (7th Cir. 1981); and (4) where the control person failed to exercise his control power with respect to day-to-day administrative matters

which, had he done so, could have prevented the underlying securities law violations, *see G.A. Thompson & Co., Inc. v. Partridge,* 636 F.2d 945 (5th Cir. 1981).

In support of his motion to dismiss, Defendant has presented nothing to demonstrate the absence of his culpable participation or the presence of his good faith. Defendant could have said something in his defense because he is allowed, when making a motion to dismiss, to rely on "documents attached to or specifically referenced in the complaint, and matters of public record." *In Re Able Lab., supra.* p. 10. Defendant understood this and said so in his brief (D. br. at 5 n.3). His silence speaks volumes.

This Defendant could have, but hasn't, offered an explanation concerning his designation by Bernard as Chief Compliance Officer, Director of Trading and co-control person of BLMIS in the SEC Investment Advisor Application Form. Defendant could have, but has not, said something about precautionary measures he took to detect and prevent fraud, efforts he made to monitor trading activities, responses he made to regulatory inquiries, reactions he had to countless red flags flying all over the place, other alerts of fraudulent activity, and efforts he made to promote a culture of ethical behavior and compliance. He could have at least said under oath "I didn't know". Instead, he says nothing.

Defendant could have, but hasn't, commented upon his brother's guilty plea and plea allocution. Defendant could have, but hasn't, made a summary judgment motion and submitted an affidavit attempting to show his absence of culpable participation and good faith. Defendant could have, but refused, to agree to sit for an early deposition during which he could have, but hasn't, offered evidence of his innocence.

The failure to come forward with any benign explanation for his conscious avoidance of the Ponzi scheme despite his status as a control person, Director of Trading, Chief Compliance

Officer, and Senior Managing Director has all the indicia of a person likely to invoke his Fifth Amendment Privilege. He may never be willing to voluntarily explain under oath his actions and inactions, other than through his counsel's words.

The Complaint shows that Defendant did nothing for 20 years to protect against, discover, disclose, or mitigate the largest Ponzi scheme in American history. Even if he developed internal compliance controls, he did not enforce them. He turned a blind eye to public alerts of fraudulent activity at BLMIS; he ignored numerous red flags indicative of BLMIS' fraudulent practices; he was indifferent to bizarre trading activities at BLMIS; and for 20 years he failed to prevent even one of the thousands of bogus account statements from being sent to BLMIS' investors.

The Ponzi scheme went on unabated for years. Defendant was the "cop on the beat". He was the one supposed to be "on watch" and to protect investors against fraud. Yet he did nothing to stop the fraud. But he didn't just consciously look the other way. He also affirmatively furthered the fraud. He was the person responsible for false representations made in sales literature. He was the person responsible for ensuring the accuracy of account statements. He was the person responsible for the accuracy of all SEC filings, especially financial data. Yet we now know that the sales literature for which he was responsible was false, the account statements for which he was responsible were complete fabrications, and the SEC filings and financial data for which he was responsible were also phony. What else he knew, when he knew it, and why for 20 years he did nothing to stop the Ponzi scheme must await discovery.

What need not await discovery are findings recently reported by a trio of Fortune Magazine investigative reporters. (Riccio Decl., Ex. B.). First, they wrote that if Bernard was the center of BLMIS' "solar system, then "the nearest planet was his brother Peter". Second,

Peter either knew or should have known that "some $250 million" had been "laundered" from the Ponzi scheme into the so-called legitimate business arm of BLMIS. Third, several days after law enforcement authorities had "locked down" the BLMIS office, "Peter instructed several employees to carry four boxes and two shopping bags filled with documents downstairs, where [Peter's] driver was waiting with his own Ford Explorer." Federal agents intercepted the driver and stopped him. Peter was then assigned an "armed FBI 'escort' to accompany him wherever he went on the premises that day and later was told not to return at all."

To suggest that all of the foregoing actions and inactions by Defendant fail to sufficiently plead culpable participation under Section 20(a) borders on the frivolous and is completely unsupported in fact and law.

## POINT II

## COUNT ONE OF PLAINTIFFS' COMPLAINT SUFFICIENTLY PLEADS A CLAIM UNDER SECTION 10(b) AND RULE 10b-5

Defendant's motion only challenges Plaintiffs' claims under subsection (b) of Rule 10b-5. Defendant argues nothing about Plaintiffs' claims based on subsections (a) and (c) of Rule 10b-5 (D. br. at 12-27). We show below that Plaintiffs' allegations are not only sufficient to state a claim for a violation of subsection (b) of Rule 10b-5 but are also sufficient under subsections (a) and (c) as well.

Section 10(b) of the Securities and Exchange Act of 1934 makes it unlawful for "any person, directly or indirectly . . . [t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j. Pursuant to this section, the SEC has promulgated Rule 10b-5, which in three distinct subsections makes it unlawful either:

(a)  To employ any device, scheme, or artifice to defraud,

(b)  To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c)  To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

Defendant seeks to escape liability under subsection (b) of Rule 10b-5 in four ways by arguing that: (1) Plaintiffs failed to allege reliance on Defendant's misrepresentations (D. br. at 26-27); (2) Defendant never made an affirmative misrepresentation (D. br. at 15-19); (3) Defendant was under no duty to disclose material information (D. br. at 19-20); and (4) Plaintiffs

do not sufficiently allege scienter. (D. br. at 20-26). None of these arguments are sufficient to satisfy the strict requirements of a Rule 12(b)(6) motion.

A. **Plaintiffs Sufficiently Allege That Defendant Is Liable Under Section 10(b) and Subsections (a) and (c) of Rule 10b-5 For Participating In A Fraudulent Scheme**

Unlike subsection (b) of Rule 10b-5, subsections (a) and (c) do not require that a defendant make any untrue statement. "Although Rule 10b-5(b) requires a plaintiff to allege and prove that an untrue statement of a material fact (or omission) was made, 'the first and third subparagraphs [of Rule 10b-5] are not so restricted.'" *SEC v. Lucent Techs., Inc.*, 2009 WL 1111234 at *6 (D.N.J. 2009) (quoting *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153 (1972)). "To state a claim based on conduct violating subsections (a) and (c) of Rule 10b-5, a private plaintiff must allege (1) that the defendant committed a deceptive or manipulative act, (2) in furtherance of the alleged scheme to defraud, (3) with scienter, and (4) reliance." *Id.*

Defendant argues that Plaintiff did not specifically allege that he executed the false public disclosures that are described in the Complaint. (D. br. at 15-17). This argument misses the mark because it fails to address the distinction between making claims under subsection (b) of Rule 10b-5 as opposed to the sufficiency of allegations under either subsection (a) or (c) of Rule 10b-5. The Supreme Court recognized this distinction when it said that "[c]onduct itself can be deceptive" without a "specific oral or written statement". *Stoneridge*, 128 S.Ct. at 769.

