UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| THE LAUTENBERG FOUNDATION, JOSHUA S. LAUTENBERG and ELLEN LAUTENBERG, | : : : | Civil Action No. 09-00816 (SRC) (MAS) |
| Plaintiffs, | : : | Motion Returnable June 15, 2009 |
| -against- | : : | **Oral Argument Requested** |
| PETER MADOFF, | : : | |
| Defendant. | : : : | |

## REPLY BRIEF IN FURTHER SUPPORT OF
## DEFENDANT PETER MADOFF'S MOTION TO DISMISS

Charles T. Spada
cspada@lswlaw.com
**LANKLER SIFFERT & WOHL LLP**
**500 Fifth Avenue, 33rd Fl.**
**New York, NY 10110**
**(212) 921-8399**

William F. Maderer
wmaderer@saiber.com
**SAIBER LLC**
**One Gateway Center, 13th Fl.**
**Newark, NJ 07102-5311**
**(973) 622-3333**

*Attorneys for Defendant Peter Madoff*

Dockets.Justia.com

# TABLE OF CONTENTS

ARGUMENT ................................................................................................ 1

POINT I
    STANDARD OF REVIEW ..................................................................... 1

POINT II
    PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE FEDERAL
    SECURITIES LAW ............................................................................... 5

A. Plaintiffs Attempt in their Brief to Assert Scheme Liability under Section
10(b) and Rule 10b-5 Subsections (a) and (c) Against Defendant Was
Not Pled in their Complaint and in any Event is Inadequate to State a
Claim ......................................................................................................... 5

B. Contrary to the Requirements of Rule 9(b) and the PSLRA, Plaintiffs
Continue to Erroneously Argue That They Have Sufficiently Alleged
Violations of Section 10(b) and Subsection (b) of Rule 10b-5 For
Affirmative Misrepresentations or Omissions ........................................... 9

    1. Defendant Owes Plaintiffs No Duty to Disclose Material Information .. 10

    2. Plaintiffs Fail to Plead Reliance Through Their Assumption that
       Defendant Owed Plaintiffs a Duty to Disclose Alleged Material Facts .. 11

    3. Plaintiffs Fail to Sufficiently Allege that Defendant Made Any False
       or Misleading Statements ...................................................................... 11

    4. Plaintiffs Have Not Pled Scienter Through Their Purported
       Allegations of Recklessness ................................................................. 12

C. Plaintiffs Fail to Plead Control Person Liability Under Section 20(a) ......... 14

    1. Section 20(a) Claims Should Be Subject to the Heightened Pleading
       Requirements of Rule 9(b) and the PSLRA ........................................... 15

    2. Culpable Participation Is Required in a Section 20(a) Claim ................. 17

    3. Plaintiffs Have Not Pled That Defendant Culpably Participated in the
       Fraud ..................................................................................................... 17

POINT III
      PLAINTIFFS FAIL TO ALLEGE VIOLATIONS OF STATE LAW ........ 19

  A. New York Law Applies to Counts Two, Four, Five, and Six ...................... 19

  B. The Complaint Fails to Allege that Defendant Owed Any Duty to
     Plaintiffs.......................................................................................... 23

  C. Plaintiffs' Complaint Fails to State a Claim for Aiding and Abetting a
     Breach of Fiduciary Duty ............................................................ 26

  D. The Complaint Fails to State a Claim for Negligent Misrepresentation ...... 29

  E. The Complaint Fails to State a Claim for Negligence................................. 30

CONCLUSION .................................................................................. 32

# TABLE OF AUTHORITIES

## Cases

*A.I.A. Holdings S.A. v. Lehman Bros., Inc.*, 97 Civ. 4978, 1999 U.S.
Dist. LEXIS 971 (S.D.N.Y. Jan. 28, 1999) ...................................................... 23

*Am. Fin. Int'l Group-Asia, L.L.C. v. Bennett*, 05 Civ. 8988, 2007 U.S.
Dist. LEXIS 43508 (S.D.N.Y. June 13, 2007) ................................................. 23

*American Express Travel Related Servs. Co. v. North Atl. Resources, Inc.*,
691 N.Y.S.2d 403 (N.Y. App. Div. 1st Dep't 1999).......................................... 30

*Arnold Chevrolet LLC v. Tribune Co.*, 418 F. Supp. 2d 172
(E.D.N.Y. 2006)................................................................................................. 30

*Ashcroft v. Iqbal*, No. 07-1015, 556 U.S. ___, 129 S. Ct. 1937, 2009 U.S. LEXIS
3472 (May 18, 2009) .................................................................................*passim*

*Braunstein v. Benjamin Berman, Inc.*,  1990 U.S. Dist. Lexis 20922
(D.N.J. September 14, 1990) ............................................................................. 10

*Ca. Public Employees Ret. Sys. v. Chubb Corp.*, 2002 WL 33934282
(D.N.J. June 26, 2002) ...................................................................................... 13

*Chemtex, LLC v. St. Anthony Enters.*, 490 F. Supp. 2d 536
(S.D.N.Y. 2007)........................................................................................... 27, 28

*Chiarella v. United States*, 445 U.S. 222 (1980) ................................. 10, 29, 30

*Collins v. Aikman Corp.*, 524 F. Supp. 2d  477 (S.D.N.Y. 2007)............................. 8

*Cromer Finance Ltd. v. Berger*, 137 F. Supp. 2d 452 (S.D.N.Y. 2001)................. 18

*Dallas Aero., Inc. v. CIS Air Corp.*, 352 F.3d 775 (2d Cir. 2003)........................ 30

*Francis v. United Jersey Bank*, 162 N.J. Super. 355 (Law Div. 1978) ................. 20

*Francis v. United Jersey Bank*, 87 N.J. Super. 15 (1981) ..................................... 26

*Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*, 479 F. Supp. 2d 349
(S.D.N.Y. 2007)........................................................................................... 27-28

*Gutman v. Howard Sav. Bank*, 748 F. Supp. 254 (D.N.J. 1990) ................ 20, 22, 23

*In re Able Labs Sec. Litig.*, 2008 U.S. Dist. LEXIS 23538
  (D.N.J. 2008) ............................................................................... *passim*

*In re Aetna Inc. Sec. Litig.,* 34 F. Supp. 2d 935 (E.D. Pa. 1999) ............................ 13

*In re Alstrom S.A. Sec. Litig.*, 406 F. Supp. 2d 402 (S.D.N.Y. 2005) .................... 16

*In re Campbell Soup Co. Sec. Litig.*, 145 F. Supp. 2d 574 (D.N.J. 2001) .............. 13

*In re Bayou Hedge Fund Litig.*, 534 F. Supp. 2d 405 (S.D.N.Y. 2007) ................ 14

