**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| THE LAUTENBERG FOUNDATION, JOSHUA S. LAUTENBERG and ELLEN LAUTENBERG, | : : : : | |
| Plaintiffs, | : : | **Civil Action No. 09-816 (SRC)** |
| v. | : : | **OPINION** |
| PETER MADOFF, | : : | |
| Defendant. | : | |

**CHESLER**, District Judge

        This matter comes before the Court on the motion by Defendant Peter Madoff

("Defendant" or "Peter Madoff") to dismiss the Complaint in this federal securities fraud action.

The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the

Complaint pleads claims arising under the Securities Exchange Act of 1934, 15 U.S.C. § 78, et

seq. (the "Exchange Act"), and pursuant to 28 U.S.C. § 1367 with respect to various state law

causes of action also asserted in the Complaint.  Plaintiffs The Lautenberg Foundation, Joshua S.

Lautenberg and Ellen Lautenberg (collectively "Plaintiffs") have opposed the motion to dismiss.

The Court heard oral argument on the motion on August 11, 2009.  After consideration of the

parties' briefing and arguments, the Court has determined that it will grant in part and deny in

part the motion to dismiss.  In the following discussion, the Court gives its reasons for the

decision.

## I.     BACKGROUND

This action arises out of the now-notorious Ponzi scheme perpetrated by Bernard Madoff through the investment advisory services provided by his company, Bernard L. Madoff Investment Securities, LLC ("BMIS"). It is no exaggeration to say that the Madoff scandal has received daily publicity since the time it came to light. The Court, however, cannot be guided by facts or events extraneous to the pleading before it. In accordance with the Federal Rules of Civil Procedure and Third Circuit jurisprudence, the Court examines the sufficiency of the claims pled in this lawsuit based on the facts alleged in the Complaint. Those facts are as follows:

BMIS, organized in 1960 as a New York limited liability company, functioned as an investment adviser, broker-dealer and proprietary trader. BMIS took custody of clients' money to invest in its full discretion. Plaintiffs were among the many clients of BMIS, which included banks, hedge funds and institutional as well as individual investors. They each had accounts with BMIS, and their combined investment was approximately $8,922,000.

In December 2008, Bernard Madoff confessed that BMIS's investment advisory business was a giant Ponzi scheme, in which funds received from some investors were used to pay monies to other investors, that BMIS's losses totaled approximately $50 billion and that BMIS had been insolvent for years. The Securities and Exchange Commission ("SEC") charged BMIS and Bernard Madoff with securities fraud, and on February 9, 2009 Bernard Madoff entered into a partial judgment on consent, which among other things, precludes him from arguing that he did not violate securities laws as charged. The Complaint before the Court also alleges that Bernard Madoff was charged with criminal securities fraud by the federal government. Bernard Madoff

has since pled guilty to securities fraud, among various other charges, and been sentenced to 150

years in prison for his crimes.  While the plea and conviction are not pled in this Complaint,

which was filed about 4 months before the sentencing, the Court takes judicial notice of these

facts, because as matters of public record extensively and globally covered in news, legal,

financial and other media, it seems to the Court that not to take notice of them would be to

isolate this Complaint from reality.

   The Defendant in this action, of course, is not Bernard Madoff.  The sole named

defendant is Peter Madoff, his brother.  Peter Madoff worked at BMIS for almost 40 years.  He

served as its senior managing director, director of trading, chief compliance officer and general

counsel.  According to the Investment Adviser Registration filed with the SEC by BMIS,

attached as an exhibit to the Complaint, the two control persons of BMIS were Bernard and Peter

Madoff.  The Complaint alleges that Peter Madoff created the technology that permitted

customers to perform trade transactions via computer.  He was responsible for the day-to-day

management of the trading desk at BMIS.  His other duties included:

> (i) directing the management and policies of BMIS; (ii) regularly verifying
> and accurately reporting the financial condition of BMIS; (iii) establishing,
> implementing controlling, monitoring and enforcing a compliance
> program of internal controls (the "Compliance Program") designed to
> ensure BMIS' compliance with all laws; and (iv) the detection, prevention,
> and reporting of all violations of any laws or regulations by BMIS or its
> employees.

(Compl., ¶ 15).

   Plaintiffs allege that as a result of the BMIS Ponzi scheme, they have lost millions of

dollars.  According to the Complaint, various actions and inactions by Peter Madoff render him

liable for their loss under Sections 10(b) and 20(a) of the Exchange Act and under the common-

law tort theories of breach of fiduciary duty, aiding and abetting breach of fiduciary duty, negligent misrepresentation and negligence. Defendant moves to dismiss the Complaint in its entirety.

## II.    DISCUSSION

Defendant brings this motion pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the claims asserted in the Complaint for failure to state a claim upon which relief may be granted. When evaluating the sufficiency of claims subject to the pleading requirements of Rule 8(a), the Court must apply the plausibility standard articulated by the Supreme Court in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009). In Twombly and Iqbal, the Supreme Court stressed that a complaint will survive a motion under Rule 12(b)(6) only if it states "sufficient factual allegations, accepted as true, to 'state a claim for relief that is plausible on its face.'" Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556.) The cases are also clear about what will not suffice: "threadbare recitals of the elements of a cause of action," an "unadorned, the-defendant-unlawfully-harmed-me accusation" and conclusory statements "devoid of factual enhancement." Id. at 1949-50; Twombly, 550 U.S. at 555-57. While the complaint need not demonstrate that a defendant is *probably* liable for the wrongdoing, allegations that give rise to the mere *possibility* of unlawful conduct will not do. Iqbal, 129 S.Ct. at 1949; Twombly, 550 U.S. at 557.

Certain claims in the action before the Court, however, must satisfy a pleading standard more stringent than Rule 8. Plaintiffs' claims under Section 10(b) and Rule 10b-5 are subject to the heightened pleading standard imposed by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), which the Court will review in its analysis of those claims below. Moreover, the securities fraud claims must also comply with the heightened pleading requirement of Rule 9(b). In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d 256, 275 (3d Cir. 2006).

Regardless of what standard the Court must apply in examining the sufficiency of a claim, the law is clear that the Court must consider the Complaint in its entirety and review the allegations as a whole and in context. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322-23 (2007); Iqbal, 129 S.Ct. at 1950. In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may consider only the allegations of the complaint, documents attached or specifically referenced in the complaint if the claims are based upon those documents and matters of public record. Tellabs, 551 U.S. at 322; Winer Family Trust v. Queen, 503 F.3d 319, 327 (3d Cir. 2007). Moreover, though Twombly and Iqbal have abrogated the "any set of facts" pleading standard of Conley v. Gibson, 355 U.S. 41 (1957), these cases leave undisturbed the principle that, on a motion to dismiss, the issue before the Court "is not whether plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence in support of the claims." Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1420 (3d Cir. 1997) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)); see also Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (relying on Twombly to hold that to survive a motion to dismiss a Complaint must assert "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element").

Having set forth the standards of review applicable to the Complaint, the Court will

proceed to review the sufficiency of the pleading as to each claim asserted.

