# LANKLER SIFFERT & WOHL LLP
### ATTORNEYS AT LAW

33RD FLOOR  
500 FIFTH AVENUE  
NEW YORK, N.Y. 10110-3398  
WWW.LSWLAW.COM

TELEPHONE (212) 921-8399  
TELEFAX      (212) 764-3701

January 26, 2010

Honorable Madeline Cox Arleo, U.S.M.J.  
United States District Court  
District of New Jersey  
M.L. King Jr. Federal Building & U.S. Courthouse  
50 Walnut Street  
Newark, New Jersey 07102

      Re:   *The Lautenberg Foundation v. Peter Madoff*  
            **Civil Action No. 09-00816 (SRC)(MCA)**

Dear Judge Arleo:

      We, along with Saiber LLC, represent Peter Madoff, defendant in the above-captioned action ("Defendant"). We write in response to the letter to the Court from plaintiffs' counsel Ronald J. Riccio, dated January 26, 2010, concerning the plaintiffs' (collectively "Plaintiffs" or "Lautenberg Plaintiffs") request to file a motion for sanctions under Fed. R. Civ. P. 37(b) and 30(d)(2).

      For the reasons set forth below, we respectfully oppose the Lautenberg Plaintiffs' request for leave to file the proposed motion for sanctions. Plaintiffs' proposed motion for sanctions is factually and legally baseless. Moreover, the proposed motion is an attempt to subvert Your Honor's Pretrial Scheduling Order, dated November 6, 2009 ("Scheduling Order"), as modified by consent of the parties on January 6, 2010 ("Consent Order"), which prohibits the filing of any dispositive motion until thirty days after the close of discovery. (Scheduling Order, ¶6). It is Plaintiffs' frustration with this portion of Your Honor's Scheduling Order that precipitates their request to in effect seek dispositive relief based on Defendant's assertion of his Fifth Amendment right. Plaintiffs' proposed motion is a transparent attempt to frustrate discovery and allow them to unfairly jump ahead of thousands of other investors whose claims are being equitably addressed by the SIPA Trustee (the "Trustee") overseeing the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS"). This Trustee has brought an adversary proceeding against Defendant in the bankruptcy court on behalf of all victims (including Plaintiffs) of the Ponzi scheme.

### Background to this Action and the Criminal Investigation

      As Your Honor is aware, this case arises out of the highly publicized Ponzi scheme run by Bernard L. Madoff, the founder and sole owner of BLMIS. The Lautenberg Plaintiffs allege that they were investors with BLMIS and victims of the Ponzi scheme.

LANKLER SIFFERT & WOHL LLP

Honorable Madeline Cox Arleo, U.S.M.J
January 26, 2010
Page 2 of 11

As has been widely reported, the United States Attorney's Office for the Southern District of New York ("USAO") has been conducting an active and wide-ranging criminal investigation in order to determine whether there were other culpable participants in Bernard Madoff's scheme and whether additional proceedings can be brought to recover assets for the benefit of all victims of the fraud. The USAO has made public statements that its investigation covers illegal conduct allegedly occurring "for decades." In addition to Bernard Madoff's guilty plea as architect of the Ponzi scheme, the USAO investigation more recently has resulted in guilty pleas from former BLMIS employee Frank DiPascali and David Friehling, BLMIS' former auditor. Just recently in late 2009, the USAO filed criminal charges against two former BLMIS employees, alleging that in their role as computer programmers they participated in the Ponzi scheme.

The USAO has informed us that Peter Madoff is a "subject" of its criminal investigation. Indeed, we informed Your Honor and counsel for the Lautenberg Plaintiffs of this fact in our pretrial scheduling conference on November 5, 2009. Since December 24, 2008, Peter Madoff and his wife have been subject to an asset restraint agreement with the USAO, which places substantial restrictions on Defendant's ability to use or dispose of his assets while the USAO investigation continues. In addition, the Trustee – who has been working with the USAO to investigate wrongdoing at BLMIS as well as what assets may be available to investors – has filed a lawsuit against Defendant (and other family members) alleging that BLMIS was operated as a "family piggy bank" and seeking a judgment on behalf of all BLMIS investors in the amount of at least $198,743,299, which the Trustee alleges represents investor funds received by the family members.

