<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

THE LAUTENBERG FOUNDATION, :
JOSHUA S. LAUTENBERG and ELLEN :
LAUTENBERG, :
                                  :
                                  :    Civil Action No. 09-816 (SRC)
                       Plaintiffs, :
                                  :    OPINION
              v.                  :
                                  :
PETER MADOFF,                     :
                                  :
                       Defendant. :

<u>**CHESLER**</u>, District Judge

      This matter comes before the Court on the motion by Plaintiffs The Lautenberg Foundation, Joshua S. Lautenberg and Ellen Lautenberg (collectively "Plaintiffs") for summary judgment on the Third Count of the Complaint [docket entry no. 40]. Defendant Peter Madoff ("Defendant") has opposed the motion. The Court heard oral argument on the motion on November 3, 2010. After consideration of the parties' briefing and arguments, the Court has determined that it will deny the motion for summary judgment. In the following discussion, the Court gives its reasons for the decision.

**I.**    **BACKGROUND**

      This action arises out of the now-notorious Ponzi scheme perpetrated by Bernard Madoff through the investment advisory services provided by his company, Bernard L. Madoff Investment Securities, LLC ("BMIS"). BMIS, organized in 1960 as a New York limited liability company, functioned as an investment adviser, broker-dealer and proprietary trader. BMIS took

custody of clients' money to invest in its full discretion.  Plaintiffs were among the many clients of BMIS, which included banks, hedge funds and institutional as well as individual investors. They each had accounts with BMIS, and their combined investment was approximately $8,922,000.

In December 2008, Bernard Madoff confessed that BMIS's investment advisory business was a giant Ponzi scheme, in which funds received from some investors were used to pay monies to other investors, that BMIS's losses totaled approximately $50 billion and that BMIS had been insolvent for years.  The Securities and Exchange Commission ("SEC") charged BMIS and Bernard Madoff with securities fraud, and on February 9, 2009 Bernard Madoff entered into a partial judgment on consent, which among other things, precludes him from arguing that he did not violate securities laws as charged.  Bernard Madoff has since pled guilty to securities fraud, among various other charges, and been sentenced to 150 years in prison for his crimes.

The sole named defendant in this action is Peter Madoff, Bernard's brother.  Peter Madoff worked at BMIS for almost 40 years.  He served as its senior managing director, director of trading, chief compliance officer and general counsel.  According to the Uniform Application for Investment Adviser Registration filed with the SEC by BMIS in August of 2006, Peter Madoff was listed as a control person of BMIS.

Prior to the exposure of the massive fraud, there were several indications that various outsiders were suspicious of the record-breaking returns achieved by BMIS coupled with the intense secrecy.  Several articles were written in financial publications and the SEC received a number of complaints.  When Defendant was finally deposed regarding these and other matters, he invoked the Fifth Amendment and answered virtually none of the questions.

## II.   DISCUSSION

### A.   Summary Judgment Standard

The standard upon which a court must evaluate a summary judgment motion is well-established.  Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000).  In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party.  *See Boyle v. Cnty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998).  The moving party bears the burden of establishing that no genuine issue of material fact remains.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Anderson*, 477 U.S. at 247-48.  The Supreme Court has held that Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."  *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).  A properly supported motion for summary judgment cannot be defeated by "the mere existence of a scintilla of

evidence" in favor of the non-moving party's claims. *Anderson*, 477 U.S. at 252. Instead, "there must be evidence on which the jury could reasonably find for the [nonmovant]." *Id.; see also Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied*, 507 U.S. 912 (1993) ("to raise a genuine issue of material fact . . . the [non-moving party] need not match, item for item, each piece of evidence proffered by the movant," but "must exceed the 'mere scintilla' threshold").

      B.      **Section 20(a) for Control Person Liability**

Count Three of the Complaint asserts that Defendant is liable under Section 20(a) of the Exchange Act. Section 20(a) provides:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a).

The seminal case in the Third Circuit on liability pursuant to Section 20(a) of the Exchange Act is *Rochez Brothers, Inc. v. Rhoades*. 527 F.2d 880 (1975). In that case, the Third Circuit considered the legislative history of the statute to interpret what the "control" of another means. *Id.* at 884-85. It considered that Section 20(a) was intended to impose liability on those "able to directly or indirectly exert influence on the policy and decision-making process of others." *Id.* at 884. After comparing the Senate and House versions of the legislation, the *Rochez Bros.* court concluded that the statute did not impose liability based on the principle of respondeat superior. *Id.* at 885. It reasoned that "Congress did not intend anyone to be an

4

insurer against the fraudulent activities of another.  What Congress did intend was to impose liability on those who were controlling persons and who were 'in some meaningful sense culpable participants in the fraud perpetrated by controlled persons.'" *Id.* (quoting *Lanza v. Drexel & Co.*, 479 F.2d 1277, 1299 (2d Cir. 1973)).  Thus, the elements of a Section 20(a), or "control person" claim are as follows: (1) the defendant controlled another person or entity; (2) the controlled person or entity committed a primary violation of the securities laws; and (3) the defendant was a culpable participant in the fraud.  *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 286 (3d Cir. 2006); *Rochez Bros.*, 527 F.2d at 890.