A "defendant may be held liable for the fraudulent *scheme* behind the misstatements." *Lucent Techs., Inc.*, 2009 WL 1111234, at *15 (citing *In re Globlal Crossing, Ltd. Sec. Litig.*, 322 F. Supp. 2d 319, 337 n.17 (S.D.N.Y. 2004)). Courts have held that conduct far less egregious than the conduct of Defendant alleged here constituted a deceptive or manipulative act

in furtherance of a scheme to defraud that gave rise to liability not under subsection (b) but under subsections (a) and (c) of Rule 10b-5. *See, e.g., SEC v. Simpson Capital Mgmt., Inc.*, 586 F. Supp. 2d 196, 205 (S.D.N.Y. 2008) (illegal late trading); *Collins & Aikman Corp.*, 524 F. Supp. 2d 477, 480-81 (S.D.N.Y. 2007) (structuring round-trip transactions); *In re Global Crossing, Ltd. Sec. Litig.*, 322 F. Supp. 2d 319, 336-37 (S.D.N.Y. 2004) (sham swap transactions to inflate revenues).

For example, allegations of submitting false regulatory reports to the FDA, falsifying quality control tests, hiring inexperienced employees and fostering "a culture of dishonesty to conceal adverse quality control results" has been held to satisfy the pleading requirements under subsections (a) and (c) of Rule 10b-5. *In re Able Labs. Sec. Litig.*, *supra*, at *20. Similarly, allegations that a defendant, *inter alia*, "created and modified the software . . . used to overcharge" customers has been held to be sufficient to state a claim under subsections (a) and (c) of Rule 10b-5. *Steiner v. Medquist, Inc.*, 2006 WL 2827740 at *22 (D. N.J. 2006). Liability may be imposed "on any person who substantially participates in a manipulative or deceptive scheme by directly or indirectly employing a manipulative or deceptive device (like the creation or financing of a sham entity) intended to mislead investors, even if a material misstatement by another person creates the nexus between the scheme and the securities market." *Id.* at *21 (quoting *In re Lernout & Hauspie Sec. Litig.*, 236 F. Supp. 2d 161, 173 (D. Mass. 2003)). There is "no justification to limit liability under § 10(b) to only those who draft or edit the statements released to the public." *Id.* (internal quotation omitted).

For a description of Defendant's substantial participation in the Ponzi scheme see the culpable participation discussion in Point I (c) and the Statement of Facts *infra*.

**B. Plaintiffs Sufficiently Allege That Defendant Is Liable Under Section 10(b) And Subsection (b) Of Rule 10b-5 For Affirmative Misrepresentations And Failing To Disclose Material Information To Plaintiffs**

Unlike subsection (a) and (c) of Rule 10b-5 and to which Defendant makes no argument, Defendant does argue that Plaintiffs failed to adequately allege liability under Section 10(b) and subsection (b) of Rule 10b-5. This argument is without merit.

**1. Plaintiffs Sufficiently Allege That Defendant Failed To Disclose Material Information**

A violation of Section 10(b) and Rule 10b-5 may consist of either a "material misrepresentation *or omission*." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d at 275 (emphasis added); *Froid v. Berner*, 649 F. Supp. at 1421; 17 C.F.R. § 240.10b-5(b). "When an allegation of fraud . . . is based on nondisclosure, there can be no fraud unless a party has a duty to disclose. Corporate 'insiders,' particularly officers, directors, or controlling stockholders, have a duty to disclose material information, because a fiduciary or similar relation of trust and confidence exists between these insiders and the shareholders." *Braunstein v. Benjamin Berman, Inc.*, 1990 WL 192547, at *10 (D.N.J. 1990) (internal citations omitted). As the Supreme Court has explained:

> [A]n affirmative duty to disclose material information, which has been traditionally imposed on corporate 'insiders,' particular officers, directors, or controlling shareholders. [The SEC] and the courts have consistently held that insiders must disclose material facts which are known to them by virtue of their position but which are not known to persons with whom they deal and which, if known, would affect their investment judgment.

*Chiarella v. United States*, 445 U.S. 222, 227 (1980) (citing *In re Cady, Roberts & Co.*, 40 S.E.C. 907 (1961)). "[A] duty to disclose may arise when there is . . . an inaccurate, incomplete or misleading prior disclosure." *Oran v. Stafford*, 226 F.3d 275, 285-86 (3d Cir. 2000). Because

Plaintiffs had discretionary accounts with BLMIS and because there have been prior false disclosures, Defendant had a duty to disclose. *Pasternak*, 561 *F. Supp.* 2d at 499; *Independent Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 *F*.3d 933 (2d Cir. 1998).

The inaccurate, incomplete and misleading public disclosures referred to in the Complaint (Compl. ¶¶ 31-39) combined with Defendant's position as a control person, General Counsel, Senior Managing Director, Director of Trading and Chief Compliance Officer imposed a fiduciary duty or similar relation of trust or confidence upon Defendant to disclose the material information regarding the massive fraud at BLMIS that contradicted prior false disclosures.

It was Defendant who had the responsibility of verifying the accuracy of BLMIS' reporting to the SEC, reporting to investors and supervision of BLMIS' compliance with applicable laws. (Compl. ¶¶ 14-15). Defendant's duty was enhanced because Plaintiffs investments were managed on a fully discretionary basis. All of this gave rise to a duty to disclose material information which Defendant consciously failed to do.

### 2.      Plaintiffs Sufficiently Allege Reliance

Defendant's argument that the Court should dismiss the Complaint because Plaintiffs did not allege specific reliance on Defendant's omissions is also incorrect. The Supreme Court has found that there is a rebuttable presumption of reliance in two different circumstances: (1) an omission of a material fact by someone with a duty to disclose and (2) under the fraud-on-the-market doctrine. *Stoneridge Invest. Partners, LLC v. Scientific-Atlanta, Inc.*, 128 S. Ct. 761, 769 (2008). Here, Defendant omitted to disclose material facts despite his duty to do so.

Materiality is defined as a "substantial likelihood under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder." *TSC Indus. v. Northway, Inc.*, 426 U.S. 438, 449 (1976). Defendant does not dispute, nor could

he, that his failure to disclose the facts described in the Complaint was material under *Northway.*

(Compl. ¶¶ 31-39).

### 3. Plaintiffs Sufficiently Allege That Defendant Made False Or Misleading Statements

Plaintiffs adequately plead that Defendant was:

> responsible for making and/or acquiesc[ed] in the making of affirmative misrepresentations contained in financial reports of BMIS filed with the SEC. For example, since at least 2002, BMIS has filed with the SEC Annual Audit Reports on Form x-17A-5. At a time when BMIS was . . . these Reports (i) falsely listed BMIS' total assets as being between $845 million and $1.93 billion; (ii) misrepresented BMIS' Statement of Income; (iii) misrepresented BMIS' Statement of Cash Flows; (iv) misrepresented BMIS' Computation of Net Capital; and (v) misrepresented BMIS' Computation for Determination of Reserve Requirements.

(Compl. ¶ 34).

In addition to BMIS' filings with the SEC, Plaintiffs alleged that Defendant was:

> Responsible for making and/or acquiescing in making of affirmative misrepresentations contained in account statements provided by BMIS to investors. For example, the account statement for the period ending 11/30/08 for the Foundation lists purchases and sales in the Fidelity Spartan U.S. Treasure Money Market Fund. Upon information and belief no such Fund existed during that time period. Upon information and belief, most if not all of the transactions listed on Plaintiffs account statements were materially false and misleading.