*In re Global Crossing Ltd. Sec. Litig.*, 322 F. Supp. 2d 319
  (S.D.N.Y. 2004) ........................................................................... 9, 16

*In re Moody's Corp. Sec. Litig.,* 599 F. Supp. 2d 493 (S.D.N.Y. 2009) ................ 13

*In re Nice Systems*, 135 F. Supp. 2d 551 (D.N.J. 2001) ........................................ 17

*In re Philip Servs. Corp. Secs. Litig.*, 383 F. Supp. 2d 463
  (S.D.N.Y. 2004) ............................................................................. 18

*In re RAIT Fin. Trust Sec. Litig.*, 2008 WL 5378164 (E.D. Pa. Dec. 28, 2008) .... 13

*In re Stonepath Group, Inc. Sec. Litig.*, 397 F. Supp. 2d 575
  (E.D. Pa. 2005) ............................................................................... 13

*In re Viropharma, Inc., Sec. Litig.*, 2003 U.S. Dist. LEXIS 5623 (E.D. Pa.
  Apr. 3, 2003) ............................................................................... 1, 13

*Johnson v. Tellabs, Inc.,* 303 F. Supp. 2d 941 (N.D. Ill. 2004) .............................. 16

*Kolbeck v. LIT America, Inc.*, 939 F. Supp. 240 (S.D.N.Y. 1996) ........................ 27

*Lapin v. Goldman Sachs Group, Inc.,* 506 F. Supp. 2d 221
  (S.D.N.Y. 2006) ............................................................................. 15

*Lehman Bros. Commercial Corp. v. Minmetals Int'l Non-Ferrous Metals
  Trading Co.*, 179 F. Supp. 2d 118 (S.D.N.Y. 2000) ............................................ 27

*Lutz v. Chitwood (In re Lutz)*, 337 B.R. 160 (S.D. Ohio 2005) .................. 23-24, 31

iv

*Michaels v. Lispenard Holding Corp.*, 201 N.Y.S.2d 611 (N.Y. App. Div. 1st
    Dep't 1960) ................................................................................................ 29, 31

*Model Imperial Supply Co. v. Westwind Cosmetics, Inc.*, 808 F. Supp. 943
    (E.D.N.Y. 1992) ................................................................................................ 30

*N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla*, 930 A.2d 92 (Del.
    2007) ................................................................................................ 25

*Official Comm. of Unsecured Creditors of Norstan Apparel Shops, Inc. v. Lattman
    (In re Norstan Apparel Shops, Inc.)*, 367 B.R. 68 (Bankr. E.D.N.Y. 2007) ....... 24

*Oran v. Stafford*, 226 F.3d 275 (3d Cir. 2000) ...................................................... 10

*P.V. v. Camp Jaycee*, 197 N.J. 132 (2008) ............................................................. 19

*RSL Communs. PLC v. Bildirici*, 2006 U.S. Dist. LEXIS 67548
    (S.D.N.Y. Sept. 14, 2006) ................................................................................................ 24

*SEC v. George*, 426 F.3d 786 (6th Cir. 2005) ......................................................... 12

*SEC v. KPMG LLP*, 412 F. Supp. 2d 349 (S.D.N.Y. 2006) .................................... 7

*SEC v. Lucent Techs., Inc.*, 2009 U.S. Dist. LEXIS 35593 (D.N.J. 2009) .............. 7

*SEC v. Pasternak*, 561 F. Supp. 2d 459 (D.N.J. 2008) .......................................... 10

*SEC v. Simpson Capital Management*, 586 F. Supp. 2d 196
    (S.D.N.Y. 2008) ................................................................................................ 8

*Sharp Int'l Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l Corp.)*,
    403 F.3d 43 (2d Cir. 2005) ................................................................................................ 29

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148,
    128 S. Ct. 761 (2008) ................................................................................................ 6

*Vega v. Fox*, 457 F. Supp. 2d 172 (S.D.N.Y. 2006) ............................................... 31

*Whitney v. Citibank, N.A.*, 782 F.2d 1106 (2d Cir. 1986) ...................................... 27

## Other Authorities

1-6 *Liability of Corporate Officers and Directors* (Matthew Bender & Co. 2008)
    § 6.02 ................................................................................................ 24, 25

15 U.S.C. § 78u-4, *et seq.* ................................................................ *passim*

Restatement (Second) of Conflict of Law § 6 (1971) ...................................... 19, 20

Restatement (Second) of Conflicts of Law § 145 ........................................... 19, 20

17 C.F.R. § 240.10b-5 .................................................................... *passim*

## Rules

Federal Rule of Civil Procedure 9(b) ...................................................... *passim*

Federal Rule of Civil Procedure 8 ...................................................... 2, 6, 15

Federal Rule of Civil Procedure 12(b)(6) ................................................. *passim*

Defendant Peter Madoff, by and through his counsel, respectfully submits this reply brief in further support of his motion to dismiss the Complaint (the "Complaint" or "Compl."), pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure.

Plaintiffs' brief in opposition to Defendant's motion to dismiss the Complaint ("Pl. br.") attempts to recast and put forth facts not present in their Complaint in order to sufficiently allege facts to maintain their securities law and common law claims against Defendant.[1] Stripped of its hyperbole, Plaintiffs' brief cannot resurrect the Complaint, which fails to state a claim against Defendant entitling Plaintiffs to relief.

## ARGUMENT

## POINT I

## STANDARD OF REVIEW

Despite Plaintiffs' protestations in their brief in opposition to Defendant's motion to dismiss concerning the relevant pleading standards, it is plain that the allegations in Plaintiffs' Complaint do not meet the pleading requirements for their claims. (Pl. br. at 8)

---

[1] Plaintiffs' Exhibit B to the Declaration of Ronald Riccio, a magazine article referencing Defendant, contains new allegations that are not part of the Complaint and should not be considered. *See In re Viropharma, Inc., Sec. Litig.*, 2003 U.S. Dist. LEXIS 5623, *5 (E.D. Pa. Apr. 3, 2003).

As set forth in Defendant's opening brief ("Def. br.") under Point IA, Plaintiffs' securities fraud allegations must meet the heightened pleading requirements of Federal Rule of Civil Procedure ("FRCP") 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4 *et seq.* Def. br. at 13-14. As set forth in Defendant's moving brief and below, Plaintiffs' securities claims fall well short of meeting the heightened pleading requirements.

With respect to the remaining state law allegations, Plaintiffs' claims, although not subject to FRCP 9(b), still must satisfy FRCP 8(a)(2). The most recent United States Supreme Court precedent, however, makes plain that Plaintiffs' Complaint does not even meet the requirements of FRCP 8(a)(2).