**A.      Section 10(b) Claim For Securities Fraud**

Count One of the Complaint asserts a cause of action under Section 10(b) of the

Exchange Act.  Section 10(b) prohibits "manipulative" or "deceptive" conduct violating SEC

rules "in connection with the purchase or sale of a security."  15 U.S.C. § 78j(b).  Its

implementing regulation, SEC Rule 10b-5, further specifies that it shall be unlawful:

> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.  The United States Supreme Court has recognized a private cause of

action under Section 10(b) for violations of the statute and SEC rule.  <u>Stoneridge Inv. Partners,</u>

<u>LLC v. Scientific-Atlanta, Inc.</u>, 128 S.Ct. 761, 768 (2008) (citing <u>Superintendent of Ins. of N.Y.</u>

<u>v. Bankers Life & Cas. Co.</u>, 404 U.S. 6, 13 n. 9 (1971)).

As Rule 10b-5 reflects, securities fraud violations may be based on a misleading

statement or omission of material fact, addressed in subsection (b) of the rule, as well as on

deceptive acts or devices, as provided by subsections (a) and (c).  <u>See, e.g.</u>, <u>In re Global</u>

<u>Crossing, Ltd. Sec. Litig.</u>, 322 F.Supp.2d 319, 336 (2004) (observing that under Rule 10b-5, a

cause of action exists not only for wrongdoing related to statements or omissions but also for

behavior defrauding another in connection with the purchase or sale of a security without regard

to any statement); see also Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128,152-53

(1972) (observing that actionable violations of Rule 10b-5 are not restricted to false statements or

omissions).  As recently observed by another judge of this Court, although "the majority of

Section 10(b) and Rule 10b-5 actions are brought under Rule 10b-5(b) for false or misleading

statement or omissions . . . deceptive conduct alone may premise liability under Section 10(b)

and Rule 10b-5."  S.E.C. v. Lucent Techs., Inc., 610 F.Supp.2d 342, 349-50 (D.N.J. 2009).

All Section 10(b) claims, whether premised on statements or on conduct, must comply

with the exacting pleading standard of the PSLRA, which among other things, requires that

plaintiffs plead scienter with particularity.  Tellabs, 551 U.S. at 313-14; Global Crossing, 322

F.Supp.2d at 329.  Scienter, a necessary element of any section 10(b) claim, has been defined as

"a mental state embracing intent to deceive, manipulate, or defraud."  Ernst & Ernst v.

Hochfelder, 425 U.S. 185, 193 n.12 (1976).  The PSLRA states that, in all private actions for

securities fraud under federal law, "the complaint shall, with respect to each act or omission

alleged to violate this chapter, state with particularity facts giving rise to a strong inference that

the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2).

The Complaint at bar does not invoke a particular subsection of Rule 10b-5 in pleading a

claim thereunder, but Plaintiffs have argued to the Court that it asserts a Section 10(b) claim

based on misleading statements and omissions, under Rule 10b-5(b), and based on deceptive act

or scheme, under Rule 10b-5(a) and (c).

       1.    Section 10(b) Claim for Fraudulent Statements and Omissions

To maintain a private right of action for securities fraud under Section 10(b) and Rule

10b-5(b), Plaintiffs must allege "(1) a material misrepresentation or omission by the defendant;

(2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." Stoneridge, 128 S.Ct. at 768 (citing Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 341-342 (2005)). As the language of Rule 10b-5(b) makes plain, a violation of the securities law may be based on either an affirmative misrepresentation or omission. Suprema Specialties, 438 F.3d at 275. Plaintiffs allege that Peter Madoff is liable for Rule 10b-5(b) violations based on both statements and omissions of material fact. The Court will first deal with the claim insofar as it is founded on allegations of misleading statements by Defendant.

The Complaint charges Peter Madoff with "making and/or acquiescing in the making of affirmative misrepresentations" that fall into three categories: (1) statements in BMIS promotional literature touting the company's "unblemished record of value, fair-dealing and high ethical standards"; (2) information in reports filed with the SEC misrepresenting BMIS's assets, income, cash flow and other financial data; and (3) false and nonexistent transactions reported in account statements provided by BMIS to investors. (Compl., ¶ 34 and Ex. A.) It alleges that "he was . . . responsible for making, directly or indirectly, affirmative misrepresentations concerning the honesty of BMIS' business, the ethics of BMIS, the profitability of BMIS' business, the financial condition of BMIS, and the accuracy of account statements provided to Plaintiffs and other investors." (Id., ¶ 36.)

Plaintiffs' misrepresentation-based claim is, however, fundamentally flawed because it fails to connect Peter Madoff to the alleged misrepresentations with the specificity required by the PSLRA and Rule 9(b). The PSLRA provides that a Section 10(b) claim must "specify each statement alleged to have been misleading, the reason or reasons why the statement is

misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1)(B).  Under Rule 9(b), Plaintiffs must "identify the source of the allegedly fraudulent misrepresentation or omission."  Suprema Specialties, 438 F.3d at 276.

The Complaint does not allege that Peter Madoff authored, published or made the statements; rather it asserts in the alternative that he "made and/*or acquiesced in* the making of materially false and misleading misrepresentations" and that he is legally accountable for those statements under Section 10(b) based on his responsibility for the issuance of the statements. (Compl., ¶¶ 36, 38.)  As expressly held by the Third Circuit, mere responsibility for published reports, without a specific allegation that the defendant was actually involved in the preparation of a public statement or report will not suffice to plead a claim under the PSLRA.  Winer Family Trust, 503 F.3d at 334-35.  The Complaint's allegations with respect to Peter Madoff's liability for the misrepresentations amount to group pleading, a doctrine which presumes "that statements in group-published documents including annual reports and press releases are attributable to officers and directors who have day-to-day control or involvement in regular company operations."  Id. at 335.  Indeed, at oral argument, Plaintiffs argued to the Court that the Complaint contained detailed allegations demonstrating that as a controlling person of BMIS and the person in charge of trading and compliance, these various statements and publications concerning the company's ethics, financial health and trading could be "attributed" to Peter Madoff.  The Third Circuit, however, has concluded in a precedential opinion that the group pleading doctrine is inconsistent with the PSLRA's heightened pleading requirement and does not survive its enactment.  Id. at 335, 337.  In Winer Family Trust, the court reasoned that the

presumption on which the group pleading doctrine is based runs afoul of the statutory requirement that the involvement of "the defendant" must be set forth with particularity.  Id. at 335 (quoting 15 U.S.C. § 78u-4(b)).  It noted, as a contrasting example, that the claims against one defendant in that case remained viable because it had been alleged that the defendant had been regularly quoted in press releases.  Id. at 337 n.8.  The Winer Family Trust court, however, dismissed the Rule 10b-5 claims against various other individual defendants, finding the allegations that they "were responsible for the accuracy of the public reports and releases" and that they had "access to, control over, and ability to edit and withhold dissemination of [the corporation's] press releases and SEC filings" did not adequately plead a claim under Section 10(b).  Id. at 334-35, 337.