### This Court's Pretrial Scheduling Order

From the inception of the case, the Lautenberg Plaintiffs have pushed to depose Defendant, stating that they assumed that Defendant would not answer any questions in any deposition, but rather that Defendant would decline to do so based on his right under the Fifth Amendment to the United States Constitution not to be compelled to be a witness against himself. Earlier this year, Plaintiffs even attempted to obtain Court approval to take Defendant's deposition and force an assertion of Defendant's Fifth Amendment right before Defendant had even filed his motion to dismiss the complaint, a maneuver Magistrate Judge Shipp rejected as a clear violation of the automatic stay under the Private Securities Litigation Reform Act. Undaunted, Plaintiffs then attempted to argue in opposition to Defendant's motion to dismiss that an adverse inference should be drawn from Defendant's failure to submit an affidavit in support of his motion to dismiss:

> <u>The failure to come forward with any benign explanation for his conscious avoidance of the Ponzi scheme ... has all the indicia of a person likely to invoke his Fifth Amendment Privilege.</u>

LANKLER SIFFERT & WOHL LLP

Honorable Madeline Cox Arleo, U.S.M.J
January 26, 2010
Page 3 of 11

<u>He may never be willing to voluntarily explain under oath his actions and inactions, other than through his counsel's words.</u>

Plaintiffs' Memorandum of Law In Opposition to Defendant's Motion to Dismiss, dated May 18, 2009, at 14-15. (Emphasis added).

In the weeks leading up to the pretrial conference before Your Honor on November 5, 2009, counsel for the Lautenberg Plaintiffs wrote to the Court (Magistrate Judge Shipp) to address Plaintiffs' demand that Defendant "provide me with (i) a date for Defendant's deposition; and/or (ii) a statement as to whether Defendant is invoking his rights under the Fifth Amendment not to give deposition testimony." (September 25, 2009 letter from Riccio to Magistrate Shipp). The Lautenberg Plaintiffs' rationale, continually stated through their counsel, was that they wanted to obtain Defendant's invocation of his Fifth Amendment right in a deposition in order to then immediately move for summary judgment. Plaintiffs' motivation is obvious – Defendant is the subject of a criminal investigation and is being sued by the SIPA Trustee on behalf of all BLMIS investors, as well as being sued by many BLMIS investors independently of the Trustee. The Lautenberg Plaintiffs have been hoping to secure a quick summary judgment, based primarily on a potential adverse inference from Defendant's invocation of his Fifth Amendment right, in order to step in front of any claims by the government, the SIPA Trustee and other investors for Defendant's assets.

On November 5, 2009, the parties appeared before Your Honor for an initial pretrial scheduling conference. At the conference, Plaintiffs' counsel again requested the immediate deposition of Defendant and stated that they believed that Defendant would simply invoke his Fifth Amendment right in response to any questions. I argued that Defendant should not be put to the unfair choice of deciding whether to assert his Fifth Amendment right at a deposition at this stage of the proceeding, at least until document discovery had proceeded, as substantially all of the relevant documents relating to the Ponzi scheme were in the hands of the USAO and/or SIPA Trustee.[1] Your Honor asked what Defendant's status was concerning the USAO investigation and I confirmed to Your Honor that we had been informed by the USAO that Defendant was a "subject" of the investigation. Your Honor stated that she understood that Defendant likely would invoke his Fifth Amendment right if she ordered Defendant's deposition. Your Honor disagreed with Defendant's position concerning the priority of discovery and ordered Defendant's deposition be scheduled. Thus, Your Honor ordered that "[t]he deposition of Mr. Peter Madoff shall be taken on November 12, 2009 at 10:00am in New York." (Scheduling Order, ¶20). Your Honor also ordered that all discovery should proceed, and that

---

[1] Shortly after the scheduling conference, Defense counsel sent letters to the USAO and Trustee asking whether they will make the relevant BLMIS documents available to Defendant. In response to these letters, the USAO and the Trustee, through counsel, have informed Defendant's counsel that they will not make documents available to Defendant for use in this litigation.