In order to prevail, Plaintiffs must demonstrate that no genuine issue of material fact exists as to any of the three elements outlined above.  The issue of a primary violation of the securities laws is not disputed.  For purposes of this motion the Court assumes without deciding that Peter Madoff was a control person from August 2006 forwards.[1]  The remaining element is that of culpable conduct.  As to this final element, Plaintiffs, as the moving party, have failed to meet their burden of establishing that no genuine issue of material fact exists.

The Third Circuit has held that inaction that *intentionally* furthers the fraud committed by the controlled person or entity or prevents its discovery establishes the controlling person's culpable participation in the fraud.  *Rochez Bros.*, 527 F.2d at 890.  Mere inaction is not enough to rise to culpable participation.  *Id.*  On a motion for summary judgment such as this, the moving party bears the burden of establishing the facts to support a finding of culpable conduct.

---

[1] Form ADV, Riccio Decl., Ex. D [docket entry no. 42-7].  The Court recognizes that determinations of control person status may require a more fact intensive inquiry than that afforded by a simple designation in an SEC filing, and thus confines its assumption strictly to the determination of this motion.

5

*Celotex*, 477 U.S. at 322-23.

Plaintiffs essentially argue that this massive fraud occurred, therefore, Defendant, because of his position within BMIS, must be at fault for not implementing appropriate safeguards. As Chief Compliance Officer, if Defendant had failed to establish certain minimal controls and procedures to prevent and monitor fraud, this might be enough to rise to culpable participation. However, the Court is confronted with a dearth of evidence as to what controls and procedures are considered standard or even minimally requisite in the industry. Plaintiffs claim that the articles and complaints filed with the SEC demonstrate that Defendant must have been aware of at least a possibility of compliance issues, and thus his failure to, at a minimum, investigate, constitutes culpable conduct. However, the Court notes that even in light of the specific complaints on multiple occasions, the SEC, with its substantial investigative powers was unable to uncover the fraud. Moreover, Defendant suggests that Bernard Madoff "specifically orchestrated efforts to conceal his fraud from Defendant and others[.]" Def.'s Br. at 6. These efforts included creating false trades, phony account statements and portfolio reports, depriving Defendant access to BMIS financial statements, and prohibiting Defendant from interacting with the SEC. *Id.* at 6-7. In fact, we know very little of what Bernard Madoff did and how he did it.

Plaintiffs attempt to argue that over the course of his dealings with his brother Peter Madoff simply could not have been deceived, defrauded or mislead as to the nature of this fraud . However, absent any demonstration as to what internal controls, if any, were in place, and any evidence as to what type of controls would be minimally required for compliance purposes, this Court cannot grant Plaintiffs' motion for summary judgment. While the Court recognizes that the combination of the Defendant's various positions with BMIS, his many years of close

association with his brother, and the gross nature of the fraud perpetrated by Bernard Madoff would cast substantial suspicion about Defendant's culpable involvement in those activities, suspicions based upon titles without specific evidence of conduct and responsibilities cannot be the basis of legal judgments.

Plaintiffs attempt to remedy the lack of evidence presented by drawing an adverse inference from Defendant's assertion of the Fifth Amendment.  "[A] defendant's silence in itself [is] insufficient to support an adverse decision, but [] such silence in conjunction with *other evidence* against the defendant could support that result." *S.E.C. v. Graystone Nash, Inc.*, 25 F.3d 187, 191 (3d Cir. 1994) citing *Baxter v. Palmigiano*, 425 U.S. 308, 317-18 (1976) (emphasis added).  It is clear that in this Circuit the adverse inference is not a substitute for evidence.  *Id.*  Because there is insufficient stand alone evidence and an adverse inference cannot operate as a replacement for evidence, Plaintiffs have failed to adequately demonstrate the requisite culpable involvement element of a Section 20(a) claim.

### III.  CONCLUSION

For the foregoing reasons, the Plaintiffs fail to demonstrate that there is no genuine issue of material fact as to the Third Count of the Complaint.  The Court will deny Plaintiffs' motion for summary judgment.  An appropriate form of Order will be filed.

   s/Stanley R. Chesler  
STANLEY R. CHESLER  
United States District Judge

DATED: November 18, 2010