(Compl. ¶ 34). These are the types of affirmative misstatements that should be closely vetted by senior management, heads of trading, directors of compliance and general counselors, such as Defendant.

The fraud perpetrated by BLMIS and the Madoff brothers cannot realistically be compared to the comparatively minor instances of fraud outlined in nearly all of the cases cited *infra.* The Madoff scandal is not akin to a company utilizing a single offshore entity or illegally

engaging in late trades. The Madoff scandal was a massive fraud in which Defendant – BLMIS' co-control person, Chief Compliance Officer, Senior Managing Director, Head of Trading, and General Counsel – unbelievably claims through his lawyers, rather than himself under oath, to know nothing about. Plaintiffs have sufficiently alleged that Defendant, at a minimum, consciously avoided knowing about this massive fraud despite his "company position," and job responsibilities to protect against such a fraud. Defendant asks this Court to sanction Defendant's abdication of his responsibilities. This Court should do the opposite and find that Plaintiffs have sufficiently pleaded that Defendant can be held liable based upon making or acquiescing in making these false and misleading statements because it was his responsibility to ensure their accuracy. Having held himself out as fulfilling this role, both in SEC filings and BLMIS' website (Compl., Ex. A), Defendant should not now be permitted to sidestep personal liability.

### 4. Plaintiffs Sufficiently Allege That Defendant Acted With Scienter

Defendant further attempts to escape liability by arguing that Plaintiffs failed to allege that Defendant acted with the requisite scienter to establish liability under the securities laws. (D. br. at 20-26).

"Scienter is 'a mental state embracing intent to deceive, manipulate or defraud.'" *SEC v. The Infinity Group Co.*, 212 F.3d 180 (3d Cir. 2000) (quoting *Hochfelder*, 425 U.S. at 193). Pursuant to the PSLRA, in order to sufficiently plead scienter in the context of a 10b-5 action, a plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."[3] 15 U.S.C. § 78u-4(b) (emphasis added); *see also*

---

[3] To the extent that Fed. R. Civ. P. 9(b) conflicts with the requirements of the PSLRA by allowing general pleading with respect to mental state, the PSLRA "supersedes Rule 9(b) as it relates to Rule 10b-5 actions." *In re*

*Tellabs, Inc. v. Makor Issues & Rights Ltd.*, 127 S.Ct. 2499 (2007); *Winer Family Trust*, 503 F.3d at 328-29. A plaintiff can plead the necessary scienter for a securities violation under 10b-5 by alleging, among other things, "facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d at 276; *see also The Infinity Group Co.*, 212 F.3d at 192. As the Third Circuit has recognized, reckless conduct includes:

> Highly unreasonable (conduct), involving not merely simple, or even inexcusable negligence but an extreme departure from the standards of ordinary care,. . . which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.

*The Infinity Group Co.*, 212 F.3d at 192.

A plaintiff's allegations are sufficient to plead recklessness "by alleging, inter alia, that a defendant (1) 'engaged in deliberately illegal behavior;' (2) 'knew facts or had access to information suggesting that their public statements were not accurate;' or (3) 'failed to check information they had a duty to monitor.'" *In re Moody's Corp. Sec. Litig.*, 599 F. Supp. 2d 493, 514 (S.D.N.Y. 2009) (quoting *Novak v. Kasakas*, 216 F.3d 300, 311 (2d Cir. 2000) (citations omitted)). Defining "recklessness" requires reference to the underlying facts of previous cases. The Second Circuit has recognized that: (1) "an egregious refusal to . . . investigate the doubtful, may in some cases rise to an inference of . . . recklessness," and (2) "allegations of recklessness [can] be sufficient where plaintiffs alleged facts demonstrating that defendants failed to review or check information that they had a duty to monitor." *Novak*, 216 F.3d at 308-10 (collecting cases); *see also Kushner v. Beverly Enters., Inc.* 317 F.3d 820, 828 (8th Cir. 2003) ("[R]ecklessness is shown when alleged facts demonstrate that the defendants failed to review or

---

*Alphapharma Inc. Securities Litigation*, 372 F.3d 137, 148 (3d Cir. 2004) (*quoting In re Advanta Corp. Securities Litigation*, 180 F.3d 525, 530 (3d Cir. 1999)).

24

check information that they had a duty to monitor, or ignored obvious fraud.").

A complaint survives a motion to dismiss if "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc.*, 127 S.Ct. at 2509-10; *see also Winer Family Trust*, 503 F.3d at 328-29. In making this determination, the "complaint must be 'considered in its entirety.'" *Tellabs, Inc.*, 127 S.Ct. at 2509.

Taken as a whole, the allegations in Plaintiffs' Complaint raise a strong inference of recklessness. Indeed, the allegations are such that there is a strong inference that Defendant's failure to act was an "extreme departure" from the expected standard of care. *See* Complaint, Statement of Facts herein, and Point I(C), *infra*.

Nor are protestations of "I didn't know" or other claims of good faith sufficient to withstand a motion to dismiss. Indeed, a good faith belief as to the truth or accuracy "is not a 'get out of jail free card.'" *The Infinity Group Co.*, 212 F.3d at 193. Rather, even if a defendant can prove a good faith belief, that defendant can be liable for a securities violation where that "belief was based upon nothing more than a reckless disregard of the truth." *Id.* at 193. Indeed, "'ignorance provides no defense to recklessness where a reasonable investigation would have revealed the truth to the defendant.'" *Id.* at 193 (upholding and quoting findings of district court).

Faced with the similar argument to that made here of "I didn't know" and "I wasn't involved", the court had "little trouble concluding" that, particularly given his experience in the business, the defendant "knew, or should have known, that the scheme was fraudulent" where the defendant "contend[ed] that he truly believed [his co-defendant] and that he himself lost money in the purported trades [because] these facts do not controvert the evidence that [the

defendant] encouraged people to invest in a program, the details of which he knew virtually nothing." *SEC v. George*, 426 F.3d 786, 793 (6th Cir. 2005) (quoting district court opinion). The allegations in *George* are strikingly similar to those made here. As in *George*, Defendant here was experienced in the business, was a co-control person of BLMIS, Chief Compliance Officer, Senior Managing Director, Director of Trading and General Counsel of BLMIS. He also held various positions with NASDAQ, including its board of governors, its executive committee and the chairman of its trading committee. (Compl. ¶ 15). Given his overall experience and his myriad responsibilities at BLMIS, Defendant cannot escape liability by having done nothing to investigate and having abdicated himself of any responsibility for the Ponzi scheme. As in *George*, Defendant's "scienter [is] established through his failure independently to verify the legitimacy of the scheme." *Id.* at 797.