In *Ashcroft v. Iqbal*, No. 07-1015, 556 U.S. ___, 129 S. Ct. 1937, 2009 U.S. LEXIS 3472 (May 18, 2009), the Court clarified that all claims must have "facial plausibility" under FRCP 8(a)(2), which requires a plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at *29. The Court explained that while this standard "is not akin to a 'probability requirement,'" it nevertheless requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (emphasis added).

The Court instructs that a court assessing a motion to dismiss should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at *30. Thereafter, the court should look to any "well-pleaded factual allegations," accept them as true, "and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at *31-32.

Plaintiffs' Complaint here is replete with conclusory allegations. (Compl. ¶¶ 1-2, 11 (last sentence), 15 (first two sentences), 31, 33-62) Following *Iqbal*, the Court on this motion to dismiss should not assume as true such conclusory allegations in Plaintiffs' Complaint. The conclusory assertions in the Complaint include allegations that go to the very foundation of Plaintiffs' claims against Defendant, including the following:

- "[d]espite being a control person of BMIS . . . there were many obvious material red flags . . . that were recklessly ignored and/or concealed and/or not disclosed and/or consciously disregarded" by Defendant;

- that Defendant "is responsible for making and/or acquiescing in the making of affirmative misrepresentations" in sales literature, financial reports, and account statements and that his conduct was an "extreme departure from the standards of ordinary care"; and

- that Defendant "as a control person and the senior managing director, director of trading, chief compliance officer and general counsel of BMIS, owed Plaintiffs fiduciary duties of care, loyalty and good faith" and listing purportedly legal duties and that Defendant breached them.

(Compl. ¶¶ 31, 34, 36, 41)  Although Plaintiffs in their brief in opposition to Defendant's motion purport to "summarize" the "specific facts" alleged in the Complaint (Pl. br. at 4, 6), it is plain that Plaintiffs' summary merely reiterates the conclusory allegations contained in the Complaint.

Disregarding the conclusory allegations discussed above, scant few facts pertaining specifically to Defendant are actually alleged in the Complaint.  In fact, out of the 62 paragraphs set forth in Plaintiffs' Complaint, only 7 paragraphs contain factual, non-conclusory allegations concerning Defendant.  (Compl. ¶¶ 6, 11 (excluding the last sentence), 12-14, 26, 28)  As made clear in Plaintiffs' opposing brief, the factual, non-conclusory allegations essentially distill to the following:

- BLMIS provided investment advisory services and Plaintiffs gave funds to BLMIS to be invested on a fully discretionary basis;

- "BLMIS sales literature credits both Bernard and Peter with the success supposedly achieved by BLMIS";

- Defendant and Bernard "worked side by side at BLMIS for nearly 40 years";

- Defendant was "highly skilled in the use of technology in connection with the business operations of BLMIS"; and

- that there was a "lack of transparency of BLMIS' business, the consistently abnormal profits . . ., a pattern of securities purchases that were always at lows and sales that were always at highs, financial journal articles critical of BLMIS, detailed complaints to the

4

SEC . . ., and . . . BLMIS [retained] a[n] . . . auditor who ran a three employee accounting firm . . .."

(Pl. br. at 4-6)

As set forth in Defendant's moving brief and below, however, such allegations on their face do not set forth a sufficient link between Defendant and the wrongs for which they seek to hold him liable in the Complaint.[2]

## POINT II

## PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE FEDERAL SECURITIES LAWS

A.   **Plaintiffs Attempt in their Brief to Assert Scheme Liability under Section 10(b) and Rule 10b-5 Subsections (a) and (c) Against Defendant Was Not Pled in their Complaint and in any Event is Inadequate to State a Claim**

Plaintiffs argue that Defendant has not addressed their claims of scheme liability and manipulative conduct under subsections (a) and (c) of Rule 10b-5, but rather that Defendant only takes issue with their claims of misstatement and omission liability under subsection (b) of Rule 10b-5. (Pl. br. at 17)  Although Plaintiffs' brief attempts to allege liability under

---

[2] To the extent Plaintiffs argue that they have alleged enough and that discovery will allow them to detail facts in support of their claims, "[FRCP] 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 2009 U.S. LEXIS 3472, at *30.

subsections (a) and (c), it is plain that their Complaint does not, which is why Defendant did not address those sections in his opening brief.

Indeed Plaintiffs' Complaint fails to even identify which subsection(s) of Rule 10b-5 they seek to hold Defendant liable under. This lack of identification highlights the lack of particularity in Plaintiffs' pleading.

The Complaint itself nowhere alleges that Defendant engaged in a scheme to defraud or committed a deceptive act. Only one paragraph of the Complaint even contains a reference to "a scheme and artifice to defraud Plaintiffs," but that paragraph merely alleges that BLMIS was engaged in the scheme, not Defendant. (Compl. ¶ 37) The failure to plead that Defendant himself was engaged in a scheme or manipulative conduct is fatal to Plaintiffs' argument that they have alleged liability under these theories.

Furthermore, although the Supreme Court in *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 128 S. Ct. 761 (2008), recognized that "[c]onduct itself can be deceptive," describing defendants' conduct in that case as involving "deceptive acts," it expressly declined to extend Rule 10b-5 to aiders and abettors in actions brought by private parties, which is at most what the Complaint here can be construed to allege. *Id.* at 769-771.

Plaintiffs rely on *SEC v. Lucent Techs., Inc.,* 2009 U.S. Dist. LEXIS 35593 (D.N.J. 2009), in asserting the pleading standards for scheme liability, but they fail to explain how they have met those standards here. (Pl. br. at 18) While they acknowledge they must allege that Defendant, acting with scienter, committed a deceptive or manipulative act in furtherance of the alleged scheme to defraud on which Plaintiffs relied, they fail to address how the Complaint here alleges those facts. *Id.* In addition, they also are required to, and fail to, plead under subsections (a) and (c) of Rule 10b-5, loss causation and economic loss and a connection with the purchase or sale of a security. *See In re Able Labs Sec. Litig.,* 2008 U.S. Dist. LEXIS 23538, *72-73 (D.N.J. 2008).

As best can be construed from Plaintiffs' brief, their basis for arguing that Defendant engaged in a fraudulent scheme is that he either failed to implement and enforce a system of controls, (Pl. br. at 13), or he furthered the fraud by making false representations in sales literature, account statements and SEC filings. (Pl. br. at 15) The latter basis is in reality simply a misrepresentation or omission claim under subsection (b) of Rule 10b-5, given that Plaintiffs fail to allege how these alleged false statements functioned as a deceptive act. *Cf. SEC v. KPMG LLP*, 412 F. Supp. 2d 349, 377 (S.D.N.Y. 2006) (denying liability under subsections (a) and (c) where

plaintiff did not allege in any concrete manner how the misstatements alleged could be construed as a device or scheme). To the extent that Plaintiffs allege that the failure to implement or enforce a system of internal controls – i.e., nonfeasance – is a deceptive act in furtherance of a scheme to defraud, the Complaint fails to allege Defendant's scienter as described, *infra*.