Here, too, the allegations concerning Peter Madoff's involvement with the alleged misrepresentations suffer from the same deficiencies found in Winer Family Trust.  The BMIS promotional piece, the SEC filings and the account statements are all group published documents, and the Complaint fails to allege what, if any, was the Defendant's participation in their production and/or how Defendant is or could be considered the source of those statements. The Court will therefore dismiss without prejudice Plaintiffs' Rule 10b-5(b) claim insofar as it is based on alleged affirmative misrepresentations.

The omissions-based Rule 10b-5(b) claim, however, survives this motion to dismiss.  The Complaint alleges that Peter Madoff committed actionable misconduct by failing to disclose that BMIS was engaged in a Ponzi scheme or some kind of fraud in conscious disregard of numerous indicators of fraudulent activity. (Compl., ¶ 31.)  In paragraph 32 of the Complaint, Plaintiffs list 16 indicators of fraud, which the Complaint terms "red flags." The items listed generally regard

the secrecy of the investment advisory services, the extraordinary performance of BMIS customers' accounts and unusual business practices for a company handling a purported $17 billion in assets.  Though the Court will not repeat the list here, it notes a few examples:  The investment advisory services arm was segregated from the rest of BMIS.  It was located on a separate floor, known as the "cage", which was off-limits to all but a few select employees.  The records of the investment advisory business were also secret and segregated from other BMIS records.  Returns on accounts handled by investment advisory services were abnormally profitable.  They were consistently positive over 144 months of reported operations.  Funds run by other entities using BMIS's "split-strike conversion" strategy failed to produce returns even remotely as good.  Account statements generated by BMIS showed a pattern of purchases regularly at or close to daily lows and sales regularly at or close to daily highs.  Customers, which included feeder funds and other sophisticated entities, did not have electronic real-time access to their accounts.  BMIS did not use its own trading desk or outside brokers when buying or selling the securities it purported to manage and sell on a monthly basis.  Despite managing billions of dollars in client funds, BMIS employed an auditing firm in  Rockland County, New York consisting of three employees - one of whom was a 78-year-old accountant living in Florida and one of whom was a secretary.  (See, generally, Compl., ¶ 32.)

Defendant attacks the omissions-based claim on the grounds that the Complaint has failed to allege facts establishing that Peter Madoff owed Plaintiffs a duty of disclosure.  It is well-established in the securities fraud jurisprudence that "[s]ilence, absent a duty to disclose, is not misleading under Rule 10b-5." Basic Inc. v. Levinson, 485 U.S. 224, 239 n.17 (1988); see also Winer Family Trust, 503 F.3d at 329 ("to impose liability for non-disclosure, a defendant must

be under a duty to disclose the omitted information"). The Third Circuit has held that an affirmative duty to disclose generally "arises when there is insider trading, a statute requiring disclosure, or an inaccurate, incomplete, or misleading prior disclosure." Oran v. Stafford, 226 F.3d 275, 229 (3d Cir. 2000). Plaintiffs argue that the Complaint adequately pleads that Peter Madoff owed them such a duty on two grounds: one, that they had discretionary accounts with BMIS and two, that Peter Madoff made prior false disclosures. The latter argument clearly fails to carry the day, as the Court has concluded that the Complaint is deficient with regard to allegations that Peter Madoff made material misrepresentations. The former argument, however, appeals to the duty to speak grounded in a fiduciary relationship.

The Supreme Court has held that silence can give rise to liability under Section 10(b) and Rule 10b-5 where the party who fails to disclose information owes the other a fiduciary duty. Chiarella v. United States, 445 U.S. 222, 228 (1980); see also S.E.C. v. Zandford, 535 U.S. 813, 823 (2002) (holding that for purposes of Section 10(b) liability "any distinction between omissions and misrepresentations is illusory in the context of a broker who has a fiduciary duty to her clients."). In Chiarella, a criminal securities fraud action, the Supreme Court reversed the conviction against the defendant employee of a financial printer, who traded on non-public information regarding a corporate takeover, because he did not owe a duty of disclosure to the corporation's stockholders or its target companies. Id. at 231. The Chiarella court held that "the duty to disclose arises when one party has information 'that the other [party] is entitled to know because of a fiduciary or other similar relation of trust and confidence between them.'" Id. at 228 (quoting Restatement (Second) of Torts § 551(2)(a) (1976)).

12

The critical question on this motion to dismiss is, then, whether the Complaint alleges facts which would establish that Plaintiffs and Peter Madoff were in a fiduciary relationship, thus imposing upon Defendant a duty of disclosure.  The parties take opposing positions on this question in light of diverging authority between New York and New Jersey law.  There is no dispute that, holding discretionary accounts for Plaintiffs, *BMIS* owed a fiduciary duty to Plaintiffs.  Under both New York and New Jersey law, a fiduciary duty exists between a broker and a client "where the customer has delegated discretionary trading authority to the broker." Independent Order of Foresters v. Donald, Lufkin & Jenrette, Inc., 157 F.3d 933, 940 (2d Cir. 1998); S.E.C. v. Pasternak, 561 F.Supp.2d 459, 499 (D.N.J. 2008) (citing McAdams v. Dean Witter Reynolds, Inc., 896 F.2d 750, 767 (3d Cir. 1994)).  However, the target of Plaintiffs' Rule 10b-5 claims in this case is Peter Madoff, not BMIS.  Defendant argues that the facts alleged in the Complaint cannot establish that he owed Plaintiffs a fiduciary duty, because New York law does not impose a fiduciary duty on a corporation's controlling shareholder, officer or director to the investing public or to the corporation's customers.  See Am. Fin. Int'l Group-Asia, L.L.C. v. Bennett, No. 05 Civ. 8988 (GEL), 2007 WL1732427, at *4 (S.D.N.Y. June 14, 2007) (granting Refco officers' motion to dismiss breach of fiduciary duty claim brought by putative class of customers of a Refco subsidiary that provided currency trading services).  Plaintiffs cite New Jersey authority for their position that Defendant owed them a fiduciary duty.  See Francis v. United Jersey Bank, 87 N.J. 15 (1981).

The Court notes preliminarily that it need not, and will not resolve this choice of law issue at this very early stage of the litigation.  The Court is bound to apply the choice of law rules of New Jersey, the forum state.  Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941).