LANKLER SIFFERT & WOHL LLP

Honorable Madeline Cox Arleo, U.S.M.J
January 26, 2010
Page 4 of 11

dispositive motions could not be filed until thirty days after the close of discovery (currently June 30, 2010). (Scheduling Order, ¶6 and Consent Order, ¶1).

In arguing to Your Honor that Defendant's deposition should be scheduled for as soon as the week following the conference, Plaintiffs' counsel stated to Your Honor that Defendant's deposition "will take 15 minutes" because Plaintiffs firmly believed that Defendant would assert his Fifth Amendment right and decline to answer questions at the deposition. Plaintiffs' counsel even asked me in front of Your Honor whether Defendant would in fact assert his Fifth Amendment right in response to any deposition questions. I replied that I would consult with my client but that I would advise Defendant to assert his Fifth Amendment right not to answer questions at the deposition. I also said that I would give Plaintiffs' counsel the courtesy of notice in advance of the deposition confirming that Defendant, as they anticipated, in fact intended to assert his Fifth Amendment right in response to any questions, so that Plaintiffs' counsel would not spend time preparing for a substantive deposition. On November 9, 2009, I telephoned Mr. Riccio as a courtesy and informed him that, on the advice of counsel, Defendant intended to assert his Fifth Amendment right at the deposition.

As conceded by Plaintiffs' counsel, on November 12, 2009, Defendant appeared for his deposition in compliance with Your Honor's November 6 pretrial scheduling order. The deposition lasted 3 hours, during which time Defendant sat for all of Plaintiffs' counsel's questions, responding to more than 290 questions. In response to virtually all of the questions concerning this matter, Defendant, upon the advice of counsel, respectfully declined to answer based on his Fifth Amendment right not to be compelled to be a witness against himself.

As set forth in detail below, Plaintiffs' current objection that Defendant's invocation of his Fifth Amendment right is somehow sanctionable is baseless. Thus, Plaintiffs should not be granted leave to file their proposed motion.

**Defendant Properly Invoked His
Fifth Amendment Right Not to Testify**

    i.    <u>Defendant Fully Complied with the Scheduling Order</u>

It is plain that, contrary to Plaintiffs' counsel's protestation, Defendant complied with Your Honor's Scheduling Order concerning his deposition. Defendant appeared for his deposition on November 12, 2009, as mandated under the Scheduling Order, and Defendant courteously sat through and responded to approximately three hours of questioning by Plaintiffs' counsel. Defendant's response, on the advice of counsel, of respectfully declining to answer Plaintiffs' counsel's questions based on his right under the Fifth Amendment not to be compelled to be a witness against himself obviously did not violate the letter of Your Honor's Scheduling Order. The Scheduling Order merely provided that "[t]he deposition of Mr. Peter Madoff shall be taken on November 12, 2009…." (Scheduling Order, ¶20). The Order did not provide that

LANKLER SIFFERT & WOHL LLP

Honorable Madeline Cox Arleo, U.S.M.J
January 26, 2010
Page 5 of 11

Defendant could not follow his counsel's advice and assert his Fifth Amendment right to decline to answer questions, nor, significantly, did Plaintiffs make any such argument to Your Honor at the scheduling conference.

Moreover, Defendant's invocation of his Fifth Amendment right at his deposition was entirely consistent with the intent of Your Honor's Order. As summarized above, after Your Honor rejected Defendant's request to postpone any depositions until after document discovery, it was expressly discussed and anticipated by all at the conference precipitating the Scheduling Order that Defendant, on the advice of counsel, would be declining to answer based on his Fifth Amendment right.

Thus, it is plain that Defendant's conduct fully complied with the spirit, as well as the letter, of the Scheduling Order. As such, Plaintiffs have no basis for asserting that Defendant should be sanctioned under Fed. R. Civ. P. 37(b) for failing to comply with the Scheduling Order. Rather, his assertion was entirely proper and much anticipated.