Alleging the "senior positions" of defendants within the corporation; the "relationship between the subject of the fraud" and the company's "core business;" and defendant's access to information is adequate to plead "strong circumstantial evidence supporting conscious disregard or recklessness." *In re RAIT Fin. Trust Sec. Litig.*, 2008 WL 5378164 at *12 (E.D. Pa. 2008). "Courts have repeatedly held . . . that knowledge of core activities . . . may be imputed to its highest officials." *In re Stonepath Group, Inc. Sec. Litig.*, 2006 WL 890767 at *12 (E.D. Pa. 2006); *Ca. Public Employees' Ret. Sys. v. Chubb Corp.*, 2002 WL 33934282 at *19 (D.N.J. June 26, 2002) ("defendant's position in the company may be considered in conjunction with other factors to establish actual knowledge"). Indeed, courts have imputed knowledge of the falsity of corporate statements to high level corporate insiders. *See, e.g., In re Campbell Soup Co. Sec. Litig.*, 145 F. Supp. 2d at 599 (allegations that reservations were expressed about fraudulent practices to high-level corporate officers); *In re Viropharma, Inc. Sec. Litig.*, 2003 WL 1824914

at *9 (E.D. Pa. 2003) (knowledge of facts could be imputed to "the highest ranking members of the company" because a drug was the company's "leading product"); *In re Aetna Inc. Sec. Litig.*, 34 F. Supp. 2d 935, 953 (E.D. Pa. 1999) (allegations that an officer knew or should have known they were making misstatements where defendants held top corporation positions during an $8.9 billion merger that was plagued with "widespread integration problems").

Defendant argues that his "company position alone do[es] not create a sufficient nexus to attribute the claimed misstatements in BLMIS financial statements and customer account statements to Defendant." (D. br. at 16). As set forth in the Complaint, Plaintiffs do not rely on Defendant's position "alone." Moreover, Defendant's argument is not supported by the cases he cites. For example, one case found primary liability appropriate against engagement partners at KPMG because the engagement partners had "ultimate authority to determine whether an audit opinion should be issued." *SEC v. KPMG LLP*, 412 F. Supp. 2d 349, 375-76 (S.D.N.Y. 2006) (cited in D. br. at 16). "Primary liability . . . exist[s] if the defendant was sufficiently responsible for the statement – in effect, *caused* the statement to be made – and knew or had reason to know that the statement would be disseminated to investors." *Lucent Techs., Inc.*, 2009 U.S. Dist. LEXIS 35593 at *38 (cited in D. br. at 16). Importantly, the court held that the allegations at issue in *Lucent Techs., Inc.* were insufficient to allege certain defendants were responsible for making misstatements only because they were lower level employees without direct responsibility. *Id.* at *40-41. "Although defendants had responsibilities that affected the task of recognizing revenues, they did not have ultimate nor penultimate authority in that task." *Id.* at 41 (recognizing that the company position of the defendants is relevant to the inquiry because ultimate responsibility for the misstatements was within "the province of the Chief Accountant and the senior officers of Lucent").

## POINT III

## PLAINTIFFS' STATE LAW CLAIMS SET FORTH IN COUNTS TWO, FOUR, FIVE AND SIX ARE SUFFICIENTLY PLED

**A.    New Jersey Law Governs Disposition of Defendant's Motion To Dismiss**

Defendant argues in conclusory fashion that New York law governs disposition of Plaintiffs' state common law claims. (D. br. at 31, n.10). But a determination of the law governing Plaintiffs state law causes of action, as set forth in Counts Two, Four, Five, and Six of the Complaint, requires a fact-intensive issue-by-issue analysis that cannot be made by this Court at this early stage of the case because a full factual record has not yet been established. Consequently, the Court should defer a final choice of law decision with respect to the state law claims and make a determination as to the governing state law that is limited to decision of the issues raised by the motion. In making this limited determination it is New Jersey, not New York, law that governs.

This Court follows the choice of law principles of the forum state with respect to the decision of Plaintiffs' state law claims. *Barbey v. Unisys Corp.,* 256 Fed. Appx. 532, 533 (3d Cir. 2007); *Brantley Slater v. Skyhawk Transp., Inc.*, 77 F. Supp. 2d 580, 586 (D. N.J. 1999). New Jersey's choice of law rule is the most significant relationship standard. *P.V. v. Camp Jaycee*, 197 N.J. 132, 143 (2008).

In making a determination as to which state has the most significant relationship, New Jersey courts consider the following factors:

> (1)    the place where the injury occurred;
> (2)    the place where the conduct causing the injury occurred;
> (3)    the domicile, residence, nationality, place of incorporation and place of business of the parties; and

> (4)    the place where the relationship, if any, between the parties
> is centered.

*Id.* (*quoting* Restatement 2d of Conflict of Laws, Section 145(2)).  New Jersey courts evaluate

the foregoing four factors in light of the following seven policy considerations:

> (1)  the needs of the interstate and international systems;
> (2)  the relevant policies of the forum;
> (3)  the relevant policies of other interested states and the relative
> interests of those states in the determination of the particular issue;
> (4)  the protection of justified expectations;
> (5)  the basic policies underlying the particular field of law;
> (6)  certainty, predictability and uniformity of result; and
> (7)  the ease in the determination and application of the law to be
> applied.

*Id.* (*quoting* Restatement 2d of Conflict of Laws, Section 6).

To do an evaluation of the four factors and seven policy considerations is obviously an

issue-by-issue analysis that is heavily influenced by the facts.  *Harper v. LG Electronics USA,*

*Inc.*, 595 F. Supp. 2d 486, 489 (D. N.J. 2009) (*quoting Warriner v. Stanton*, 475 F. 3d 497, 500

(3d Cir. 2007)).  When, as here, the factual record is insufficient to do the required fact-intensive

issue-by-issue inquiry, the court will defer the final choice-of-law determination until such time

as the needed factual record has been fully developed.  *Id.; see also Slim CD, Inc. v. Heartland*

*Payment Sys., Inc.*, 2007 WL 2459349 (D. N.J. 2007)(holding that it would be premature for a

court to conduct a choice-of-law analysis as a threshold matter without the benefit of any

discovery between the parties).

In *Harper*, Judge Hochberg deferred the final choice of law decision and made a limited

choice of law decision for the sole purpose of deciding a motion to dismiss.  The court decided to

apply New Jersey law to the disposition of the motion to dismiss for the reason that the assumed

to be true factual allegations in the complaint showed New Jersey to have a significant *prima*

*facie* interest in the case.  The same is true here.  Plaintiffs' Complaint alleges that: (i) the

Lautenberg Foundation has its principal place of business in New Jersey; (ii) the relevant events occurred in New Jersey (iii) the violations occurred in New Jersey; (iv) Defendant transacts business in New Jersey; and (v) Defendant is found in New Jersey (Compl. ¶¶ 2, 3). Based on *Harper,* these five allegations – which must be regarded as true at this juncture – are sufficient to make New Jersey law applicable for the limited purpose of deciding this motion.