Contrary to their assertions, Plaintiffs' cases do not prove otherwise as the complaints in those cases alleged specific deceptive conduct by a defendant, which is unlike the nonfeasance that Plaintiffs allege here. *See* (Pl. br. at 19) *citing SEC v. Simpson Capital Management*, 586 F. Supp. 2d 196 (S.D.N.Y. 2008) (SEC alleged defendants orchestrated the fraudulent scheme to engage in late trading and in furtherance of that scheme were responsible either for investment decisions or execution of trades, recruited individuals at five broker-dealers and got them to agree to participate in their scheme, submitted proposed trades to the broker-dealers that allowed defendants to authorize those trades late in the day and incorporate after-market information into those decisions, and provided details of how the defendants orchestrated late trading schemes); *Collins v. Aikman Corp.*, 524 F. Supp. 2d 477 (S.D.N.Y. 2007) (SEC adequately pled that defendant deliberately engaged in a fraudulent scheme through specific use of a

fraudulent device where defendant helped arrange and collect certain

fraudulent payments, made false statements to conceal such transactions,

supervised employees engaged in the scheme, participated in meetings

where the fraudulent transactions were discussed, and knew of the use of

false documentation to support the fraud); *In re Global Crossing Ltd. Sec.*

*Litig.*, 322 F. Supp. 2d 319 (S.D.N.Y. 2004) (claims regarding fraudulent

scheme of swap transactions survive where SEC pled deceptive practices

that "violated elementary, long-established accounting principles" which

defendant Anderson was aware of, and Anderson "engaged in aggressive

efforts to report revenue when there was none"). Defendant's alleged

conduct does not approximate the allegations in the foregoing cases.

**B.** **Contrary to the Requirements of Rule 9(b) and the PSLRA, Plaintiffs Continue to Erroneously Argue That They Have Sufficiently Alleged Violations of Section 10(b) and Subsection (b) of Rule 10b-5 For Affirmative Misrepresentations or Omissions**

In their opposition brief, Plaintiffs claim that they have adequately

pled violations of Rule 10b-5(b) through allegations that because of

Defendant's position in the company, coupled with the fact that Plaintiffs

had a discretionary trading account at BLMIS, Defendant therefore owed

them a duty to disclose material information or made affirmative

representations which he should have known were false. (Pl. br. at 20-27)

For the reasons stated in Defendant's opening brief, and below, these

arguments do not withstand the pleading standards and Plaintiffs' claim should be dismissed.

### 1. Defendant Owes Plaintiffs No Duty to Disclose Material Information

Plaintiffs argue in their opposition brief that Defendant owed Plaintiffs a duty to disclose material facts by virtue of his position as a "corporate insider." (Pl. br. at 20)  Plaintiffs cite to authority, however, that found no affirmative duty to disclose, s*ee, e.g., Chiarella v. United States,* 445 U.S. 222 (1980); *Oran v. Stafford,* 226 F.3d 275 (3d Cir. 2000); *SEC v. Pasternak*, 561 F. Supp. 2d 459 (D.N.J. 2008), or that are clearly distinguishable in that the defendant had some duty to speak because of prior misstatements defendant was involved in making and defendant had subsequent knowledge that those statements were incorrect and needed to be corrected.  *See Braunstein v. Benjamin Berman, Inc.,* 1990 U.S. Dist. LEXIS 20922 (D.N.J. Sept. 14, 1990).  As stated in Defendant's opening brief and at Point III.B. *infra*, Plaintiffs allege no involvement by Defendant in making any of the alleged false statements or subsequent knowledge of their falsity that would give rise to a duty to speak.  Plaintiffs allege no contact whatsoever with Defendant concerning their investments.  Moreover, Plaintiffs utterly fail to allege any facts that Defendant had any duties

concerning financial reporting or account statement reporting to investment advisory clients that would give rise to a duty to disclose.

### 2. Plaintiffs Fail to Plead Reliance Through Their Assumption that Defendant Owed Plaintiffs a Duty to Disclose Alleged Material Facts

Similarly, Plaintiffs baldly assert that they have alleged reliance because there is a rebuttable presumption of reliance where there is an omission of a material fact by someone with a duty to disclose. (Pl. br. at 21) As stated previously, there is no presumption here where Defendant owed no duty directly to Plaintiffs. (Def. br. at 26-28 n. 9, 38-39) Absent this presumption, they fail to allege how they relied on any purported misstatement or omission.

### 3. Plaintiffs Fail to Sufficiently Allege that Defendant Made Any False or Misleading Statements

Plaintiffs also assert, without support, that Defendant should be liable for any misstatement in BLMIS' filings with the SEC or in Plaintiffs' account statements without any showing of how those statements may be attributed to Defendant. Instead, they simply argue once again that based on his position in the company he is liable because it was his job to ensure the statements' accuracy. (Pl. br. at 23) These are precisely the types of conclusory allegations – with no particularized factual nexus alleged concerning Defendant and the alleged misstatements – that are not entitled to

a presumption of truth. Indeed, Plaintiffs fail to allege any facts in their Complaint that Defendant had any involvement in making the alleged false filings, financial statements or account statements. Plaintiffs have failed to refute Defendant's argument that they have not sufficiently pleaded Defendant's liability for any misstatement.

### 4. Plaintiffs Have Not Pled Scienter Through Their Purported Allegations of Recklessness

In their Opposition Brief, Plaintiffs rely solely on allegations of recklessness to support that Defendant acted with scienter. (Pl. br. at 24) Plaintiffs appear to argue that Defendant was reckless because he failed to act, which constituted an "extreme departure" from the standard of care. (Pl. br. at 25) Plaintiffs premise liability on Defendant "having done nothing to investigate and having abdicated himself of any responsibility for the Ponzi scheme." (Pl. br. at 26)

Plaintiffs primarily rely on *SEC v. George*, 426 F.3d 786, 793 (6th Cir. 2005), in support of their contention that the facts alleged support a showing of scienter. (Pl. br. at 26) In *George,* the factual allegations supporting the finding of recklessness were that the defendant:

- contributed money to the investment and solicited others to invest in the scheme;
- relayed information concerning the investment directly to investors;
- paid money as purported profits to investors that he knew were not profits; and

- paid investors with money from his own account.