New Jersey applies the governmental interest analysis to determine which state's substantive law should apply, a test the Third Circuit has opined is fact-intensive.  Warriner v. Stanton, 475 F.3d 497, 500 (3d Cir. 2007).  The Court will thus defer its choice of law decision on the issue of fiduciary duty until the factual record is developed enough to allow the Court to apply the various factors involved in deciding which state has the greatest interest in resolving the issue.  Harper v. LG Elec. USA, Inc., 595 F.Supp.2d 486, 489 (D.N.J. 2009) (refraining from making choice of law determination on a Rule 12(b)(6) motion to dismiss until development of needed factual record, in reliance on district court's example in Warriner and Third Circuit's holding on appellate review).  Accepting the allegations of the Complaint as true, the Court finds that Plaintiffs have alleged facts that support the application of New Jersey law to this issue, at least preliminarily for the purpose of determining whether the Section 10(b) omissions-based claim may withstand the instant Rule 12(b)(6) challenge.  Plaintiff The Lautenberg Foundation is a charitable foundation based in New Jersey.  As the home state of one of the Plaintiffs, New Jersey has an interest in protecting that litigant's rights through application of its laws regarding fiduciary duty.  See Warriner v. Stanton, No. 03-2211 (JBS), 2005 WL 1397015, at *3 (D.N.J. June 14, 2005) (holding that nature of a state's contacts to litigation and parties a critical factor under government interest analysis).

        The Court finds that the Complaint alleges sufficient facts to establish that Plaintiffs and Peter Madoff were in a fiduciary relationship, as that relationship is defined by New Jersey law, and thus sufficient facts to satisfy the duty of disclosure element of Rule 10b-5(b) claim.  The Court so holds based on the decision of the New Jersey Supreme Court in Francis.  Francis concerned the liability of a director of a reinsurance broker, Pritchard & Baird Intermediaries

14

Corp. ("Pritchard"), to the broker's clients for breach of fiduciary duty in failing to prevent

misappropriation of funds by other directors.  <u>Francis</u>, 87 N.J. at 20.  Pritchard, as the broker,

acted as the intermediary between insurance companies wishing to obtain coverage for risk that

they insured against (the ceding insurers) and the reinsurance companies, which assumed that

ceded risk of loss in return for a premium.  <u>Id.</u> at 22.  Pritchard's clients, ceding insurers and

reinsurance companies, had given premium and loss funds, respectively, to the broker to hold in

trust.  <u>Id.</u> at 37-38.  Based on the nature of the services provided by the reinsurance broker to its

clients and the trust placed by clients in the broker to hold their funds, the New Jersey Supreme

Court concluded that the director in question, Mrs. Pritchard, owed the broker's clientele a

fiduciary duty.  <u>Id.</u>  As in this case, there was no question that the broker's holding of client funds

in an implied trust gave rise to a fiduciary duty by the broker to the clients.  <u>Id.</u> at 38. In its

analysis of whether that duty should run to an individual officer or director of the broker, the

<u>Francis</u> court noted that directors of some corporations, such as banks, are deemed to owe a

fiduciary duty to those who turn over funds to the corporation to hold in trust.  <u>Id.</u> at 36.  It

observed:

> Courts in other states have imposed liability on directors of non-banking
> corporations for the conversion of trust funds, even though those directors
> did not participate in or know of the conversion.  The distinguishing
> circumstances in regard to banks and other corporations holding trust
> funds is that the depositor or beneficiary can reasonably expect the director
> to act with ordinary prudence concerning the funds held in a fiduciary
> capacity.

<u>Id.</u> at 37 (citations omitted).  The New Jersey Supreme Court reasoned that, given Mrs.

Pritchard's responsibilities at the brokerage and the turnover of funds by clients in trust to the

brokerage, the director's relationship to the broker's clientele was "akin to that of a director of a

bank to its depositors." Id. at 38.   The following analysis by the New Jersey Supreme Court is

particularly instructive to the Court in finding that the Complaint sufficiently alleges that Peter

Madoff bore a fiduciary duty, and thus a duty of disclosure, to Plaintiffs:

> Mrs. Pritchard [the director] was charged with the obligation of basic
> knowledge and supervision of the business of Pritchard & Baird. Under
> the circumstances, this obligation included reading and understanding
> financial statements, and making reasonable attempts at detection and
> prevention of the illegal conduct of other officers and directors. She had a
> duty to protect the clients of Pritchard & Baird against policies and
> practices that would result in the misappropriation of money they had
> entrusted to the corporation. She breached that duty.
>
> * * *
>
> To conclude, by virtue of her office, Mrs. Pritchard had the power to
> prevent the losses sustained by the clients of Pritchard & Baird. With
> power comes responsibility. She had a duty to deter the depredation of the
> other insiders, her sons. She breached that duty and caused plaintiffs to
> sustain damages.

Id. at 39, 45.   Following an analysis of proximate cause, the New Jersey Supreme Court affirmed

the Appellate Division's judgment for plaintiffs on their negligence claim.  Id. at 45.

The Court acknowledges, as highlighted by Defendant at oral argument, that unlike the

director defendant in Francis, Peter Madoff was not on a corporate board of directors, and indeed

BMIS, unlike the broker in Francis, was not organized as a corporation and did not even have a

board of directors.  In the context of the fiduciary duty recognized by Francis, this difference is of

no moment.  The Francis court was not concerned with a corporate director's duty to

shareholders, but rather with a powerful insider's fiduciary obligations to clients, that is, to

company outsiders without a proprietary interest in the broker.  The key factors informing the

Francis court's decision were the defendant's responsibilities, including maintaining awareness

16

of the company's operations and finances, and the fact that clients entrusted their money to the broker.  In the case at bar, this Court is presented with the same factors.  The Complaint alleges that Peter Madoff had significant powers and responsibilities at BMIS, particularly with respect to its financial condition and legal compliance.  Plaintiffs "gave custody to and entrusted BMIS on a fully discretionary basis" with millions of dollars to manage and invest.  (Compl., ¶¶ 16-23).

In light of these facts, the Court finds the holding of <u>Francis</u> concerning fiduciary duty to clients directly applicable.  To borrow the New Jersey Supreme Court's language, the facts alleged would plausibly support the conclusion that Peter Madoff  had a duty to protect the clients of BMIS against policies and practices that would result in the misappropriation of money they had entrusted to the company.  Under <u>Chiarella</u>, this fiduciary duty charges Peter Madoff with a duty of disclosure to Plaintiffs.

Having found that the Complaint sufficiently alleges that Defendant was under a duty to disclose fraudulent conduct at BMIS to its clients, the Court also finds that the allegations, taken as true, establish that Peter Madoff was in possession of material information about which to keep silent.  Reading the Complaint as a whole, and with the common sense <u>Iqbal</u> reminds courts to employ, the allegations concerning Peter Madoff's responsibilities at BMIS, his sophistication as general counsel and member or officer of various securities organizations, and the ample list of unusual business practices and other indicia of fraud at BMIS together set forth facts establishing circumstantial evidence that Peter Madoff knew of some fraud or wrongdoing occurring at BMIS.  Put plainly, it alleges that there was material information that, though known by Defendant, was not disclosed to Plaintiffs, who were misled by the silence.

The Complaint also satisfies the element of scienter. This state of mind "embracing intent to deceive" may be shown by either conscious misbehavior or recklessness. Suprema Specialties, 438 F.3d at 438; see also S.E.C. v. The Infinity Group Co., 212 F.3d 180, 192 (3d Cir. 2000) ("the scienter required for securities fraud includes recklessness"). Under the PSLRA, the inference of scienter drawn from the Complaint, considered in its entirety, must be "strong." Tellabs, 551 U.S. at 323. The Supreme Court has held that determining whether the Complaint pleads the requisite strong inference of scienter requires that the Court "consider plausible nonculpable explanations for the defendant's conduct." Id. at 324. Under Tellabs, "[a] complaint will survive [a Rule 12(b)(6) motion] . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." Id.