    ii.    <u>Defendant Fully Complied with Fed. R. Civ. P. 30</u>

Plaintiffs' counsel's assertion that Defendant's invocation of his Fifth Amendment right at a deposition somehow violates Fed. R. Civ. P. 30(c)(1) and should be sanctioned under Fed. R. Civ. P. 30(d)(2) is equally baseless and defies logic. Plaintiffs' counsel argues that "[i]mplicit in [Rule 30] is that the witness must be cooperative and make a good faith effort to answer the questions put to him." (Riccio Letter at 1). Federal Rule of Civil Procedure 30, however, does not eviscerate a witness's Fifth Amendment constitutional right. Nor could it. Not surprisingly, Plaintiffs cite to no legal authority supporting such an assertion. Indeed, we have found no case in which a court sanctioned a deponent under Rule 30(d)(2) for invoking his privilege against self-incrimination during a deposition.

    iii.    Defendant Properly Declined to Answer
             Questions Based on the Fifth Amendment

It is abundantly clear that Defendant here had a perfectly legitimate basis to decline to answer questions based on the Fifth Amendment to the United States Constitution. The Fifth Amendment provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself ...." U.S. Const. Amend. V. "It is undisputed that the fifth amendment privilege against self-incrimination may be asserted in a civil action as well as a criminal action." <u>Nat'l Life Ins. Co. v. Hartford Accident & Indem. Co.</u>, 615 F.2d 595, 597 (3d Cir. 1980). The U.S. Supreme Court consistently has made clear that the Fifth Amendment privilege is to be "afforded liberal construction" and may be invoked "where the witness has reasonable cause to apprehend danger from a direct answer." <u>Hoffman v. United States</u>, 341 U.S. 479, 486 (1951).

LANKLER SIFFERT & WOHL LLP

Honorable Madeline Cox Arleo, U.S.M.J
January 26, 2010
Page 6 of 11

      It has long been held that a basic purpose of the Fifth Amendment privilege is to protect the innocent, even at the expense of sheltering the guilty. According to the Supreme Court, the Fifth Amendment privilege was

> 'generally regarded then, as now, as a privilege of great value, a protection to the innocent though a shelter to the guilty, and a safeguard against heedless, unfounded or tyrannical prosecutions.' Coequally with our other constitutional guarantees, the Self-Incrimination Clause 'must be accorded liberal construction in favor of the right it was intended to secure.'

Quinn v. United States, 349 U.S. 155, 161-62 (1955) (citations omitted). In 2001, the Supreme Court again stressed that "one of the Fifth Amendment's basic functions is to protect innocent men who otherwise might be ensnared by ambiguous circumstances." Ohio v. Reiner, 532 U.S. 17, 21 (2001) (citation and punctuation omitted). The Court recognized that "truthful responses of an innocent witness, as well as those of a wrongdoer, may provide the government with incriminating evidence from the speaker's own mouth." Id. (citation omitted).

      As the Supreme Court has made clear, a witness's Fifth Amendment protection not only "extends to answers that would in themselves support a conviction under a federal criminal statute but <u>likewise embraces those which would furnish a link in the chain of evidence</u> needed to prosecute the claimant for a federal crime." Hoffman, 341 U.S. at 486 (emphasis added). "To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." Id. at 486-87. A witness is "[not] required to prove the hazard in the sense in which a claim is usually required to be established in court, [as it would] surrender the very protection which the privilege is designed to guarantee." Id. at 486.[2]

      Rather, it "is enough (1) that the trial court be shown by argument how conceivably a prosecutor, building on the seemingly harmless answer, might proceed step by step to link the witness with some crime ..., and (2) that this suggested course and scheme of linkage not seem incredible in the circumstances of the particular case." United States v. Coffey, 198 F.2d 438, 440 (3d Cir. 1952) (footnote omitted). Further, "in determining whether the witness really apprehends danger in answering a question, the judge cannot permit himself to be skeptical; rather must he be acutely aware that in the deviousness of crime and its detection incrimination may be approached and achieved by obscure and unlikely lines of inquiry." Id. at 440-441; see also United States v. Lowell, 649 F.2d 950, 963 (3d Cir. 1981) (recognizing that a witness is

---

[2] In this regard, Plaintiffs' counsel erroneously seeks to impose an overly exacting standard on Defendant – arguing that Defendant had some obligation at the deposition to give a detailed reason for his invocation of the privilege in order to establish that the invocation was appropriate. (Riccio Ltr., pg 6.) Plaintiffs' proposed standard flies in the face of the precedent of the U.S. Supreme Court and this Circuit.