In the event this Court does not wish to make a limited choice of law determination as was done in *Harper,* then the Court should permit the parties to engage in limited choice of law discovery beginning with the deposition of the Defendant. *See Bearden v. Wyeth,* 482 *F. Supp.* 2d 614 (E.D. Pa. 2006)(noting that the parties were ordered to conduct limited discovery pertaining to the choice of law question prior to a determination of the motion to dismiss); *Integral Resources (PVT) Ltd. v. Istil Group, Inc.*, 2004 WL 2758672 (D. Del. 2004)(noting that the parties were ordered to conduct limited discovery and submit further briefing on the choice-of-law issue before determination of a motion to dismiss).

Limited discovery is regularly permitted when necessary to enable a court to decide threshold questions prior to decision of ultimate legal issues. *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F. 3d 446 (3d Cir. 2003) (remanding for limited jurisdiction discovery and reconsideration of personal jurisdiction over the defendant with the benefit of the product of that discovery); *Davis v. Quality Carriers, Inc.*, 2009 WL 1291985 (D. N.J. 2009) (directing the parties to engage in limited discovery relevant to the matter of personal jurisdiction).

Notwithstanding choice of law questions and potential conflicts of law, we will argue below that state law Counts Two (breach of fiduciary duty), Four (aiding and abetting), Five (Negligent Misrepresentation) and Six (Negligence) are sufficiently pled under both New Jersey and New York law. Regardless of whether there may ultimately be any meaningful difference

between New Jersey and New York law with respect to the state law issues in this case, Defendant's motion to dismiss should be denied under both state's laws.

### B. All of Plaintiffs State Law Claims are Governed by the Notice Pleading Requirements of Rule 8(a)(2)

Unlike Defendant's challenge to the sufficiency of Plaintiffs' securities law claims under Section 20(a) and Rule 10b-5, Defendant does not argue that any of Plaintiffs' state law claims should be judged by the heightened pleading standard of Rule 9(b). Having offered no reason to depart from the simple notice pleading requirement of Rule 8(a)(2), the sufficiency of Plaintiffs' state law claims are to be judged by the liberal Rule 8(a)(2) standard. *See Capers v. Quest Capital Strategies, Inc.*, 2007 WL 2033831 (D. N.J. 2007) (holding that a claim founded on negligence must only satisfy the general pleading requirements of Rule 8); *Pietrangelo v. NUI Corp.*, 2005 WL 1703200 (D.N.J. 2005) (holding that a breach of fiduciary duty must only satisfy the general pleading requirements of Rule 8)

The notice pleading requirement of Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Payne v. Fujifilm U.S.A., Inc.*, 2007 WL 4591281 (D. N.J. 2007) (*quoting Twombly*, 127 S. Ct. at 1964. Thus, "a plaintiff will not be thrown out of court on a Rule 12(b)(6) motion for lack of detailed facts." *In re Tower Air, Inc.*, 416 F. 3d 229, 237 (3d Cir. 2005). "To hold otherwise would be effectively to transform Rule 12(b)(6) motions into multi-purpose summary judgment vehicles." *Id.* at 238.

**C.      Count Two of Plaintiffs' Complaint Sufficiently Pleads A Direct Breach By Defendant Of Fiduciary Duties Owed To Plaintiffs**

Under both New York and New Jersey law, a fiduciary relationship exists between a broker and a client, "where that client maintains an account with the broker in which the broker, not the client, retains discretion." *Pasternak*, 561 F. Supp. 2d at 499 (*citing McAdams v. Dean Witter Reynolds, Inc.*, 896 F.2d 750, 767 (3d Cir. 1994)); *Independent Order of Foresters*, 157 F.3d 933 (fiduciary duty between broker and customer arises "where the customer has delegated discretionary trading authority to the broker"); *see Bissell v. Merrill Lynch & Co.*, 937 F. Supp. 237 (S.D.N.Y. 1996) (*citing Schenck v. Bear, Stearns & Co.*, 484 F. Supp. 937, 946-47 (S.D.N.Y. 1979), *overruled on other grounds, Conway v. Icahn & Co.*, 16 F.3d 504 (2d Cir. 1994)). In the present case, it is undisputed that BLMIS retained discretionary trading authority, and therefore, a fiduciary relationship existed between Plaintiffs and BLMIS. (D. br. at 33). Given Defendant's control position and myriad roles at BLMIS, there is no doubt that this fiduciary duty should be personally extended to him as well.

While New York has not specifically addressed the issue, New Jersey law personally imposes upon a corporate director a fiduciary duty, in certain instances, to third parties who are not shareholders of the corporation. For example, a corporate director may be personally liable to a non-shareholder third party for failure to prevent the misappropriation of funds held in trust by the corporation. *In re Allserve Sys. Corp.*, 379 B.R. 69, 77 (Bankr. D.N.J. 2007) (granting trustee's motion for leave to file third amended complaint, in part, because trustee stated a "sustainable cause of action" for breach of fiduciary duty against individual defendants owed to debtor, as a creditor of a defendant); *Francis v. United Jersey Bank*, 87 N.J. 15, 34-37 (1981) (concluding that directors have a personal duty to third parties to prevent misappropriation of

funds and that "the depositor or beneficiary can reasonably expect the director to act with ordinary prudence concerning the funds held in a fiduciary capacity"). In particular, the Court in *Francis* explained that a director's obligation to monitor funds held in trust by the entity include "reading and understanding financial statements and making reasonable attempts at detection and prevention of the illegal conduct of other officers and directors." 87 N.J. at 35. The Court concluded that the director had a duty to protect non-shareholder clients of the corporation from practices that would result in the misappropriation of funds and that the director breached this duty by failing to monitor the financial transactions of the entity.

Here, BLMIS had a fiduciary duty because it managed fully discretionary accounts for the benefit of Plaintiffs. As such, under the principles discussed in *Francis*, Defendant personally owed a fiduciary duty to the investors of BLMIS to take reasonable steps to prevent practices that would result in the fraudulent misappropriation of the investors' funds. As set forth above, the Complaint alleges that Defendant failed to take any such reasonable steps and has, therefore, breached his direct fiduciary duty to the Plaintiffs.

Plaintiffs' claim is not, as Defendant suggests, that Defendant is liable for the misconduct of others merely because he was the compliance officer. (D. br. at 34). Rather, Plaintiffs' claim is that having held himself out as the co-control person of BLMIS, with duties as Chief Compliance Officer, Head of Trading, Senior Managing Director, and General Counsel, Defendant cannot escape personal liability by having sat back and done nothing to assure and monitor that appropriate procedures and compliance measures were in place and followed at BLMIS with respect to Plaintiffs' investments that had been deposited with BLMIS on a fully discretionary basis. As in *Francis,* Defendant owed a direct fiduciary duty to Plaintiffs. That

duty was breached by Defendant's failure to provide oversight and monitor the activities of BLMIS with respect to the management of Plaintiffs' investments.

### D. Count Four of Plaintiffs' Complaint Sufficiently Pleads That Defendant Knowingly Aided and Abetted A Breach of Fiduciary Duties

#### 1. Plaintiffs' Claim for Aiding and Abetting a Breach of Fiduciary Duty Is Sufficiently Pled Under New York Law

A claim for aiding and abetting a breach of fiduciary duty under New York law requires "(1) a breach by a fiduciary of obligations to another, (2) that the defendant knowingly induced or participated in the breach, and (3) that plaintiff suffered damage as a result of the breach." *Fraternity Fund Ltd. v. Beacon Hill Asset Management, LLC*, 479 F. Supp. 2d 349, 360 (S.D.N.Y. 2007)(denying motion to dismiss aider and abetter claim); *Higgins v. New York Stock Exchange, Inc.*, 10 Misc. 3d 257, 287, 806 *N.Y.S.* 2d 339, 364 (Sup. Ct. 2005)(denying motion to dismiss aider and abetter claim).