*Id.* at 793-94, 797. This is clearly distinguishable from the facts alleged by Plaintiffs here.

Similarly, the other cases Plaintiffs cite in support of their claim of recklessness based on defendants' senior positions and misstatements concerning the company's core business activities are distinguishable from the present allegations. The cases Plaintiffs cite either allege additional conduct, such as access to contradictory information from that disclosed, *In re RAIT Fin. Trust Sec. Litig.,* 2008 WL 5378164 at *12 (E.D. Pa. Dec. 28, 2008); *In re Aetna Inc. Sec. Litig.,* 34 F. Supp. 2d 935, 953 (E.D. Pa. 1999); *In re Viropharma, Inc., Sec. Litig.*, 2003 U.S. Dist. LEXIS 5623, 31-32 (E.D. Pa. Apr. 3, 2003); or additional factual allegations of actual knowledge, *Ca. Public Employees Ret. Sys. v. Chubb Corp.,* 2002 WL 33934282, at *20 (D.N.J. June 26, 2002); *In re Campbell Soup Co. Sec. Litig.*, 145 F. Supp. 2d 574, 599 (D.N.J. 2001); *In re Moody's Corp. Sec. Litig.,* 599 F. Supp. 2d 493, 515 (S.D.N.Y. 2009) (scienter shown were defendant had information suggesting the company's public statements were not accurate); *compare In re Stonepath Group, Inc. Sec. Litig.*, 397 F. Supp. 2d 575, 591 (E.D. Pa. 2005) (plaintiffs failed to provide sufficiently particularized facts that would support the conclusion that defendants

behaved recklessly where no showing that defendants had knowledge "or recklessly disregarded information about the alleged problems").

As set forth in detail in Defendant's moving brief, Plaintiffs fail to plead that Defendant acted with scienter – that his conduct was highly unreasonable or an extreme departure from the standards or ordinary care. (Def. br. 20-26) Plaintiffs fail to demonstrate that Defendant was even aware of these "flags" or if he was how we could be found reckless in not discovering the fraud based on them. (Def. br. at 22) Where, as here, these purported "red flags" (Compl. ¶ 32) were reported publicly or to a regulatory agency, they do not support a finding that Defendant's conduct was so highly unreasonable or such an extreme departure from the standards of care when it seems clear that no one else – including the SEC – was alerted to the fraud by them. In addition, the remaining purported "red flags" were not "red" in that they were capable of innocent explanation or in the investors' knowledge. *See In re Bayou Hedge Fund Litig.*, 534 F. Supp. 2d 405, 418 (S.D.N.Y. 2007). Plaintiffs thus have failed to plead scienter by showing recklessness on the facts alleged.

## C. Plaintiffs Fail to Plead Control Person Liability Under Section 20(a)

Plaintiffs argue that: (1) their Section 20(a) claims are not subject to the heightened pleading requirements of Rule 9(b); (2) they do not have to plead

culpable participation in order to survive Defendant's motion; and (3) they have in fact pled Defendant's culpable participation in the fraud as a control person. (Pl. br. at 10) For the reasons set forth below, each of these arguments should be rejected.

1. **Section 20(a) Claims Should Be Subject to the Heightened Pleading Requirements of Rule 9(b) and the PSLRA**

As stated in Defendant's original brief, courts have found the pleading burden for 20(a) claims akin to the 10(b) scienter requirement. (Def. br. at 29-30) *See e.g., Lapin v. Goldman Sachs Group, Inc.,* 506 F. Supp. 2d 221, 246 (S.D.N.Y. 2006) (holding that "culpable participation" is a pleading requirement to state a section 20(a) claim, "and that it must be plead with the same particularity as scienter under section 10(b). Namely, in order to withstand a motion to dismiss, a section 20(a) claim must allege, at a minimum, particularized facts of the controlling person's conscious misbehavior or recklessness.").

To the extent Plaintiffs cite to *In re Able Labratories Sec. Litig., supra,* for the holding that Rule 8(a)(2) and not Rule 9(b) applies to their Section 20(a) claims, the *Able* court noted that the Third Circuit has not explicitly reached this issue. While the appropriate standard of review is not a settled question in this Circuit, and some courts have reached divergent conclusions, given that the Complaint sounds in fraud it is appropriate for

the pleading strictures of Rule 9(b) to apply even if fraud is not an element of the cause of action. *See In re Alstrom S.A. Sec. Litig.*, 406 F. Supp. 2d 402, 482 (S.D.N.Y. 2005) (Rule 9(b) applied to plaintiffs' averments although fraud was not an element of their securities law claims because the complaint conduct as pled sounded in fraud); *Johnson v. Tellabs, Inc.,* 303 F. Supp. 2d 941, 969 (N.D. Ill. 2004) ("Section 20(a) claims are sounded in fraud, thus Plaintiffs must meet the heightened pleading requirements of Rule 9(b)"), *aff'd in part and rev'd in part on other grounds, remanded* 437 F. 3d 588 (7th Cir. 2006), *vacated and remanded by Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308 (2007).

In addition, as culpable participation is required to be pled (as set forth below), the PSLRA requirements apply to that element. The PSLRA requires that plaintiffs "plead *with particularity* facts giving rise to *a strong inference* that the controlling person knew or should have known that the primary violator, over whom that person had control, was engaging in fraudulent conduct." *In re Global Crossing Sec. Litig.*, 322 F. Supp. 2d 319, 349 (S.D.N.Y. 2004) (internal quotation marks omitted and emphases added). Accordingly, the heightened pleading standards should apply to Plaintiffs' claims.

## 2. Culpable Participation Is Required in a Section 20(a) Claim

While recognizing that the Third Circuit adheres to the requirement that culpable participation is an element of a Section 20(a) claim, Plaintiffs instead argue that, although they attempt to plead culpable participation, it does not have to be sufficiently pled to survive a motion to dismiss. (Pl. br. at 11) Although Plaintiffs point out that the *Able* court so concluded, that court recognized that other courts, including a court in the District, have held otherwise. 2008 U.S. Dist. LEXIS at *111, *quoting In re Nice Systems*, 135 F. Supp. 2d 551, 588 (D.N.J. 2001) ("for control person liability under Section 20(a), a plaintiff is required to establish . . . that [the defendants] were in some meaningful sense culpable participants in the fraud."). As culpable participation is an essential element of the 20(a) claim, and as Plaintiffs here purport to attempt to plead culpable participation in their Complaint, this Court should follow the precedent that requires that it be sufficiently pled at the outset.