As discussed by the Court above, the various indicia of wrongdoing and fraud alleged in the Complaint paired with Peter Madoff's responsibilities and role at BMIS constitute strong circumstantial evidence of recklessness by Defendant in his omissions regarding this information. Recklessness has been defined by the Third Circuit as

> [H]ighly unreasonable (conduct), involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, ... which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.

Infinity Group, 212 F.3d at 192. As Plaintiffs point out, Peter Madoff was the BMIS director of trading and responsible for the company's day-to-day operations. He was responsible for ensuring that BMIS complied with all laws and SEC regulations. He knew, or clearly should have known, that the purchase and sales reflected in the statements of clients with BMIS

accounts were not being executed by BMIS's own traders and that BMIS was not employing outside brokers to conduct these securities transactions. From this, one can infer that Defendant recklessly failed to investigate how the purported securities sales and purchases were being executed, which would have led to the discovery of the BMIS fraud. The Complaint alleges that the investment advisory services arm of BMIS, out of which the Ponzi scheme was perpetrated, was completely sequestered from the rest of the company, from its physical office location to the files and records related to this arm of the business. Access to the investment advisory services operation was limited to only a handful of people within the company. These allegations give rise to the strong inference that one charged with the responsibility for directing company policies, knowing its financial situation and ensuring legal compliance was aware of the investment advisory operations or would at the very least be reckless in failing to find out. These facts, of course, must be considered together with the many others alleged in the Complaint, including the unusual timing of the transactions reported, the extraordinary performance of investment accounts, the lack of real-time online access by clients to accounts coupled with Peter Madoff's technological sophistication in computerized securities trading and the use of essentially one individual accountant to handle BMIS affairs. One can reasonably infer from the Complaint that, in his role as control person, general counsel and chief compliance officer, Peter Madoff, who grew the company with his brother and confessed criminal defrauder Bernard Madoff, knew or should have known what was occurring in the investment advisory services and by an extreme departure of ordinary care failed to discover and disclose the massive illegal scheme lasting two decades and involving billions of dollars in funds that were never used to purchase or sell securities as represented to clients. Defendant argues that the "red flags" of

fraud at BMIS were susceptible of innocent explanation because they were either common knowledge, such as the consistent and unusually high returns, or merely describe BMIS business practices. Defendant's argument defies common sense and runs counter to the express holding of Tellabs on the task of evaluating whether a Complaint sufficiently plead scienter. "The inquiry . . . is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." Tellabs, 551 U.S. at 322-23 (emphasis in original). It strikes the Court that, reading the Complaint in its entirety, allegations of the secrecy of the very aspect of the business engaging in the multi-billion dollar Ponzi scheme and other "business practices" of BMIS, even if publicly reported, render the inference that Peter Madoff, in his unique, inside and executive role at BMIS, acted with the requisite culpability "at least as compelling as any opposing inference one could draw" from these facts. Tellabs, 551 U.S. at 324.

As to next element of a Section 10(b) claim, the wrongdoing's connection with the purchase or sale of a security, the Complaint avers that Plaintiffs, not knowing material facts about the fraudulent manner in which BMIS conducted its investment advisory business, turned money over to BMIS for management, including the purported purchase and sale of securities on Plaintiffs' behalf in BMIS's discretion. Defendant argues that the Complaint's allegations concerning the admitted Ponzi scheme perpetrated by BMIS, in which no securities were actually bought or sold, inherently negates its pleading of any facts that could plausibly support that the omissions were made "in connection with the purchase or sale of any security" as required by Section 10(b). The Court finds this argument unavailing, in light of the clear instruction by the Supreme Court that Section 10(b) "should be construed not technically and restrictively, but

20

flexibly to effectuate its remedial purposes." <u>Zandford</u>, 535 U.S. at 819.  The <u>Zandford</u> court

observed that the statute sought to "promote investor confidence" and "to substitute a philosophy

of full disclosure for the philosophy of caveat emptor and thus to achieve a high standard of

business ethics in the securities industry."  <u>Id.</u>  Given the wrongdoing targeted in this case, which

goes to the heart of investor confidence and concerns about transparency and ethics, Section

10(b) clearly applies.

The remaining elements of Plaintiffs' Rule 10b-5 omissions claim are also satisfied by

the facts alleged in the Complaint.  Reliance by an investor to whom a duty of disclosure is owed

is presumed in cases in which there is an omission of material fact by one with a duty to disclose.

<u>Stoneridge</u>, 128 S.Ct. at 769.  The operation of this rebuttable presumption to which Plaintiffs are

entitled excuses them from pleading positive proof of reliance in the Complaint.  Economic loss

and loss causation are adequately pled.  The Complaint alleges that Peter Madoff's silence misled

Plaintiffs into entrusting money to BMIS for investment and that as a result of this deception,

Plaintiffs have lost millions of dollars placed into BMIS accounts.

In sum, for the foregoing reasons, the Court finds the Complaint deficient with regard to

Plaintiffs' Rule 10b-5(b) claim against Defendant based on affirmative misrepresentations but

pled with the required specificity under the PSLRA with regard to the omissions-based Rule 10b-

5(b) claim.

2.    <u>Section 10(b) Claim for Deceptive Act or Scheme</u>

Though Plaintiffs have argued to the Court in their papers and at oral argument that

Count One of the Complaint asserts a cause of action under Rule 10b-5(a) and (c), this claim is

not readily apparent from the Complaint.  Though under these subsections of Rule 10b-5 a

defendant can be liable for his deceptive conduct in violation of the securities fraud laws, without

making a misleading statement or omission, <u>Stoneridge</u>, 128 S.Ct. at 769, the scant and

conclusory references in the Complaint to Defendant's "acts and conduct" in violation of Rule

10b-5 (Compl. ¶ 39) hardly puts him on notice that Plaintiffs claim they are entitled to relief

under Section 10(b) for this "scheme liability." <u>See</u> <u>Lucent</u>, 610 F.Supp.2d at 350, n.5 (citing

<u>Stoneridge</u>, 128 S.Ct. at 770).  Moreover, as a claim brought under Section 10(b), the scheme

liability theory of securities fraud must meet the heightened pleading requirements of Rule 9(b)

and the PSLRA.