LANKLER SIFFERT & WOHL LLP

Honorable Madeline Cox Arleo, U.S.M.J
January 26, 2010
Page 7 of 11

entitled to invoke the privilege based on "even the weakest threat of incrimination," and even when "there are no additional facts before the Court which suggest particular connecting links through which the answer might lead to and might result in incrimination of the witness") (quotation marks and citation omitted).

In the case at hand, the USAO is investigating the largest Ponzi scheme in U.S. history, which occurred at BLMIS. Defendant's brother perpetrated the fraud, which the USAO, and Plaintiffs here, allege occurred for decades at BLMIS. No one can seriously dispute that the scope of Bernard Madoff's fraud was massive and broad, and to this day the full scope of the fraud has not been uncovered. Plaintiffs have admitted as much in summarizing their own allegations against Defendant:

> The factual allegations of the Complaint show that Defendant was not merely Bernard's brother, he was his *de facto* partner in crime whose conscious avoidance of the obvious effectively covered up the Ponzi scheme. The undisputed fact is Defendant was the Director of Trading, Chief Compliance Officer, Senior Managing Director, General Counsel, and co-control person of an entity through which the longest and largest financial fraud in American history was perpetrated under circumstances where Defendant was either knowingly indifferent to the Ponzi scheme or actually aware of it. (Compl. ¶36)

Plaintiffs' Memorandum of Law In Opposition to Defendant's Motion to Dismiss, dated May 18, 2009, at 6. Defendant worked at BLMIS since the 1960s and various other Madoff family members also worked at BLMIS. The Trustee, who is working with the USAO to investigate BLMIS, has filed a lawsuit challenging the legitimacy of every transfer that Defendant or other family members received from BLMIS, including even their salaries. Given the circumstances and intensity of the criminal investigation, one can hardly question Defendant's constitutional right not to answer questions about his brother, Bernard Madoff, his work at BLMIS, his education, skill and qualifications, other Madoff family members, his or his family members' assets and virtually any related topic for fear that such answers might "furnish a link in the chain of evidence" for a criminal prosecution. Indeed, this is exactly why Plaintiffs' own counsel estimated to Your Honor that the Defendant's deposition would take 15 minutes.

Although in many cases there may exist a category of close calls -- innocuous questions that a defendant otherwise invoking the Fifth Amendment might be able to answer without fear of incrimination -- this obviously is not such a case. Rather, Defendant's career, assets, and family all are under intense scrutiny, and "any proper question in the civil context inherently gives rise to self-incrimination hazards." Priebe v. World Ventures, Inc., 407 F. Supp. 1244, 1246 (C.D. Cal. 1976) ("Here, any questions that could lead to discoverable evidence admissible in the civil proceeding could also provide a 'link in the chain of evidence' needed in a criminal

LANKLER SIFFERT & WOHL LLP

Honorable Madeline Cox Arleo, U.S.M.J
January 26, 2010
Page 8 of 11

prosecution."); see also Simpson v. United States, 355 U.S. 7 (1957) (reversing without opinion, on the basis of Hoffman, three decisions of the Ninth Circuit that had held that Congressional witnesses were not entitled to refuse to answer questions about their age, address, employment, and educational background); Lowell, 649 F.2d 950; Coffey, 198 F.2d 438.[3]

Plaintiffs also blatantly attempt to mischaracterize the basis of Defendant's Fifth Amendment invocation to suit their own purpose. (Riccio Ltr. at 2.) Although defense counsel did argue to Your Honor that putting Defendant in the position of asserting his Fifth Amendment right before having access to documents was fundamentally unfair, the lack of access to documents was a reason Defendant chose to assert his right, not the basis of his right. Rather, Defendant's invocation of his Fifth Amendment right was based on his status as a subject of a far ranging criminal investigation and a reasonable fear that his statements might be used against him in that investigation. Defendant himself expressly stated so at his deposition numerous times. (Dep. Tr. *passim*) ("Upon the advice of my counsel, I respectfully decline to answer based on my right under the Fifth Amendment to the United States Constitution not to be compelled to be a witness against myself.").[4]