That Plaintiffs have satisfactorily pled the first element (breach of fiduciary obligations) of the claim for aiding and abetting a breach of fiduciary duty is not disputed by Defendant to the extent that Defendant concedes BLMIS owed fiduciary duties to Plaintiffs. Defendant concedes that where, as here, a person delegates discretionary trading authority to another a fiduciary relationship is created. (D.br. 33). This is well-established under both New York and New Jersey law. *Pasternak*, 561 F. Supp. 2d at 499; *Independent Order of Foresters*, 157 F.3d 933. Instead, Defendant challenges the sufficiency of Count Four based solely on the assertion that Plaintiffs have not sufficiently pled the "knowingly" prong of aider and abetter liability. (D.br.35-36).

Initially, whether an alleged aider and abetter has acted "knowingly" in either inducing or participating in the fiduciary duty breach does not normally get resolved on a motion to dismiss but, rather, is a matter held for resolution until discovery is completed for the reason that facts bearing on the element of "knowingly" are typically in the defendant's control. *See Higgins*, 10 *Misc.* 3d at 290 (*citing American Baptist Churches v. Galloway*, 271 A.D. 2d 92, 101, 710 N.Y.S. 2d 12 (1st Dept. 2000)). In addition, the "knowingly" requirement is satisfied where the facts pled show a conscious avoidance of the fiduciary breach by the aider and abetter. *See, e.g., Fraternity Fund Ltd.*, 479 *F. Supp.* 2d at 368; *Cromer Finance Ltd. v. Berger*, 2003 WL 21436164 (S.D.N.Y. 2003); *Lehman Bros. Commercial Corp. v. Minmetals Int'l. Non-Ferrous Metals Trading Co.*, 179 F. Supp. 2d 118, 153 (S.D.N.Y. 2000). Conscious avoidance "occurs when 'it can almost be said that the defendant actually knew' because he or she suspected a fact and realized its probability, but refrained from confirming it in order later to be able to deny knowledge." *Fraternity Fund Ltd.*, 479 F. Supp. 2d at 368 (*quoting U.S. v. Nektalov*, 461 F. 3d 309, 315 (2d Cir. 2006).

Conscious avoidance is not the same as constructive knowledge. Conscious avoidance "involves a culpable state of mind whereas constructive knowledge imputes a state of mind on a theory of negligence." *Id.* Plaintiffs' Complaint does not allege constructive knowledge but, rather, a conscious avoidance by Defendant of the obvious fiduciary duty breach.

In *Lehman Brothers Commercial Corp.*, the court held a "third party can become obligated to investigate an agent's actions where there are indications that the agent's actions are suspicious in nature." *Lehman Bros. Commercial Corp.*, 179 F. Supp. 2d at 153. "A failure to investigate under such circumstances may result in the third party's liability for aiding and abetting the agent's breach of his fiduciary duty." *Id.* (*citing Whitney v. Citibank, N.A.*, 782 F.

2d 1106 (2d Cir. 1986)("upholding a trial court's finding that a third party could be held liable for aiding and abetting a breach of fiduciary duty for failing to investigate despite 'red flags flying all over the place'.[4]

Here, the Complaint alleges numerous "obvious red flags evidencing the giant Ponzi scheme at BLMIS and other alerts of fraudulent activity at BLMIS that were . . . concealed and/or not disclosed and/or consciously disregarded by Peter Madoff." (Compl. ¶¶ 31-32). The Complaint further explicitly alleges that Defendant concealed and/or failed to disclose and/or consciously disregarded for years the many obvious aforementioned material red flags and alerts of fraudulent activity to the great detriment and financial loss of Plaintiffs. (Compl. ¶ 33). These allegations do not charge constructive knowledge but rather that Defendant "was either knowingly indifferent or actually aware" that fiduciary duties had been and were continuing to be breached. (Compl. ¶¶36, 50-54). Such allegations sufficiently plead the aider and abetter "knowingly" requirement. For a more detailed recitation of Defendant's knowing participation see Statement of Facts and Point I (c) *infra.*

### 2. Plaintiffs' Claim for Aiding and Abetting a Breach of Fiduciary Duty Is Sufficiently Pled Under New Jersey Law

New Jersey law, like New York law, requires that the alleged aider and abetter "knowingly" aid and abet the breach of fiduciary duty. *Bondi v. Citigroup, Inc.,* 2005 WL 9758656 (Law Div. 2005) ("[a] third party who knowingly aids and abets the agent of another in breach of fiduciary duty is liable to the principal" *citing Jaclyn, Inc. v. Edison Bros. Stroes, Inc.,* 170 N.J. Super. 334 (Law Div. 1979)).

---

[4]Defendant's reliance on *Chemtex, LLC v. St. Anthony Enter., Inc.,* 490 F.Supp. 2d 536 (S.D.N.Y. 2007), is misplaced. In *Chemtex,* the issue before the court was one for summary judgment following discovery rather than a pre-answer motion to dismiss. In addition, the court only held that constructive knowledge is insufficient to satisfy the knowledge component of the claim. The court did not render any opinion as to conscious avoidance nor did it perform any analysis under the standard governing a motion to dismiss.

In *Urbach v. Sayles*, 1991 WL 236183 (D. N.J. 1991), plaintiff asserted numerous claims against a company and its officers for allegedly deceiving the investing public into purchasing securities at grossly inflated prices. The court said that "the individual defendants may be presumed to have lent substantial assistance by virtue of their status as insiders; without them, defendant corporation was powerless to act. Sorting out exactly who did what must await the proofs at trial." *Id.*

This case is like *Urbach*. The Complaint alleges red flags flying all over the place. The Complaint charges that Defendant concealed and/or failed to disclose and/or consciously disregarded for years the many obvious aforementioned material red flags and alerts of fraudulent activity to the great detriment and financial loss of Plaintiffs. (Compl. ¶¶31-33). The Complaint concludes that the "acts and conduct of Peter Madoff, as alleged herein, substantially assisted, encouraged, induced, recklessly participated in, endorsed, and/or concealed the breach by BLMIS and Bernard L. Madoff of their fiduciary duties owed to Plaintiffs." (Compl. ¶ 52). These allegations properly plead the "knowingly" requirement for purposes of sufficiently alleging aider and abetter liability. *See* Statement of Facts and Point I (c) *infra*.

### E. Count Five of Plaintiffs' Complaint Sufficiently Pleads A Claim for Negligent Misrepresentation

The elements of a negligent misrepresentation claim under New York and New Jersey law are very similar. A claim for negligent misrepresentation under New York law requires the following elements:

> (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment."