## 3. Plaintiffs Have Not Pled That Defendant Culpably Participated in the Fraud

Plaintiffs argue that they have pled that Defendant is a culpable participant in the fraud because he did not implement or enforce a system of controls (Pl. br. at 13); he did not act on "red flags" indicative of BLMIS' fraudulent practices (Pl. br. at 15); and he furthered the fraud through his

responsibility for sales literature, account statements, and SEC filings by way of his position at BLMIS. (Pl. br. at 15) These allegations lack particularity and fail to evidence that Defendant engaged in conscious misbehavior or recklessness sufficient to find him a "culpable participant" in the Ponzi scheme. It is not enough to plead that Defendant ignored red flags or failed to set up a system of controls; Plaintiffs must plead that Defendant did so with scienter. In order to plead culpable participation, Plaintiffs must plead with particularity facts giving rise to a strong inference that the control person knew or should have known that the primary violator was engaging in fraudulent conduct. *See In re Philip Servs. Corp. Secs. Litig.*, 383 F. Supp. 2d 463, 486 (S.D.N.Y. 2004) (citing *Cromer Finance Ltd. v. Berger*, 137 F. Supp. 2d 452, 484 (S.D.N.Y. 2001)). Here, Plaintiffs fail to allege deliberate inaction on the part of Defendant in order to knowingly further the fraud or prevent its discovery.

To the extent Plaintiffs attempt to discredit Defendant through assertions that he has not offered an explanation of his role at BLMIS or attempted to prove his good faith (Pl. br. at 14-15), it is Plaintiffs' burden to properly plead their cause of action. As the Court is aware, it would be inappropriate for Defendant to submit an affidavit attempting to establish facts at the motion to dismiss stage. Indeed, none of the parties has put in

factual affidavits and no inference can or should be drawn from the silence

of any party. Thus, arguments that Defendant has failed to affirmatively put

forward facts have no place at this point of the litigation.

## POINT III

## PLAINTIFFS FAIL TO ALLEGE VIOLATIONS OF STATE LAW

### A.     New York Law Applies to Counts Two, Four, Five, and Six

As a threshold matter, New York law plainly governs Plaintiffs' state-

law claims for breach of fiduciary duty, aiding and abetting breach of

fiduciary duty, negligent misrepresentation, and negligence. Plaintiffs'

assertion that New Jersey law applies – or that discovery is required to

determine the applicable law – is meritless and a transparent attempt to

obtain discovery in spite of the facial deficiency of their Complaint.

As Plaintiffs acknowledge, if conflicts of laws exist, the applicable

choice-of-law rule is the "most significant relationship" test. *P.V. v. Camp

Jaycee*, 197 N.J. 132, 143 (2008) (adopting the most significant relationship

analysis set forth in §§ 6 and 145 of the Restatement (Second) of Conflicts

of Law). The "most significant relationship" is evaluated under the

following principles: (a) the needs of the interstate and international

systems; (b) the relevant policies of the forum; (c) the relevant policies of

other interested states and the relative interests of those states in the

determination of the particular issue; (d) the protection of justified

expectations; (e) the basic policies underlying the particular field of law; (f)

certainty, predictability and uniformity of result; and (g) ease in the

determination and application of the law to be applied. Restatement

(Second) of Conflict of Laws § 6 (1971). In applying these principles, New

Jersey courts must consider the following relevant contacts: (a) the place

where the injury occurred; (b) the place where the conduct causing the injury

occurred; (c) the domicil, residence, nationality, place of incorporation and

place of business of the parties; and (d) the place where the relationship, if

any, between the parties is centered. Restatement (Second) of Conflict of

Laws § 145 (1971).

Because Plaintiffs' claims relate to the existence or extent of

Defendant's liability as an officer of BLMIS (a New York limited liability

company (Compl. ¶ 7)) to creditors of BLMIS, the analysis starts from the

presumption that New York law governs, unless another State is found to

have a more significant relationship to the parties and occurrence. *Francis

v. United Jersey Bank*, 162 N.J. Super. 355, 368-369 (Law Div. 1978)

(quoting Rest. § 309), *aff'd* 171 N.J. Super. 34 (App. Div. 1979), *aff'd* 87

N.J. 15 (1981); *see also Gutman v. Howard Sav. Bank*, 748 F. Supp. 254,

267 n.10 (D.N.J. 1990) (same).

Additionally, every relevant factor points to the inevitable conclusion that under Plaintiffs' allegations, New York has the most significant relationship to the parties and events:

- BLMIS is a New York limited liability company (Compl. ¶ 7);

- BLMIS was, at all relevant times, located in New York City (Compl. ¶ 7);

- Defendant was employed by BLMIS and was responsible for the day-to-day management of its trading desk (Compl. ¶¶ 11, 13);

- Defendant is a citizen of New York (Compl. ¶ 6); and

- as has been widely reported, the BLMIS liquidation, Bernard Madoff's personal bankruptcy case, and the SEC and criminal actions against Bernard Madoff, as well as several other civil cases arising out of the BLMIS fraud, are pending in New York.

Accordingly, New York has overwhelming contacts with Defendant and the relevant facts and a paramount interest in application of its laws. The Restatement principles thus compel the application of New York law.

Meanwhile, Plaintiffs' allegation of New Jersey contacts primarily rests on the allegation that New Jersey was one of the many States in which Defendant's employer, BLMIS, transacted business (Compl. ¶ 2)[3]– an

---

[3] The Complaint alleges that "relevant events and violations alleged in this Complaint have occurred within this District" (Compl. ¶ 2), but does not identify any such events; nor does it allege any specific contacts that Defendant had with New Jersey or with the Lautenberg Foundation.

allegation palpably insufficient to overcome the other substantial contacts with New York. *See Gutman*, 748 F. Supp. at 267 n.10 (in shareholder suit against corporation and its officers and directors, applying the law of the State in which the corporation was incorporated and the defendants resided (New Jersey), and stating: "Although there are some contacts with New York, these relate mostly to plaintiffs. The duties of directors and officers to shareholders should not depend on the citizenship of individual shareholders."). Moreover, the Complaint alleges that *only one of the three Plaintiffs* (the Lautenberg Foundation) is located in New Jersey (Compl. ¶ 3).[4]

Under these circumstances, it is readily apparent that New York law governs. Plaintiffs' suggestion that the "factual record is insufficient to do the required fact-intensive" analysis (Pl. br. at 29) – and that discovery might reveal some hypothetical, unidentified facts that could transform the basic nature of the parties and events (Pl. br. at 30) – is meritless. Plaintiffs'

---

In addition, the Complaint also alleges that Defendant is "found" in New Jersey (Compl. ¶ 2) – without any explanation for what this means – notwithstanding that Defendant both lived and worked in New York, and no specific contacts with New Jersey are alleged.