To state a claim under Rule 10b-5(a) and/or (c), a "private plaintiff must allege (1) that

the defendant committed a deceptive or manipulative act, (2) in furtherance of the alleged

scheme to defraud, (3) with scienter, and (4) reliance."  <u>Lucent</u>, 610 F.Supp.2d at 350; <u>see also</u>

<u>Global Crossing</u>, 322 F.Supp.2d at 336 (setting forth elements).  The Complaint fails to allege

facts regarding what deceptive acts, separate and apart from the omissions of material fact,

Defendant undertook in furtherance of the Ponzi scheme.  Though Plaintiffs aver that Defendant

recklessly failed to investigate obvious indicia of fraud and that he failed to disclose these indicia

to Plaintiffs, government regulators and others, this alleged wrongdoing cannot form the basis of

their scheme liability claim.  Plaintiffs label this conduct a concealment or cover-up of the

fraudulent scheme (Compl., ¶ 38) when in fact it merely re-states his failure to disclose material

facts in violation of Rule 10b-5(b).  A Rule 10b-5(a) and/or (c) claim cannot be premised on the

alleged misrepresentations or omissions that form the basis of a Rule 10b-5(b) claim.  <u>Lucent</u>,

610 F.Supp.2d at 359 (citing <u>Lentell v. Merrill Lynch & Co., Inc.</u>, 396 F.3d 161, 177 (2d Cir. 2005)).  Moreover, the Supreme Court has cautioned against an overly broad interpretation of Rule 10b-5(a) and (c) such that all acts which facilitate the fraud be actionable under Section 10(b).  <u>Stoneridge</u>, 128 S.Ct. at 771.  It reasoned that an expansive reading would undermine Congress's decision to restrict actions for aiding and abetting securities fraud to the SEC.  <u>Id.</u>  "If the scope of 'scheme liability' is too broad, there is a risk that it becomes 'a back door into liability for those who help others to make a false statement or omission,' thus reviving aiding and abetting liability in private actions."  <u>Lucent</u>, 610 F.Supp.2d at 359 (quoting <u>In re Parmalat Sec. Litig.</u>, 376 F.Supp.2d 472, 503 (S.D.N.Y. 2005)).  Without even reaching the adequacy of the pleading as to the other elements of a section 10(b), which of course includes the requirement that scienter be pled with particularity, the Court concludes that the Complaint fails to state a claim under Rule 10b-5(a) and/or (c) for failure to identify what deceptive device Defendant employed in furtherance of BMIS's Ponzi scheme and/or what deceptive act Defendant himself committed.

Accordingly, Plaintiffs' claim under Section 10(b) and Rule 10b-5(a) and/or (c) will be dismissed without prejudice for failure to state a claim upon which relief could be granted.

**B.      Section 20(a) for Control Person Liability**

Count Three of the Complaint asserts that Defendant is liable under Section 20(a) of the Exchange Act.  Section 20(a) provides:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a).

The seminal case in the Third Circuit on liability pursuant to Section 20(a) of the Exchange Act is Rochez Brothers, Inc. v. Rhoades. 527 F.2d 880 (1975). In that case, the Third Circuit considered the legislative history of the statute to interpret what the "control" of another means. Id. at 884-85. It considered that Section 20(a) was intended to impose liability on those "able to directly or indirectly exert influence on the policy and decision-making process of others." Id. at 884. After comparing the Senate and House versions of the legislation, the Rochez Bros. court concluded that the statute did not impose liability based on the principle of respondeat superior. Id. at 885. It reasoned that "Congress did not intend anyone to be an insurer against the fraudulent activities of another. What Congress did intend was to impose liability on those who were controlling persons and who were 'in some meaningful sense culpable participants in the fraud perpetrated by controlled persons.'" Id. (quoting Lanza v. Drexel & Co., 479 F.2d 1277, 1299 (2d Cir. 1973)). Thus, the elements of a Section 20(a), or "control person" claim are as follows: (1) the defendant controlled another person or entity; (2) the controlled person or entity committed a primary violation of the securities laws; and (3) the defendant was a culpable participant in the fraud. Suprema Specialties, 486 F.3d at 286; Rochez Bros., 527 F.2d at 890. Once the plaintiff establishes a prima facie claim under Section 20(a), the burden shifts

to defendant to show that he acted in good faith. <u>Pasternak</u>, 561 F.Supp.2d at 502-03 (citing

<u>S.E.C. v. First Jersey Sec., Inc.</u>, 101 F.3d 1450, 1473 (2d Cir. 1996)).

There is no real dispute that the first two elements of the claim are adequately pled.

Defendant characterizes the allegations in support of these elements as conclusory, but this

argument is untenable. The Court finds that the Complaint plausibly sets forth that Peter Madoff

was a controlling person of BMIS and that BMIS committed a predicate violation of Section

10(b) and Rule 10b-5.

In the instant motion, the battleground on the control person claim centers on the culpable

participation element. Defendant attacks the sufficiency of the claim for failure to plead culpable

participation with particularity. Plaintiffs counter that, though an element of a Section 20(a)

claim under Third Circuit law, culpable participation need not be pled at all. In support of this

proposition, Plaintiffs cite various District of New Jersey cases interpreting Third Circuit

precedent. <u>See, e.g.</u>, <u>In re Able Labs. Sec. Litig.</u>, No. 05-2681 (JAG), 2008 WL 1967509, at *29

(D.N.J. Mar. 24, 2008) (so holding and noting that trend in the jurisdiction is not to require that

element be pled). Plaintiffs also raise two alternative arguments for why this claim must proceed

past Defendant's 12(b)(6) motion: that assuming the element must be pled, it need only satisfy

the pleading requirement of Rule 8 and that, in any event, the heightened pleading requirements

applicable to fraud claims under Rule 9(b) have been met.

The Court is aware of the difference of opinion among district court judges in this district

regarding the pleading requirements for a Section 20(a) claim. <u>Compare</u> Able Labs, 2008 WL

1967509, at * 29 (holding that "the Third Circuit does not require that culpable participation be

pled in order to establish controlling person liability") <u>with</u> <u>In re Nice Sys. Ltd. Sec. Litig.</u>, 135 F.Supp.2d 551, 588 (D.N.J. 2001) (taking contrary view, relying on case decided by Second Circuit, which also espouses minority view that culpable participation is an element of Section 20(a) claim). The Court, however, need not jump into the fray and reach any definitive conclusion about what is required. The Court finds that, even under the most rigorous pleading requirement raised in the debate - that is, that culpable participation must be pled with particularity - Plaintiffs' control person claim states a claim upon which relief may be granted.

In reaching this conclusion, the Court is guided by <u>Lapin v. Goldman Sachs Group, Inc.</u>, a decision issued by the Southern District of New York, which also follows the view that culpable participation is an element of a Section 20(a) claim. The <u>Lapin</u> court espoused the opinion that the burden of pleading culpable participation is "akin to pleading section 10(b) scienter." <u>Id.</u> at 246. It held that, to withstand a motion to dismiss, a control person claim "must plead with particularity facts giving rise to a strong inference that the controlling person knew or should have known that the primary violator, over whom that person had control, was engaging in fraudulent conduct." <u>Id.</u> at 247 (quoting <u>Burstyn v. Worldwide Xceed Group, Inc.</u>, No. 01-1125 (GEL), 2002 WL 31191741, at *8 (S.D.N.Y. Sept. 30, 2002)).