---

[3] The cases cited by Plaintiffs' (Riccio Ltr. at 2-3) for the proposition that a blanket invocation of the Fifth Amendment is improper bear no relationship to the circumstances here – where there is an extremely broad criminal investigation and Defendant timely and appropriately invoked his right in response to each of the questions asked of him. United States v. One Million Three Hundred Twenty-Two Thousand Two Hundred Forty-Two Dollars & Fifty Eight Cents, 938 F.2d 433 (3d Cir. 1991) (claimant in a forfeiture proceeding failed to timely file an objection to government's document request and belatedly attempted to refuse to respond to document requests based on a bald assertion of Fifth Amendment rights); Nat'l Life Ins. Co. v. Harford Accident & Indemn. Co., 615 F.2d 595 (3d Cir. 1980) (witness left deposition without even listening to the questions); Interstate Commerce Comm'n v. Gould, 629 F.2d 847 (3d Cir. 1980) (rather than making specific Fifth Amendment objections to production of particular documents of the sole proprietorship in response to a document request, defendant refused to produce any documents of the business in response to the ICC's demand to inspect records); In re U.S. Hoffman Can Corp., 373 F.2d 622 (3d Cir. 1967) (holding that officers of bankrupt corporation improperly refused to file corporation schedules and statement of affairs, but recognizing officers' rights to assert Fifth Amendment privilege); United States v. Ranier, 895 F. Supp. 699 (D.N.J. 1995) (president of closely held corporation cannot quash an IRS summons merely by asserting intention to invoke Fifth Amendment; any privilege must be asserted at the time testimony is being taken in response to particular questions).

[4] Defense counsel's stated objection concerning access to documents in advance of Defendant's deposition goes to the fairness of the process and the fairness of any inference to be drawn from Defendant's Fifth Amendment assertion when he is being denied access to documents. While Plaintiffs' counsel excerpts a portion the statement of defense counsel at the beginning of Defendant's deposition concerning Defendant's continued objection to the lack of access to documents, Plaintiffs conveniently ignore the portion of counsel's initial statement concerning the pending criminal investigation and Defendant's status as a subject of that investigation as the primary reason for Defendant's subsequent invocations of his Fifth Amendment right. (Dep. Tr. at 4-5.) Defense counsel also made clear that the lack of documents was not the sole reason for Defendant's assertion of his Fifth Amendment right, but rather was one reason "among other things." (Dep. Tr. at 50). In any event, the statement of defense counsel is of little moment, given that Defendant himself repeatedly made clear during the deposition that his invocation was based on his right not to be compelled to be a witness against himself.

Moreover, if Defendant selectively answered any of the questions about which Plaintiffs now complain, there is no doubt that Plaintiffs would be arguing that Defendant by answering those questions waived his Fifth Amendment right with respect to all questions on the topic. As Plaintiffs themselves set forth in their letter to the Court (Riccio Ltr. p. 6), cases such as The Camelot Group, Ltd. v. W.A. Krueger Co., 486 F. Supp. 1221, 1230 (S.D.N.Y. 1980), instruct that "[a] witness or a defendant in a civil case who has already testified to matters which tend to incriminate him has waived the privilege insofar as further questions seek the details of the matters as to which he did testify." See also Rogers v. United States, 340 U.S. 367 (1951). Indeed, this is exactly the trap that Plaintiffs hope to lay here. Plaintiffs are attacking Defendant for allegedly improperly invoking his Fifth Amendment right on "innocuous" questions, in the hope of securing answers and arguing for broad subject matter waivers of Defendant's Fifth Amendment right.[5]

     iv.    Defendant Did Not Waive His Fifth Amendment Right By Answering the Complaint

Plaintiffs' letter also makes a half-hearted attempt to argue that Defendant waived his Fifth Amendment right with respect to certain topics by making certain admissions in his Answer – even though Plaintiffs' counsel failed to raise this issue prior to the deposition (before Your Honor or otherwise), even after being advised that Defendant would invoke his rights. (Riccio Ltr. at 6).

In any event, Plaintiffs' waiver argument is legally baseless. It is well-settled that the filing of an answer – a pleading in defense of a complaint, which is signed by counsel and not a defendant – is not testimonial and does not waive the Fifth Amendment privilege. See, e.g., Klein v. Harris, 667 F.2d 274, 287-88 (2d Cir. 1981); ACLI Int'l Commodity Serv., Inc., v. Banque Populaire Suisse, 110 F.R.D. 278, 287 (S.D.N.Y. 1986).