*Arnold Chevrolet LLC v. Tribune Co.*, 418 F. Supp.2d 172, 189 (E.D.N.Y. 2006) (*quoting Hydro Invs., Inc. v. Trafalgar Power, Inc.*, 227 F. 3d 8, 20 (2d Cir. 2000) (denying motion to dismiss negligent misrepresentation claim). "To sustain a cause of action based on negligent misrepresentation under New Jersey law, the plaintiff must demonstrate that 1) the defendant negligently provided false information; 2) the plaintiff was a reasonably foreseeable recipient of that information; 3) the plaintiff justifiably relied on the information; and 4) the false statements were a proximate cause of the plaintiff's damages." *In re NorVergence, Inc.*, 384 B.R. 315, 360 (Bankr. D.N.J. 2008).

In his motion to dismiss, Defendant contends that the claim for negligent misrepresentation was insufficiently pled because the Complaint fails to allege that (i) Defendant made any misrepresentations; (ii) Defendant owed any duty to Plaintiffs; and (iii) Plaintiffs justifiably relied on any misrepresentations. (D. br. 38-39). As set forth below, each of these elements are sufficiently pled in the Plaintiffs' Complaint, regardless of whether New York or New Jersey law applies.

### 1. The Complaint Sufficiently Alleges That Defendant Made Negligent Misrepresentations

Under New York law, control persons of an entity may be personally liable even where the tort was technically performed by the entity. *Michaels Lispenard Holding Corp.*, 11 A.D. 2d 12, 14, 201 N.Y.S. 2d 611 (1st Dept. 1960). The personal liability of control persons of an entity extends to claims for negligent misrepresentations whether made by the control person in the performance of entity duties or made by the entity with the participation of the control person.

*Model Imperial Supply Co. Inc. v. Westwind Cosmetics, Inc.*, 808 F. Supp. 943, 946 (E.D.N.Y. 1992).[5]

In *American Express Travel Related Services Co. Inc. v. North America Resources, Inc.*, 691 N.Y.S. 2d 403 (1st Dept. 1999), the court denied a motion to dismiss a negligent misrepresentation claim against control persons of the entity even though an application for a credit card was technically filed by the entity. In *Model Imperial, supra*, the court denied a motion for summary judgment filed by control persons of an entity where the entity technically misrepresented the genuineness of the entity's product.

Under New Jersey law, much like New York law, a control person of a corporation may be liable for misrepresentations technically made by the entity. *See Saltiel v. GSI Consultants, Inc.*, 170 *N.J.* 297, 303, 788 A. 2d 268 (2002); *Breglia v. Norman & Luba, LLC*, 2005 WL 3338295 (App. Div. 2005); *Metuchen Sav. Bank v. Pierini*, 377 *N.J. Super* 154 (App. Div. 2005); *New Jersey Dept. of Environmental Protection v. Gloucester Environmental Management Services, Inc.*, 800 F. Supp. 1210, 1219 (D. N.J. 1992). This is especially true where the corporation owed a duty to the plaintiff, the duty was delegated to the officer and the officer breached the duty by his own conduct. *Saltiel, Breglia, supra.*

Under both New York and New Jersey law, the Complaint sufficiently pleads that Defendant made a negligent misrepresentation. Here, the Complaint specifically alleges the following with respect to Defendant's negligent misrepresentations:

> Peter Madoff, as a control person and the senior managing director, director of trading, chief compliance officer and general counsel of

---

[5] Defendant's reliance on *Miller v. Forge Mench P'ship Ltd.*, 2001 WL 987922 (S.D.N.Y. 2001), is inapposite. First, the issue before the court in *Miller* was one for summary judgment rather than a pre-answer motion to dismiss. More importantly, the court only granted summary judgment to the plaintiff because there was no allegation of a single misrepresentation. Here, the Complaint alleges numerous misrepresentations made by Defendant and the entity he controlled.

BLMIS, negligently misrepresented and/or acquiesced in the making of materially false and misleading representations that he directly or indirectly caused to be transmitted to Plaintiffs and government regulators concerning the honesty of BLMIS, the ethics of BLMIS, the profitability of BLMIS, the financial condition of BLMIS, and the accuracy of securities transactions purportedly conducted on behalf of investors.

Compl. ¶ 56; *see also* Compl. ¶¶ 11, 14 and 15 (alleging the duties and responsibilities of

Defendant at BLMIS); Compl. ¶ 34 (alleging that Defendant negligently or recklessly made

and/or acquiesced in the making of numerous affirmative misrepresentations).

Additionally, as previously set forth, BLMIS owed a fiduciary duty of care to Plaintiffs.

*Pasternak*, 561 *F. Supp.* 2d at 499. Indeed, Defendant concedes that where, as here, a person

delegates discretionary trading authority to another a fiduciary relationship is created. (D.br. 33).

Equally clear is that the Complaint alleges that Defendant, as a control person and the Senior

Managing Director, Director of Trading, Chief Compliance Officer and General Counsel of

BLMIS, was responsible to ensure that the information set forth in all BLMIS communications,

such as SEC filings, sales literature, and monthly statements to Plaintiffs, were lawful, honest,

complete, and not misleading. (Compl. ¶ 60).

> 2. **The Complaint Sufficiently Alleges Under New York Law That Defendant Owed a Duty to Plaintiffs**

Unlike New York law, New Jersey law does not require a plaintiff to "prove 'a special

relationship' but may prevail on a negligent misrepresentation claim by showing that 'the

defendant negligently made an incorrect statement, upon which the plaintiff justifiably relied."

*Palladin Partners v. Gaon*, 2006 WL 2460650 (D. N.J. 2006)(*Alexander v. CIGNA Corp.*, 991 *F.*

*Supp.* 427, 400 (D.N.J. 1998)) (denying a motion to dismiss a claim for negligent

misrepresentation); *see also Shapiro v. UJB Financial Corp.*, 964 F. 2d 272 (3d Cir.

1992)(reversing District Court's dismissal of claim for negligent misrepresentation); *Dewey v.*

*Volkswagen AG*, 558 F. Supp. 2d 505 (D. N.J. 2008)(denying a motion to dismiss a claim for negligent misrepresentation). As set forth herein, these elements are adequately pled here. Even under New York law where this "special relationship" is required, the Complaint adequately pleads a claim for relief.

Under New York law, a duty arises "when there is actual privity of contract between the parties or a relationship so close as to approach that of privity." *Arnold Chevrolet LLC*, 418 F. Supp. 2d at 189-190. A relationship is considered "so close as to approach that of privity" when the following criteria are satisfied:

> 1) the defendant makes a statement with the awareness that the statement was to be used for a particular purpose; 2) a known party or parties rely on this statement in furtherance of that purpose; and 3) there is some conduct by the defendant linking it to the party or parties and evincing defendant's understanding of their reliance.

*Id.* Here, all the elements for establishing the type of "close relationship" between Plaintiffs and Defendant necessary to create a duty is satisfied.