[4] Plaintiff Joshua Lautenberg is alleged to be a domiciliary and citizen of Colorado (Compl. ¶ 4), and Plaintiff Ellen Lautenberg is alleged to be a domiciliary and citizen of Connecticut (Compl. ¶ 5).

own allegations leave no doubt that New York has the most significant relationship.

## B. The Complaint Fails to Allege that Defendant Owed Any Duty to Plaintiffs

It is not clear from Plaintiffs' Complaint and Opposition Brief whether Plaintiffs are arguing that Plaintiffs were owed duties as customers, or as creditors, of BLMIS. (Pl. br. at 32-33) In either case, Plaintiffs' claims fail as a matter of law.

As explained *supra*, New York law governs the existence or extent of Defendant's liability as an officer of BLMIS. *See Gutman*, 748 F. Supp. at 267 n.10. As set forth in Defendant's opening brief at Point II.A(1), New York follows the general rule that an officer or director of a broker-dealer owes no fiduciary duty to the broker-dealer's customers, even where the customer's account is discretionary. *See, e.g., A.I.A. Holdings S.A. v. Lehman Bros., Inc.*, 97 Civ. 4978, 1999 U.S. Dist. LEXIS 971, at **26-27 (S.D.N.Y. Jan. 28, 1999) (a corporate officer owes a duty to the corporation, but not to the customers of the corporation); *Am. Fin. Int'l Group-Asia, L.L.C. v. Bennett*, 05 Civ. 8988, 2007 U.S. Dist. LEXIS 43508, at *14-16 (S.D.N.Y. June 13, 2007) (dismissing claims against broker's individual officers because no fiduciary duty was established, even if plaintiffs granted discretionary trading authority to broker); *see also Lutz v. Chitwood (In re*

*Lutz)*, 337 B.R. 160, 170-72 (S.D. Ohio 2005) (under Ohio law, broker-dealer's compliance principal owed customer no duty); 1-6 *Liability of Corporate Officers and Directors* (Matthew Bender & Co. 2008) § 6.02 ("Directors and officers owe fiduciary duties only to the corporation and its shareholders, and generally not to creditors or other third parties . . ." because "those third parties have no direct privity with the directors and officers . . . .").

The law is equally clear that a corporate officer or director owes no direct duty to creditors, even where the company is insolvent. An officer or director's duty to preserve corporate assets for the benefit of creditors stems from the fiduciary duty to the corporation itself, and an action for breach of such a duty must be brought derivatively on behalf of the company, or by a trustee for the benefit of all creditors, not just a few individual plaintiffs. *RSL Communs. PLC v. Bildirici*, No. 04-cv-5217, 2006 U.S. Dist. LEXIS 67548, **33-34 (S.D.N.Y. Sept. 14, 2006); *Official Comm. of Unsecured Creditors of Norstan Apparel Shops, Inc. v. Lattman (In re Norstan Apparel Shops, Inc.)*, 367 B.R. 68, 82 (Bankr. E.D.N.Y. 2007) (where directors or officers breach their insolvency duties, "[n]o particular creditor would have the right to recovery; rather, all creditors would benefit when the corporation was made whole and the corporation's value was increased . . .")

(punctuation and citations omitted); *see also N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla,* 930 A.2d 92, 103 (Del. 2007) ("Accordingly, we hold that individual creditors of an insolvent corporation have no right to assert direct claims for breach of fiduciary duty against corporate directors. Creditors may nonetheless protect their interest by bringing derivative claims on behalf of the insolvent corporation or any other direct nonfiduciary claim, as discussed earlier in this opinion, that may be available for individual creditors.") (emphasis omitted); 1-6 *Liability of Corporate Officers and Directors* (Matthew Bender & Co. 2008) § 6.02 ("A director's liability in the case of a corporation's insolvency may extend only to the corporation and not to creditors, although any recovery by the corporation would be intended for the benefit of unpaid creditors.").

This rule of law comports with the principles of justice and equity and with the scheme established by the Bankruptcy Code and the Securities Investor Protection Act. As Plaintiffs recognize, many innocent investors were "ripped off" by Bernard Madoff's Ponzi scheme, and "[s]ome have seen their lives ruined and life savings stolen." (Pl. br. at 6) It would be inequitable to allow these three plaintiffs to sue individually, and obtain an individual recovery, for any breach of a fiduciary duty owed to the company and causing harm shared ratably by all creditor-customers.

Even if New Jersey law applied to this claim, Plaintiffs' Complaint fails to allege a direct duty from Defendant to Plaintiffs. Plaintiffs argue that *Francis v. United Jersey Bank*, 87 N.J. 15, 34-37 (1981), creates a duty on the part of *directors* to take reasonable steps to protect clients against policies resulting in misappropriation of entrusted funds. (Pl. br. at 32-33) There is no allegation in the Complaint, however, that Defendant was a director of BLMIS, or even that a board of directors existed.[5]

Because Defendant owed Plaintiffs no duty, Plaintiffs' claim for breach of fiduciary duty must be dismissed.

## C. Plaintiffs' Complaint Fails to State a Claim for Aiding and Abetting a Breach of Fiduciary Duty

As explained in Defendant's initial brief at Point II.B, the Complaint fails to state a claim for aiding and abetting a breach of fiduciary duty because it fails to allege that Defendant had actual knowledge of any breach by Bernard Madoff or BLMIS or substantially assisted in such a breach. Indeed, Plaintiffs' own Complaint alleges that Bernard Madoff confessed to Defendant, along with other BLMIS employees in December 2008. (Compl. ¶ 28)

---

[5] Indeed, the Form ADV attached as Exhibit C to the Complaint makes clear that BLMIS was a single-member limited liability company with Bernard Madoff as its sole member.

Plaintiffs' citation of *Lehman Bros. Commercial Corp. v. Minmetals Int'l Non-Ferrous Metals Trading Co.*, 179 F. Supp. 2d 118, 153 (S.D.N.Y. 2000), for the proposition that a "third party can become obligated to investigate an agent's actions where there are indications that the agent's actions are suspicious in nature" (Pl. br. at 35), is misguided. In that case, the court concluded that "[a] jury could reasonably find that [defendant] assumed a fiduciary duty" to plaintiff. *Id.* at 151. By contrast, the law is well-settled that where, as here, the defendant owed the plaintiff no fiduciary duty, a failure to investigate – and "even alleged ignorance of obvious warning signs of fraud" – cannot support an aiding and abetting claim. *Chemtex, LLC v. St. Anthony Enters.*, 490 F. Supp. 2d 536, 547 (S.D.N.Y. 2007); *see also Kolbeck v. LIT America, Inc.*, 939 F. Supp. 240, 247 (S.D.N.Y. 1996).[6]