As the analysis in Section II.A.1 above discusses at length, the Complaint adequately pleads that Peter Madoff knew or should have known that BMIS was engaging in a massive, multi-billion dollar Ponzi scheme. Yet, the Complaint alleges, he failed to act in accordance with his duties and responsibilities at BMIS and thus facilitated and prevented the discovery of the fraud. It specifically alleges as follows:

> By virtue of his status as a control person under the law as well as his duties and responsibilities at BMIS, as more particularly described herein, Peter Madoff had the power to directly or indirectly control the management and policies of BMIS and the ability, obligation, power, duty and control to directly or indirectly detect, prevent and/or report the fraudulent conduct confessed to by his brother, and by recklessly failing to do so, Peter Madoff facilitated, endorsed, acquiesced in, and covered up the fraudulent conduct of BMIS . . .
>
> Peter Madoff had direct and supervisory involvement in the day-to-day operations of BMIS. He had the obligation to maintain a system of internal controls and the power to control the system in diligent manner by developing and implementing precautionary measures or otherwise, but recklessly failed to do so.

(Compl., ¶¶ 47-48.) The Third Circuit has held that inaction that intentionally furthers the fraud committed by the controlled person or entity or prevents its discovery establishes the controlling person's culpable participation in the fraud. Rochez Bros., 527 F.2d at 890. While mere inaction is not enough to rise to culpable participation, this Complaint pleads more than that. Id. Peter Madoff was charged with the responsibility and authority to run BMIS in accordance with the law. Assuming the truth of the allegations, his reckless failure to detect the fraud through enforcement of a reasonably adequate system of internal controls establishes his participation in the fraud for purposes of the Section 20(a) claim. See, e.g., Henricksen v. Henricksen, 640 F.2d 880, 884-85 (7th Cir. 1981) (finding investment firm liable under Section 20(a) based on broker mismanagement of customer's discretionary account for failure to enforce system of internal supervision and control with reasonable diligence); cf. Pasternak, 561 F.Supp.2d at 502-03 (holding that defendant may establish affirmative defense of good faith to Section 20(a) claim by demonstrating that he maintained and enforced reasonable system of internal supervision and control).

Finding that, for the foregoing reasons, the Complaint satisfactorily pleads all elements of a prima facie control person claim, the Court will deny Defendant's motion insofar as it seeks dismissal of the claim under Rule 12(b)(6).

### C.    State Law Causes of Action

In the remaining four counts of the Complaint, Plaintiffs seek relief under state common law theories. They are breach of fiduciary duty, aiding and abetting breach of fiduciary duty, negligent misrepresentation and negligence. The Court has supplemental jurisdiction over these claims, pursuant to 28 U.S.C. § 1367. It must therefore apply the law of the forum state in reviewing the adequacy of these claims as pled. Chin v. Chrysler, 538 F3d 272, 278 (3d Cir. 2008) (holding that federal court hearing state law claim in exercise of its supplemental jurisdiction must apply law of forum state to determine substantive matter). Where choice of law issues are presented, the Court must apply the choice of law analysis of the forum state to determine which state's substantive law will apply. Id. (citing Klaxon, 313 U.S. at, 496). A choice of law question is not presented unless the potentially applicable bodies of law conflict. Huber v. Taylor, 469 F.3d 67, 74 (3d Cir. 2006). "If there is no conflict, then the district court sitting in diversity may refer interchangeably to the laws of the states whose laws potentially apply." Id.

### 1.    Breach of Fiduciary Duty

Plaintiffs' breach of fiduciary duty claim satisfies the pleading requirement of Rule 8. Under both New York and New Jersey law, this tort claim requires a plaintiff to prove the existence of a fiduciary relationship between the plaintiff and the defendant and the defendant's

28

breach of the duties imposed by the relationship.  Rafter v. Bank of Am., No. 04 Civ. 3341, 2009 U.S. Dist. LEXIS 21542, at *34 (S.D.N.Y. Mar. 12, 2009); In re Estate of Lash, 169 N.J. 20, 26-27 (2001).  As identified earlier in this Opinion, the Court has been presented with an apparent conflict between New York and New Jersey law regarding the existence of a fiduciary duty by Defendant to Plaintiffs.  For the reasons discussed above, the Court has determined that, based on New Jersey's choice of law analysis, the Complaint sets forth sufficient facts militating in favor of applying New Jersey law in evaluating whether fiduciary duty has been adequately pled.  Again, as stated by the Court above in its choice of law discussion with regard to fiduciary duty as a basis for a duty of disclosure, the Court is not making an ultimate choice of law determination.  Nor is it drawing any conclusions about the merits of the breach of fiduciary duty claim, which will depend on the applicable state substantive law and a sufficiently developed factual record.  Rather, it is satisfied that the facts alleged in the Complaint support application of New Jersey law for purposes of determining whether a cognizable breach of fiduciary duty claim has been pled.

The Court will not repeat its discussion, set forth in Section II.A.1, regarding the existence of a fiduciary relationship between the parties under New Jersey law, assuming the truth of the facts alleged.  Further, the Complaint permits the reasonable inference that through his actions and/or inaction, Defendant breached his fiduciary duty to Plaintiffs and as a result caused Plaintiffs to suffer a loss of millions of dollars.  The breach of fiduciary duty claim thus survives the instant motion to dismiss.

2.    <u>Aiding and Abetting Breach of Fiduciary Duty</u>

Under New York law,  "[a] claim for aiding and abetting a breach of fiduciary duty requires: (1) a breach by a fiduciary of obligations to another, (2) that the defendant knowingly induced or participated in the breach, and (3) that plaintiff suffered damage as a result of the breach."  <u>Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt.</u>, LLC, 479 F.Supp.2d 349, 360 (S.D.N.Y. 2007).  Similarly, under New Jersey law, one who "knowingly aids and abets the agent of another in breach of fiduciary duty is liable to the principal."  <u>Bondi v. Citigroup, Inc.</u>, No. BER-L-10902-04, 2005 WL 975856, at * 18 (Law Div. Feb. 28, 2005).  In this case, there is no dispute that the Complaint pleads that another person or entity, namely BMIS, has breached its fiduciary duty to Plaintiffs.  Nor is there any issue raised with regard to the damages element. The parties do take opposing views on whether Peter Madoff, according to the factual allegations, acted with the required state of mind.  Because both New York and New Jersey law require that a defendant "knowingly" aid and abet a breach of fiduciary duty, the Court discerns no true conflict and will thus refer to the jurisdictions' laws interchangeably in determining whether the claim may survive this Rule 12(b)(6) motion.