The only waiver case cited by Plaintiffs, The Camelot Group, underscores the flaw in their argument. Camelot clearly states that a witness waives the privilege only where he has testified to incriminating matters, in that case by the witness's own affirmations and affidavits. 486 F. Supp. at 1230. Clearly affirmations and affidavits of a witness are testimonial. Pleadings and briefs signed only by counsel are not. That Plaintiffs themselves understand this key distinction for Fifth Amendment purposes is evident from their own brief in opposition to Defendant's motion to dismiss: "[Defendant's] failure to come forward with any benign explanation … has all the indicia of a person likely to invoke his Fifth Amendment Privilege. He

---

[5] In fact, at Defendant's deposition Plaintiffs' counsel unsuccessfully attempted to play a trick on Defendant in an attempt to provoke a Fifth Amendment waiver – asking Defendant a question based on an obviously wrong premise in the hope of eliciting a corrective response ("Q. Is Shana Madoff your wife?") (Dep. Tr. at 14). After Defendant did not fall for the bait and instead continued to assert his Fifth Amendment right, Plaintiffs' counsel subsequently made clear in the deposition that he had asked the question in fact knowing the answer ("Q. By the way, Shana Madoff is your daughter, correct?").

LANKLER SIFFERT & WOHL LLP

Honorable Madeline Cox Arleo, U.S.M.J
January 26, 2010
Page 10 of 11

may never be willing to voluntarily explain under oath his actions and inactions, other than through his counsel's words." Plaintiffs' Memorandum of Law In Opposition to Defendant's Motion to Dismiss, dated May 18, 2009, at 14-15 (emphasis added).

### Plaintiffs Are Attempting to Subvert the Scheduling Order, the Government, and the SIPA Trustee

As set forth above, Plaintiffs' proposed motion for sanctions is factually and legally baseless. The proposed motion is a blatant attempt to subvert Your Honor's Pretrial Scheduling Order, dated November 6, 2009 ("Scheduling Order"), as modified by consent of the parties on January 6, 2010 ("Consent Order"), which prohibits the filing of any dispositive motion until thirty days after the close of discovery. (Scheduling Order, ¶6).

The close of factual discovery, as consented to by the parties after Defendant's deposition and as ordered by Your Honor, currently is scheduled for June 30, 2010. (Consent Order, ¶1). It is Plaintiffs' frustration that Your Honor has ordered that no dispositive motion may be made before the close of fact discovery that precipitates their request to in effect seek dispositive relief based on Defendant's assertion of his Fifth Amendment right, before Defendant has had the opportunity to conduct discovery.[6] Plaintiffs' proposed motion is a transparent attempt to frustrate discovery and allow them to unfairly jump ahead of thousands of other investors whose claims are being equitably addressed by the Trustee overseeing the liquidation of BLMIS. This Trustee has brought an adversary proceeding against Defendant in the bankruptcy court on behalf of all victims (including Plaintiffs) of the Ponzi scheme, which currently is being litigated in the where the liquidation of BLMIS is pending.

---

[6] Plaintiffs have yet to produce to Defendant any of the documents set forth in Plaintiffs' 26(f) disclosure, dated November 20, 2009, which Plaintiffs stated they would produce to Defendant. Additionally, they have yet to produce any documents, or respond to interrogatories, in response to Defendant's numerous discovery requests served in early November. Per the Consent Order, Plaintiffs' responses to Defendant's outstanding discovery requests now are due on or before March 12, 2010.

LANKLER SIFFERT & WOHL LLP

Honorable Madeline Cox Arleo, U.S.M.J
January 26, 2010
Page 11 of 11

### Conclusion

For the reasons set forth herein, Defendant respectfully requests that the Court deny Plaintiffs' request for leave to file their proposed motion for sanctions under Fed. R. Civ. P. 37(b) and 30(d)(2), as any such motion is without factual and legal basis.

Respectfully submitted,

Charles T. Spada

cc: Ronald J. Riccio, Esq.
Michael Griffinger, Esq.
William F. Maderer, Esq.