The Complaint alleges Defendant was a co-control person, Director of Trading, Chief Compliance Officer, Senior Managing Director, and General Counsel for the entity in which Plaintiffs reposed their complete faith and trust to invest their funds on a fully discretionary basis. Plaintiffs relied on the people in charge of the entity, not a "faceless organization." (Compl. ¶¶ 9, 16-23) (Compl., Ex. A). The closeness of the relationship was with the Madoff brothers, not a legal entity. The BLMIS website makes it clear that investors can and should look to the Madoff brothers for personal accountability. (Compl., Ex. A). As the website stated:

The Owner's Name is on the Door

> In an era of faceless organizations owned by other equally faceless organizations, Bernard L. Madoff Investment Securities LLC harks back to an earlier era in the financial world: The owner's name is on the door. Clients know that Bernard Madoff has a personal

interest in maintaining the unblemished record of value, fair-dealing, and high ethical standards that has always been the firm's hallmark.

Bernard L. Madoff founded the investment firm that bears his name in 1960, soon after leaving law school. His brother, Peter B. Madoff, graduated from law school and joined the firm in 1970. While building the firm into a significant fore in the securities industry, <u>they have both been deeply involved in leading the dramatic transformation that has been underway in US securities trading</u>. (Emphasis added).

Contrary to how BLMIS was held out to investors, Defendant now seeks to hide behind the "faceless organization" expressly disavowed in the firm's own website.

### 3. The Complaint Sufficiently Alleges Defendant Justifiably Relied on Defendant's Misrepresentations

The Complaint sufficiently alleges that Plaintiffs reasonably relied to their detriment on the material misrepresentations set forth in the Complaint. (Compl. ¶ 57). In addition, the Complaint alleges that Defendant effectively covered up for years what was the largest financial fraud in history. (Compl. ¶ 57). These allegations are sufficient under Rule 8(a)(2) to allege Plaintiffs' reliance.

Defendant suggests that the alleged misrepresentations were non-actionable puffery. This contention, as well as the distinguishable precedent that it is based upon,[6] is without merit. The alleged misrepresentations made by the Defendant – which include misrepresentations concerning the financial condition, cash flow and net capital of BLMIS and misrepresentations in the account statements transmitted to Plaintiffs – are undoubtedly actionable under New York law. *See, e.g., Elkind v. Liggett & Myers, Inc.*, 635 F.2d 156 (2d Cir. 1980) (holding that liability

---

[6] The alleged misrepresentations that the court in *Hubbard v. General Motors Corp.*, 1996 WL 274018 (S.D.N.Y. 1996), considered to be non-actionable puffery were that the vehicle being sold to the plaintiff was "like a rock", "popular" and "dependable." Clearly, the alleged misrepresentations in this matter cannot be compared to the misrepresentations alleged by plaintiff in *Hubbard*.

may follow where management intentionally fosters a mistaken belief concerning the evaluation of the company's progress and earnings prospects); *EED Holdings v. Palmer Johnson Acquisition Corp.*, 387 F. Supp. 2d 265 (S.D.N.Y. 2004) (holding that misrepresentation as to the present condition of defendant's finances and operations are actionable); *Newman v. L.F. Rothschild, Unterberg, Towbin,* 662 F. Supp. 957 (S.D.N.Y.1987) (broker's statement that he could earn the clients a return of a specific percentage on their investment is actionable); *Palladin Partners, supra* (holding that misrepresentations made in SEC filings and press releases concerning the company's indebtedness and financial health constitute actionable misrepresentations); *see also M & T Bank Corp. v. Gemstone CDO VII, Ltd.*, 2009 WL 921381 (Sup. Ct. 2009).

### F. Count Six of Plaintiffs' Complaint Sufficiently Pleads A Claim for Negligence Under Both New York and New Jersey Law

Defendant challenges the sufficiency of Count Six based solely on the assertion that Plaintiffs have not sufficiently pled Defendant owed Plaintiffs any duty. (D. Br. at 39). For purposes of Plaintiffs negligence claims, Defendant owed Plaintiff a duty to control the conduct of a third party, here BLMIS, to prevent it from causing harm to Plaintiffs.

Both under New York and New Jersey law, a duty to a person who is harmed by a third person may arise where there is a relationship between a defendant and a third-person tortfeasor controlled by the defendant or a relationship between defendant and plaintiff such that the risk of loss should be borne by the defendant. *See, e.g., Vega v. Fox*, 457 F. Supp. 2d 172, 183-184 (S.D.N.Y. 2006); *Hamilton v. Beretta U.S.A. Corp.*, 96 N.Y. 2d 222, 233, 727 N.Y.S. 2d 7 (2001); *McIntosh v. Milando*, 168 N.J. Super. 466, 508 (Law Div. 1979). "This duty arises when 'the defendant's relationship with either the tortfeasor or the plaintiff places the defendant in the

best position to protect against the risk of harm.'" *Johnson v. Bryco Arms*, 304 F. Supp. 2d 394 (E.D.N.Y. 2004)(*quoting Hamilton*, 96 *N.Y.* 2d at 233).

The decision in *Vega* is illustrative. There, a resident of a home for young adults asserted a negligence claim against the corporation and certain officers and case workers as a result of their failure to intervene in an assault committed against the plaintiff by another resident. *Vega*, 457 F. Supp. 2d at 176. The court, in denying summary judgment to the officers even though they were not even present on the date of the assault, held that these officers "were in a good position to prevent harm to residents of the [home], to the extent that this duty encompasses policy decisions of the organization." *Id.* at 187. The court also observed that "imposing such a duty avoids the 'specter of limitless liability' because it does not extend beyond the limited class of residents to the public at large." *Id.* (*quoting Hamilton*, 96 N.Y. 2d at 233.

Here, the Complaint alleges that Defendant, as a control person and the Senior Managing Director, Director of Trading, Chief Compliance Officer and General Counsel of BLMIS, had the power to directly and indirectly control the management and policies of BLMIS. This power placed him in the best position to protect Plaintiffs from being defrauded by the entity Defendant controlled. (Compl. ¶ 60). The Complaint alleges that Defendant's responsibilities and duties at BLMIS included, among other things, (i) directing the management and policies; (ii) regularly verifying and accurately reporting the financial condition; (iii) establishing, implementing, controlling, monitoring and enforcing a compliance program of internal controls (the "Compliance Program") designed to ensure compliance with all laws; and (iv) the detection, prevention, and reporting of all violations of any laws or regulations by the entity or its employees. (Compl. ¶ 15). In short, because Defendant had the power to control the entity that was the vehicle for the Ponzi scheme and which caused Plaintiffs to sustain their losses, then this

fact creates a duty owed by Defendant to Plaintiffs.  As in *Vega*, as between Defendant and Plaintiffs, because Defendant was in the best position to prevent harm to the Plaintiffs by BLMIS then the risk of loss should be borne by Defendant.

## CONCLUSION

Based on the foregoing, it is respectfully requested that the Court deny Defendant's motion to dismiss the Complaint in its entirety.

Dated: May 18, 2009

**McElroy, Deutsch, Mulvaney & Carpenter, LLP**

By: _____

Ronald J. Riccio
1300 Mount Kemble Avenue
Morristown, New Jersey 07960
Tel: (973) 993-810
Fax: (973) 425-0161