Nor have Plaintiffs sufficiently alleged that Defendant consciously avoided knowledge of breaches of fiduciary duty. "Conscious avoidance . . . occurs when it can almost be said that the defendant actually knew because he or she suspected a fact and realized its probability, but refrained from

---

[6] Any reliance on *Whitney v. Citibank, N.A.*, 782 F.2d 1106 (2d Cir. 1986), is equally misplaced. In that case, the defendant bank did not simply fail to investigate red flags; rather, the court found that Citibank actively participated in the breach of fiduciary duty by backdating and falsifying records and otherwise deceiving plaintiff. *Id.* at 1114.

confirming it in order later to be able to deny knowledge." *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*, 479 F. Supp. 2d 349, 368 (S.D.N.Y. 2007) (quotation marks and citation omitted). Plaintiffs' conclusory allegation that Defendant "recklessly ignored and/or concealed and/or [did] not disclose[] and/or consciously disregarded" certain red flags (Compl. ¶ 31) is insufficient to establish conscious avoidance. *See Iqbal*, 2009 U.S. LEXIS 3472 at *30-31 (conclusory allegations "are not entitled to the assumption of truth"). Rather, Plaintiffs' pleading burden is a "heavy one," requiring "allegations of facts that give rise to a 'strong inference' of actual knowledge." *Fraternity Fund Ltd*, 479 F. Supp. 2d at 367. Plaintiffs' Complaint merely pleads that Defendant ignored "red flags" and speculates that such ignorance may have been conscious. These allegations are inadequate to create a strong inference of knowledge of the fraud – especially where almost all of the alleged red flags were conspicuous to all investors and there are no allegations of Defendant being aware of any customer complaints. *See id.*; *Chemtex*, 490 F. Supp. 2d at 547.

The Complaint also fails to allege the required element of "substantial assistance" because it fails to allege conduct by which Defendant actively assisted in breaches of fiduciary duty. Rather, the Complaint alleges nonfeasance – a failure of Defendant to follow up on red flags, in derogation

of his duties as an officer of BLMIS.  Because Defendant owed Plaintiffs no

duty, "mere inaction" is insufficient to support a claim.  *See Sharp Int'l*

*Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43,

49-50 (2d Cir. 2005).  Thus, the claim must be dismissed.

### D.    The Complaint Fails to State a Claim for Negligent Misrepresentation

As explained in Defendant's initial brief at Point II.C(1), the

Complaint fails to state a claim for negligent misrepresentation because,

*inter alia*, it fails to point to any misrepresentation that Defendant made or

participated in.  Rather, the Complaint vaguely and inadequately alleges that

Defendant "acquiesced" in company representations.

Plaintiffs' Opposition Brief attempts to argue that Defendant's

designation as a "control person" for purposes of federal securities laws

somehow makes him liable under state law for negligent misrepresentations

of BLMIS.  None of the cases cited by Plaintiffs supports such a proposition.

Rather, Plaintiffs' own cases establish that a corporate officer acting in the

scope of employment cannot be held liable individually to third parties

unless the officer was in "*exclusive and complete control*" of management

and operations.  *Michaels v. Lispenard Holding Corp.*, 201 N.Y.S.2d 611,

614 (N.Y. App. Div. 1st Dep't 1960) (emphasis added).  Here, the

Complaint does not (and could not possibly) assert that Defendant had

exclusive and complete control of management of BLMIS – an LLC with

Bernard Madoff as sole member (Compl. Exh. C at 29)  Accordingly, New

York law precludes liability of Defendant for the misrepresentations of

BLMIS. *Michaels*, 201 N.Y.S.2d 611.[7]

In addition, the Complaint fails to allege any duty of Defendant to

Plaintiffs, or *any* direct relationship between Defendant and Plaintiffs, let

alone the type of "close" relationship – including reliance by Plaintiffs on

statements by Defendant, and Defendant's knowledge of such reliance –

necessary to support a negligent misrepresentation claim. *See, e.g., Arnold

Chevrolet LLC v. Tribune Co.*, 418 F. Supp. 2d 172, 189-90 (E.D.N.Y.

2006); *Dallas Aero., Inc. v. CIS Air Corp.*, 352 F.3d 775, 788 (2d Cir. 2003).

## E.     The Complaint Fails to State a Claim for Negligence

As explained in Defendant's initial brief at Point II.D, Plaintiffs'

negligence claim must be dismissed because it fails to allege any facts that

---

[7] Plaintiffs' citation to *Model Imperial Supply Co. v. Westwind Cosmetics, Inc.*, 808 F. Supp. 943, 946 (E.D.N.Y. 1992), and *American Express Travel Related Servs. Co. v. North Atl. Resources, Inc.*, 691 N.Y.S.2d 403, 404 (N.Y. App. Div. 1st Dep't 1999), to support alleged "control person" liability for negligent misrepresentations by a corporation is inapposite.  Both cases state only the uncontroversial – and irrelevant – proposition that corporate officers may be held personally liable for torts in which they personally *participate*.  Neither case makes any reference to the defendants' status as alleged "control persons" or any legal significance attaching to that designation; nor does either case bear on the Complaint's failure to allege that Defendant actually made or participated in any misrepresentation.

could support the conclusion that Defendant owed any duty to Plaintiffs. Rather, the Complaint alleges that Defendant failed to perform his duties as an officer of BLMIS[8] – a claim for which he cannot be held liable to third parties.[9] *See, e.g. Michaels*, 201 N.Y.S.2d at 614; *Lutz*, 337 B.R. at 170-72.

---

[8] Indeed, Plaintiffs' Opposition Brief characterizes their claim as one that Defendant "sat back and [did] nothing." (Pl. br. at 33)

[9] Plaintiffs' citation to *Vega v. Fox*, 457 F. Supp. 2d 172, 187-188 (S.D.N.Y. 2006) (Pl. br. at 43-44) also is misguided. *Vega* addressed "the protection of 'disabled young adults'" who reside in mental health treatment facilities or are supervised by the foster care system and has no relevance to this case.

## CONCLUSION

For all the foregoing reasons, and for the reasons set forth in Defendant's moving brief, the Complaint against Defendant should be dismissed pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure.

Respectfully submitted,
**SAIBER LLC**

Attorneys for Defendant Peter Madoff

By: ___/s/ *William F. Maderer*___
William F. Maderer (wmaderer@saiber.com)
Michael J. Grohs (mgrohs@saiber.com)
One Gateway Center, 13th Floor
Newark, New Jersey 07102
(973) 622-3333

Charles T. Spada (cspada@lswlaw.com)
**LANKLER SIFFERT & WOHL LLP**
500 Fifth Avenue, 33rd Floor
New York, New York 10110
(212) 921-8399

Dated: June 2, 2009