New York law sheds more light than New Jersey's on what may satisfy a defendant's "knowing" participation in another's breach.  Knowledge of the primary violation, an essential element of the aiding and abetting claim, requires more than recklessness; it requires "actual knowledge" by the defendant.  <u>Fraternity Fund Ltd.</u>, 479 F.Supp.2d at 367.  "[P]leading knowledge for purposes of an aiding and abetting claim requires allegations of facts that give rise to a "strong inference" of actual knowledge."  <u>Id.</u>  The Southern District of New York held that a

defendant's *conscious avoidance* of facts regarding the primary violation would demonstrate that he or she had actual knowledge of the breach for purposes of aiding and abetting liability.  Id.  at 368.  The court explained that conscious avoidance "occurs when 'it can almost be said that the defendant actually knew' because he or she suspected a fact and realized its probability, but refrained from confirming it in order later to be able to deny knowledge."  Id. (quoting United States v. Nektalov, 461 F.3d 309, 315 (2d Cir.2006)).  It reasoned that this standard satisfied the actual knowledge requirement because conscious avoidance involves a culpable state of mind, rather than mere negligence on the part of the defendant in failing to investigate and discover the primary violation.  Id.

The Court finds that, based on this standard, the Complaint pleads sufficient facts giving rise to a "strong inference" that Peter Madoff knew that BMIS was engaged in a massive fraudulent scheme, that is, to put it mildly, not honoring its fiduciary responsibility to investors such as Plaintiffs.  In its analyses of the scienter element of the Rule 10b-5(b) claim and again in its discussion of a control person's culpable participation in the securities fraud, this Court has amply discussed the detailed allegations of the Complaint concerning Defendant's job responsibilities at BMIS and facts indicating fraud.  Together, these allegations, taken as true, have the effect of establishing that Defendant was at the very least willfully blind of BMIS's wrongdoing for failure to investigate those facts and confirm what the indicia of fraud would suggest to him.

Contrary to Defendant's argument that the claim fails because it is not supported by an allegation that that Defendant actively induced or participated in any breach of fiduciary duty,

this Complaint pleads more than "mere inaction" by Defendant. The Second Circuit has held

that under New York law, "'[a] person knowingly participates in a breach of fiduciary duty only

when he or she provides substantial assistance to the primary violator.' Substantial assistance

may only be found where the alleged aider and abettor 'affirmatively assists, helps conceal or

fails to act when required to do so, thereby enabling the breach to occur.'" In re Sharp Int'l Corp.,

403 F.3d 43, 50 (2d Cir. 2005) (quoting Kaufman v. Cohen, 307 A.D.2d 113,126 (N.Y.A.D. 1st

Dep't 2003)). Plaintiffs have alleged in their Complaint that by failing to maintain and enforce a

system of internal controls, as he was required to do in his role as BMIS's compliance officer,

Peter Madoff substantially assisted the company in breaching its fiduciary duty to Plaintiffs.

Accordingly, insofar as Defendant's motion seeks dismissal of the claim for aiding and

abetting breach of fiduciary duty, it will be denied.

### 3.    Negligent Misrepresentation

Under either New York or New Jersey law, a claim under the theory of negligent

misrepresentation requires that the defendant have made false statements. See Miller v. Forge

Mench P'ship Ltd., No. 00 Civ. 4314 (MBM), 2001 U.S. Dist. LEXIS 13046, at *8-9 (S.D.N.Y.

Aug. 28, 2001); In re NorVergence, Inc., 384 B.R. 315, 360 (Bankr. D.N.J. 2008). The

Complaint, the Court has previously observed, fails to allege that Defendant himself made any

affirmative misrepresentation. See Section II.A.1, supra. Plaintiffs nevertheless argue that under

both New Jersey and New York law, the control person of a corporation may be liable for

misrepresentations technically made by the entity. Under either state's law, Plaintiffs' argument

is unpersuasive.

The New Jersey cases cited by Plaintiffs deal with the personal liability of corporate officers for a tort committed by the corporation based on the participation theory. See, e.g., Saltiel v. GSI Consultants, Inc., 170 N.J. 297, 303 (2002) (discussing liability based on corporate officer's misfeasance). For the theory to apply, however, the officer must have been "sufficiently involved" in the commission of the tort. Id. at 303. The New Jersey Supreme Court has held that participation by the officer is essential to ground liability in this theory. Id. at 309. The Complaint fails to allege in what way Defendant participated in the making of the three categories of alleged misrepresentations - statements in BMIS sales literature, SEC filings and BMIS account statements. The allegations that Defendant "negligently misrepresented and/or acquiesced in" the making of materially false statements and was "directly or indirectly" involved in transmitting to Plaintiffs fall short of identifying his participation in BMIS's alleged affirmative misrepresentation in compliance with Iqbal's plausibility standard of pleading. The Complaint parrots the elements of a negligent misrepresentation claim but fails to provide facts supporting the assertion that Peter Madoff made materially false statements.

So, too, does the claim fail to satisfy Rule 8 based on the substantive law of New York. New York law is clear that to prevail on a claim for negligent misrepresentation, "the author must express words directly to one whom the author is bound by some relation of duty or care." Miller, 2001 U.S. Dist. LEXIS 13046, at *8-9. The Complaint, of course, lacks factual allegations that Peter Madoff expressed the false statements. The New York cases cited by Plaintiffs in an effort to surmount this hurdle also concern the proposition that a corporate officer may be held personally liable for torts in which he or she participates. See, e.g., Model Imperial

33

Supply Co. v. Westwind Cosmetics, Inc., 808 F.Supp. 943, 946 (E.D.N.Y. 1992) (denying

summary judgment as to negligent misrepresentation claim on motion brought by corporate

officers due to issues of fact as to officers' personal role in the corporation's sale of allegedly

counterfeit goods).

Plaintiffs' negligent misrepresentation claim fails to state a claim upon which relief may

be granted and will accordingly be dismissed without prejudice.

### 4.    Negligence

The negligence claim survives the motion to dismiss.  It is hornbook law that a

negligence claim consists of the elements of (1) a duty owed to the plaintiff by the defendant; (2)

breach of that duty; and (3) injury proximately caused by the breach.  Lombard v. Booz-Allen &

Hamilton, Inc., 280 F.3d 209, 215 (2d Cir.2002) (reciting elements under New York law); Polzo

v. County of Essex, 196 N.J. 569, 584 (2008).  For the reasons discussed, the Court has found

that the Complaint adequately alleges that Peter Madoff owed Plaintiffs a fiduciary duty to

safeguard the money entrusted to BMIS against fraud, misappropriation or other wrongdoing by

BMIS and that this duty of care was breached by Defendant, causing Plaintiffs a loss.

### III.    CONCLUSION

Plaintiffs' claims under Section 10(b) of the Exchange Act predicated on violations of

Rule 10b-5(a) and/or (c) and on violations of Rule 10b-5(b) for affirmative misrepresentations

fail to state a claim upon which relief may be granted.  Those claims will accordingly be

dismissed without prejudice.  The Section 10(b) and Rule 10b-5(b) claim based on omissions of

material fact, however, does survive this motion to dismiss.  The claim under Section 20(a) of the

Exchange Act also survives this motion to dismiss.  As to the state law causes of action asserted

in the Complaint, the motion to dismiss the claims for breach of fiduciary duty, aiding and

abetting breach of fiduciary duty and negligence will be denied.  The negligent misrepresentation

claim will be dismissed without prejudice.

An appropriate form of Order will be filed.


   s/Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge


DATED: September 9, 2009